Alexander Kolodin (State Bar No. 030826)
**KOLODIN LAW GROUP PLLC**
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Telephone: (602) 730-2985
alexander.kolodin@kolodinlaw.com
analea@kolodinlaw.com (Filed copies)

*Attorneys for Plaintiff 1Ten LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 1Ten LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Thomas M. Collins, in his official capacity as Executive Director of the Arizona Citizens Clean Elections Commission; Mark Kimble; Galen Paton; Sam Crump; Christina Estes-Werther; and Steve Titla, in their official capacities as members of the Arizona Citizens Clean Elections Commission,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(42 U.S.C. § 1983) |

Plaintiff 1Ten LLC hereby incorporates by reference its Motion for Preliminary and Permanent Injunction filed herewith and further alleges:

## INTRODUCTION

1. The Commission opened an investigation into one candidate's campaign signs. Its Executive Director has turned that inquiry into a demand that 1Ten disclose the political relationships through which it serves campaigns. The Subpoena reaches who paid, who helped, what work 1Ten arranged, and what the campaign and its representatives said in private. It then goes further: even for records 1Ten does not possess, the firm must identify the records and the people who hold them.

2. That final demand requires a map of political associations extending beyond 1Ten's own files. It tells the State whom to approach next for records of campaign work and communications. Political adversaries asked the Commission to identify the campaign's advisers, and some publicly sought the candidate's withdrawal or 1Ten's owner's prosecution. The Commission has published investigative correspondence from this matter, and the Subpoena promises no confidentiality. The demand burdens the willingness of candidates, consultants, organizations, and campaign workers to speak and work together in private.

## PARTIES

3. Plaintiff 1Ten LLC ("1Ten") is a Delaware limited liability company that does business in Arizona. Its owner is Jake Hoffman. Castro Decl. Ex. A at 1. It is a creative agency whose work includes work for political campaigns and organizations.

4. Defendant Thomas M. Collins is the Executive Director of the Arizona Citizens Clean Elections Commission (the "Commission"). He signed and issued the Subpoena. He is sued in his official capacity.

5. Defendants Mark Kimble, Galen Paton, Sam Crump, Christina Estes-Werther, and Steve Titla are the members of the Commission. Castro Decl. Ex. F at 2 (Aug. 14, 2026 Tr. 2). Arizona law gives the Commission the power to subpoena, A.R.S. § 16-956(B), and its rules give it the power to quash or modify a subpoena, A.A.C. R2-20-213(B). They are sued in their official capacities.

6. Each Defendant acted and acts under color of state law.

## JURISDICTION AND VENUE

7. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

8. Venue is proper under 28 U.S.C. § 1391(b). Defendants reside in this District, and the events giving rise to the claim occurred in Maricopa County.

9. 1Ten has standing. The Subpoena is directed to it and demands its private political communications and relationships. The resulting pressure impairs its ability to work with campaigns in confidence while the demand remains outstanding. Enjoining the demand would remove that pressure. 1Ten need not await enforcement before challenging this present burden on association. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 189, 192–94 (2026).

## FACTS

### A. The Commission's matter concerns one sign transaction

10. MUR 26-06 concerns whether Dr. Ralph Heap, a participating candidate for the Arizona Corporation Commission, properly accounted for campaign signs ordered from Mesa Sign Shop in April 2026 and completed in late May. Dr. Heap is the only respondent. Every violation identified in the Commission's compliance order arises from that transaction. The order does not mention 1Ten. Castro Decl. Ex. E (Compliance Order, Background ¶¶ 1, 3, Violations §§ I–IV, and Order).

11. On August 14, 2026, the Commission found reason to believe that Dr. Heap had violated a statute or rule within its jurisdiction and voted to investigate. Castro Decl. Ex. F at 6–7 (Aug. 14, 2026 Tr. 72:23–73:1, 73:14–23). It approved the compliance order on August 27. Castro Decl. Ex. E at 1–2.

12. Before approving the order, the Commission amended paragraph 4(b), concerning Mesa Sign Shop's decision to extend credit, so that the paragraph applies only to the participating candidate and his campaign committee. Castro Decl. Ex. F at 9–10 (Aug. 27, 2026 Tr. 19:9–22:4).

13. The Commission has ordered Dr. Heap to produce his documents and communications concerning the sign order and his agreements and records for campaign services. Castro Decl. Ex. E (Compliance Order, Order ¶¶ 4(a), 6(b)–(c)). The Executive Director also subpoenaed Mesa Sign Shop for the underlying business records of the sign order, including pickup or delivery records, account statements, payment terms, and related communications. Castro Decl. Ex. F at 22 (Aug. 31, 2026 memorandum).

14. Mesa Sign Shop produced invoices, a receivables report, a work-order record, and artwork files. Its counsel stated on September 30 that he believed the disclosures exhausted the responsive materials in the vendor's possession, while undertaking to produce any additional responsive materials found. Castro Decl. Ex. C at 1; Castro Decl. Ex. D at 1–2.

15. The Arizona Public Integrity Alliance ("AZPIA") filed a second complaint concerning Dr. Heap, MUR 26-09. Staff reported that it was reviewing that matter separately, and the October 29 report listed it without a disposition. Castro Decl. Ex. F at 18, 24 n.1, 30–31. On information and belief, the Commission has made no reason-to-believe finding in that matter.

16. On November 13, 2026, undersigned counsel met and conferred with counsel for the Executive Director. Mary O'Grady stated that "this is not an investigation of your client."

**B. The Executive Director's Subpoena**

17. The Executive Director signed the Subpoena Duces Tecum and for Deposition directed to 1Ten on November 3, 2026 (the "Subpoena"). It was delivered to 1Ten's counsel on November 6. Castro Decl. ¶ 2 & Ex. A at 7. A true copy is Exhibit A to the Castro Declaration.

18. The Commission never voted to authorize the subpoena the Executive Director issued to 1Ten. On August 14, it voted "to proceed with an investigation" of Dr. Heap. Its August 27 Compliance Order incorporated a recommendation stating that the Executive Director "may subpoena all of the Respondent's records documenting disbursements, debts, or obligations to the present." The sole respondent was Dr. Heap. Neither vote authorized the Executive Director to subpoena 1Ten for documents or to produce a representative for examination under oath.[1] At that same August 27 meeting, the

[1] Castro Decl. Ex. F at 6–7 (Aug. 14, 2026 Tr. 72:23–73:1, 73:14–23); Castro Decl. Ex. F at 10 (Aug. 27, 2026 Tr. 21:9–22:4); Castro Decl. Ex. E (Compliance Order, Background

Commission voted in three other candidates' investigations to authorize the Executive Director's "issuance and enforcement of subpoenas to witnesses." It adopted no such motion in MUR 26-06.[2]

19. The Subpoena defines "1Ten" to include "its members, managers, employees, agents, representatives, and persons acting on its behalf, including Jake Hoffman." "Dr. Heap" includes "his candidate committee, and any person acting on behalf of either." Its five requests contain no date range and demand the following records in 1Ten's possession, custody, or control. Castro Decl. Ex. A at 1–4:

*1) All Documents relating to the Mesa Sign Shop Invoices to the extent they concern Dr. Heap, including Documents sufficient to show each payment made on those invoices (including the $96,500.00 payment reflected on Invoice No. 2947), the payor and source of funds for each payment, and whether any portion was applied to the invoice lines for Dr. Heap.*

*2) For Heap Signs: (a) all Documents sufficient to show the number of signs picked up from Mesa Sign Shop, the date of each pickup, and who picked them up; (b) all Documents sufficient to show the number of signs placed and the dates of placement; and (c) all invoices, receipts, and payment records for Sign-Related Expenses, including payments for stakes, rebar, and other installation materials and payments to any person who picked up, transported, placed, or removed the signs.*

*3) Documents sufficient to show any other goods or services that 1Ten paid for, provided, or arranged for Dr. Heap's campaign, the cost of each, and whether, when, and in what amount Dr. Heap paid or reimbursed 1Ten.*

*4) All Communications between 1Ten and Dr. Heap relating to Heap Materials, Sign-Related Expenses, the Mesa Sign Shop Invoices, or payment or reimbursement for any of them.*

---

¶¶ 1, 3, 6); Castro Decl. Ex. F at 17 (Statement of Reasons of Executive Director at 16); Castro Decl. Ex. A at 3–5 (Subpoena).

[2] Castro Decl. Ex. F at 12–13 (Aug. 27, 2026 Tr. 61:3–25, 63:5–64:1, 65:4–66:1).

*5) All Communications between 1Ten and Mesa Sign Shop relating to Heap Materials, payment or collection of any amount owed for goods provided for Dr. Heap, or MUR 26-06, including any Communication about the declaration that James E. "Jim" Torgeson signed on August 7, 2026 and that was submitted with Dr. Heap's response in MUR 26-06.*

20. The Subpoena initially commanded compliance at 10:00 a.m. on November 18, 2026. It requires 1Ten to testify under oath through a designee unless it first produces all responsive documents with a declaration under penalty of perjury stating that a reasonable search was made and the production is complete, or identifying requests for which no documents exist. Castro Decl. Ex. A at 4–5. The Executive Director has extended the return date to November 25, 2026.

21. The Subpoena contains no confidentiality provision. It warns that failure to comply "may subject you to proceedings in Superior Court to enforce its requirements." Castro Decl. Ex. A at 1–7.

**C. The requests expose political relationships and private campaign work**

22. Request 1 demands the payor and source of funds for payments on six specified invoices. Its express limitation to documents concerning Dr. Heap does not eliminate the risk from tracing payments on a shared invoice. Invoice No. 2947 also lists another candidate's signs, and the Commission already has that invoice. Rogers Decl. ¶¶ 5–6. The further demand reaches the financial relationships behind those purchases: who supplied the money and whether any part of each payment was applied to Dr. Heap's invoice lines. Castro Decl. Ex. A at 2–3.

23. Request 2 identifies the people who carried the campaign's message into public view. It demands records showing who picked up signs, how many signs were placed and when, and payments to anyone who picked up, transported, placed, or removed them. The demand exposes who helped distribute the campaign's speech and how that work was organized, without distinguishing commercial deliveries from assistance revealing a person's otherwise private connection to the campaign. *Id.* at 3.

24. Request 3 extends the inquiry to "any other goods or services" that 1Ten "paid for, provided, or arranged" for the campaign, together with the cost of each and the details of payment or reimbursement. It reaches beyond the sign transaction to the full range of campaign work performed through 1Ten: both work the firm did itself and assistance it secured from others. Answering requires an account of those activities, their financing, and 1Ten's role in arranging them. The investigation of one purchase thus becomes an inquiry into the campaign's broader working relationship with its consultant. *Id.* at 3–4.

25. Request 4 demands the private exchanges through which campaign materials were developed and distributed. It reaches all written, electronic, or recorded communications on its stated subjects between 1Ten, as defined, and Dr. Heap or anyone acting for him or his committee. That includes discussions of what the materials should say, how they should be produced, and how they should reach voters. The demand does not distinguish the published message from the private deliberations that produced it. *Id.* at 2–4.

26. Request 5 extends the demand to 1Ten's communications with Mesa Sign Shop about campaign materials, payment, or MUR 26-06 itself. It expressly includes communications about the declaration submitted with Dr. Heap's response. The inquiry thus follows the campaign's dealings from producing its speech into private exchanges about responding to the investigation. It demands those exchanges as a category, without identifying what relevant evidence remains missing from the vendor's production and the records already demanded from the candidate. *Id.* at 4.

27. The Subpoena then reaches beyond anything 1Ten possesses. Under "Your Duties In Responding to This Subpoena," it directs: "If relevant records are not in your possession, please provide an index identifying the records and who is in possession of such records." Even when 1Ten has no record to produce, it must identify the record and its holder. Applied to Requests 1 through 5, this demands a separate account of where

records of 1Ten's campaign work, payments, and communications can be found and who keeps them. *Id.* at 5.

28. That index is a map of political associations. For records of private campaign dealings, it can connect a person to particular work, payments, or communications and supplies the State with the next custodian to pursue. A person's connection to the campaign can be revealed before the State obtains a single document from that person. The demand has no separate limit confining those disclosures to people needed to resolve the sign transaction. It requires 1Ten to expose relationships beyond its own files simply because it knows where a relevant record is held. *Id.* at 2–5.

**D. Political adversaries sought the identities of campaign advisers**

29. AZPIA expressly asked the Commission to identify the people behind the transaction. It wrote that "[s]omeone decided how this purchase would be papered," that it "does not allege who that was; it asks the Commission to find out," and that the Commission "should compel the campaign to identify every person who advised it concerning the sign purchase, the financing or billing arrangement, or the position that the obligation was not reportable." Castro Decl. Ex. F at 19 (AZPIA memorandum, pt. V).

30. Nick Myers, the Arizona Corporation Commission's chairman and "the immediate past candidate in this race," told the Commission that the campaigns' activities were "coordinated presumably by a single consultant." He said "it's reasonable to conclude that Jake Hoffman played a central role," but "we can't know with certainty until Clean Elections obtains financial records and invoices." Castro Decl. Ex. F at 3–4 (Aug. 14, 2026 Tr. 31:10–16, 33:1–11).

31. The complainants' public statements tie enforcement to political objectives. AZPIA's Tyler Montague urged that the investigation conclude before ballots were printed and that Dr. Heap withdraw. Lisa Everett, the complainant in MUR 26-06, threatened a Secretary of State complaint if Heap did not remove himself from the ballot. Castro Decl. Ex. B at 163, 205–06; Castro Decl. Ex. E (Compliance Order, Background ¶ 3).

32. Their hostility reaches 1Ten's owner, Jake Hoffman. Montague called him a "lying POS snake" and wrote, "I want Hoffman… to get indicted again, as [he] deserve[s] to be." Everett wrote that Hoffman and others "do not want this negative press near them. I think it should be plastered on their faces." Castro Decl. Ex. B at 8, 37.

33. The Commission's order incorporates Gina Swoboda's sworn statement. Castro Decl. Ex. E (Compliance Order, Background, final paragraph). Swoboda has since written that "the party is in a hot civil war" and that "Hoffman [is] destroying" Arizona. Castro Decl. Ex. B at 104, 110.

34. The prospect of disclosure to those adversaries is concrete. The Commission published August 27 emails between its Executive Director and Mesa Sign Shop's owner in its September 2 meeting packet. Castro Decl. Ex. F at 26–27. With no confidentiality protection in the Subpoena, the demanded communications and index could likewise expose private political relationships to people seeking withdrawal, prosecution, or adverse publicity.

**E. The demand burdens 1Ten's political work now**

35. A candidate cannot exchange ideas freely with a consultant if their private discussions may become the subject of a state demand prompted by political opponents. A campaign worker has reason to hesitate if helping distribute a message can require the consultant to identify that worker to the State. And the custodian index makes keeping records outside 1Ten no answer: the firm must still name the person who has them. Taken together, these demands deter the candid exchanges and cooperation on which 1Ten's political work depends. They pressure 1Ten and those who work with it to say less, put less in writing, and limit whom they involve.

36. James Rogers's declaration confirms that effect. A 1Ten client who expects to run again, he discussed strategy, messages, timing, budgets, supporters, and volunteers with the firm in confidence. The Subpoena has made him less willing to speak candidly, more reluctant to put matters in writing or identify supporters, and less willing to place an

order alongside another candidate. His concern persists even if only the Commission receives the information. Rogers Decl. ¶¶ 4, 8–10.

**CLAIM FOR RELIEF**

**First and Fourteenth Amendments (Freedom of Association), 42 U.S.C. § 1983**

37. 1Ten incorporates the paragraphs above.

38. The First Amendment protects private political association, including private exchanges among those who formulate a campaign's strategy and messages. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162–63, 1165 n.12 (9th Cir. 2010). Compelled disclosure of protected association must bear a substantial relation to a sufficiently important governmental interest and be narrowly tailored to that interest. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611 (2021).

39. The Subpoena violates those protections. It demands the private exchanges, assistance, and financial connections through which 1Ten works with campaigns. The custodian index independently exposes who holds records of that work and identifies further people for the State to pursue. These demands burden 1Ten's own participation in political association and the confidence necessary to that work.

40. The demand is not narrowly tailored to the sign transaction. It has no date limit, reaches "any other goods or services," and sweeps private campaign deliberations into requests for all communications on broad subjects. Its custodian instruction extends the same inquiry into relationships outside 1Ten's files. Neither the Commission's findings nor the Subpoena explains why investigating the identified transaction requires that broader disclosure.

41. The Executive Director already sought the vendor's transaction records and received its production, and the Commission ordered the candidate to produce his own records and communications. The Subpoena identifies no gap in that evidence that requires an account of the campaign's broader work or an index of other people who hold records of it. The demands for protected information exceed the need shown for it. 1Ten seeks

relief from this Subpoena, not an end to the investigation of Dr. Heap or the use of records already lawfully obtained.

42. Defendants, acting under color of state law, have deprived and threaten to deprive 1Ten of rights secured by the First and Fourteenth Amendments. The demand continues to impair confidential political cooperation. Disclosure of the communications and relationships cannot be undone, and money cannot restore their privacy. 1Ten has no adequate remedy at law and will continue to suffer irreparable injury unless Defendants are enjoined.

**PRAYER FOR RELIEF**

1Ten asks the Court to:

A. Declare that the Subpoena violates the First and Fourteenth Amendments;

B. Preliminarily and permanently enjoin Defendants and those acting in concert with them from enforcing or seeking to enforce the Subpoena against 1Ten, from treating 1Ten's non-compliance with it as a default or violation, and from issuing further process in MUR 26-06 that seeks the same information from 1Ten or from its members, managers, employees, or agents;

C. Award 1Ten its costs and reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law; and

D. Grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED this 18th day of November, 2026.

**KOLODIN LAW GROUP PLLC**

By: <u>/s/Alexander Kolodin</u>
Alexander Kolodin
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
*Attorneys for Plaintiff 1Ten LLC*