# EXHIBIT F

to the Declaration of Analea Castro
Excerpts from the posted meeting transcripts and meeting packets
of the Arizona Citizens Clean Elections Commission

## INDEX


| Pages | Document |
|---|---|
| 2–7 | Reporter's Transcript of Videoconference Public Meeting, August 14, 2026: transcript pages 1–4, 29–36, 45–48, and 69–75 |
| 8–14 | Reporter's Transcript of Virtual Public Meeting, August 27, 2026: transcript pages 1–4, 17–24, and 57–72 |
| 15–19 | Meeting packet, August 14, 2026: page 1 (notice of meeting); pages 20 and 35 (Statement of Reasons of Executive Director, MUR 26-06, pages 1 and 16); pages 248 and 252 (Arizona Public Integrity Alliance memorandum of August 12, 2026, page 1 and Part V) |
| 20–27 | Meeting packet, September 2, 2026: page 1 (notice of meeting); pages 5–9 (memorandum from Tom Collins, August 31, 2026); pages 38–39 (emails of August 27, 2026, Exhibits 12 and 13 to that memorandum) |
| 28–31 | Meeting packet, October 29, 2026: page 1 (notice of meeting); pages 34, 36, and 37 (Executive Director Report, October 29, 2026, pages 1, 3, and 4) |


The Commission posts each transcript in condensed form, four transcript pages to a sheet. Packet page numbers are the page numbers of the posted PDF.

Posted at https://www.azcleanelections.gov/clean-elections-commission-meetings

THE STATE OF ARIZONA

CITIZENS CLEAN ELECTIONS COMMISSION

REPORTER'S TRANSCRIPT OF VIDEOCONFERENCE PUBLIC MEETING

Phoenix, Arizona

August 14, 2026

10:30 a.m.

**MILLER CERTIFIED REPORTING, LLC**
RRF Number R1058
12725 West Indian School Road
Suite F-100
Avondale, Arizona 85392
623-975-7472
Office@MillerCertifiedReporting.com

Prepared By:
**Angela Furniss Miller, RPR**
Certified Reporter
Certificate No. AZ50127





PUBLIC MEETING, BEFORE THE CITIZENS CLEAN ELECTIONS COMMISSION, convened at 10:30 a.m. on August 14, 2026, via videoconference, in the presence of the following Board Members:

Mr. Mark S. Kimble, Chairman
Mr. Galen Paton
Ms. Christina Werther
Mr. Steve Titla
Mr. Sam Crump

OTHERS PRESENT:

Thomas Collins, Executive Director
Paula Thomas, Executive Officer
Mike Becker, Policy Director
Gina Roberts, Voter Education Director
Alec Shaffer, Web Content Manager
Avery Xola, Voter Education Manager
Craig Morgan, Taft Law
Alexandria Karpurk, Osborn Maledon
Angela Miller, Miller Certified Reporting
Cathy Herring, KCA

MEMBERS OF THE PUBLIC:

Tim LaSota, Timothy LaSota PLC
Sorella Barbara Parker
Lisa Everett
Merissa Caldwell
Laura Goodell
Beverly A. Goldstein
Carey Davis
Scott & Maria Grainger
Nick Myers
Mary Maybeno
Gina Swoboda
Lynda Patrick-Hayes
Ben Stafford
Alex Logvin
Doni Bond
Daryl Groves
Sherry Walton
Megan Rubino
John Davison
Tyler Montague

(CONTINUED)





MEMBERS OF THE PUBLIC:

Jennifer Esposito, Mohave Free Press
Alaina Mencinger
April Smith
Arizona Family News
Art Fesler-Butts
Barrett Marson
Brenda Gifford
Ciara Anderson
Dennis Liles
Erica Lowe
Gayle Peters
Jason Hall
Jeff Klusmann
Jeremy Hall
Jeremy Duda
Julie Ryan
Ken Berger
Lisa Green
John & Thia
Jennifer Esposito
Julie Ryan
Ken Berger
Laura Goodell
Manuela C.
Maria Grainger
Nancy Hawkins
Patricia Moore
Rivko Knox
Thomas M. Ryan, Esq.
Wayne Schutsky, KJZZ
Zach Buchanan





P R O C E E D I N G

CHAIRMAN KIMBLE: Good morning. I'm Mark Kimble, Chair of the Citizens Clean Elections Commission. It is 10:30 a.m. on Friday, August 14th, 2026. I call this meeting of the Citizens Clean Elections Commission to order.

With that, we'll take attendance. Commissioners, please identify yourselves for the record.

COMMISSIONER PATON: Galen Paton.

10:30:35 COMMISSIONER WERTHER: Christina Werther.

COMMISSIONER CRUMP: Sam Crump.

COMMISSIONER WERTHER: Christina Werther. Sorry.

COMMISSIONER TITLA: Good morning, Steve Titla.

CHAIRMAN KIMBLE: Good morning. We have all five Commissioners with us this morning.

Also present are Tom Collins, the Executive Director of the Arizona Citizens Clean Elections Commission,

10:30:52 and Craig Morgan from Taft Law acting solely as the Commission's independent legal advisor.

Item II. Review, consideration, discussion, analysis and possible action on release of clean funding to Dr. Ralph Heap pursuant to A.A.C. R2-20-106(A) and A.A.C. R2-20-106(G) and August 7th request to withdraw as a

Thank you.

CHAIRMAN KIMBLE: Thank you, Mr. Davis.

Next, Scott Grainger.

MR. GRAINGER: Yes, we're here. That's Scott and Maria Grainger. I did ask to have my wife's name added, but that didn't seem to happen.

MRS. GRAINGER: That's okay.

MR. GRAINGER: Commissioners and members of the public. We, Scott and Maria Grainger, captain and both PCs of Precinct LD-10 have the following comments regarding the subject of Dr. Ralph Heap, candidate for Arizona Corporation Commission as a very successful candidate in the 2026 Republican primary election.

We live in a constitutional republic that uses a democratic process to elect our leaders in an election such a primary election was held recently. The results, Candidate Heap won overwhelmingly against two incumbents. Candidate Heap is now set to represent us in a general election.

The Clean Elections Commission has not provided any funds to Candidate Heap's campaign. There are no tax dollars to recover, no money that was misspent by Candidate Heap. Candidate Heap fully understands that he is responsible for his financial responsibilities.

The Commission is being weaponized in that it is being used in an attempt to overturn the results of the





recent primary election. Candidate Heap won his primary by a healthy margin. We voted for him and have volunteered to support his campaign to become a member of the Arizona Corporation Commission.

Removing Candidate Heap from the ballot would not merely punish him, it would negate all of the hundreds of thousands of votes of his supporters that support him. We believe that even an attempt to remove Candidate Heap is unjust, antidemocratic, unconstitutional and very un-American.

This also creates a terrible precedent. Unsuccessful candidates and their allies should never be able to weaponize an unelected administrative commission to nullify our votes. This Commission should not attempt to keep a candidate, in this case Dr. Heap, in limbo by refusing to fund Candidate Heap while refusing to allow him to leave the program and finance his own campaign with no Commission funding.

This is particularly onus when the Candidate Heap has met the requirements for Commission funding. We voted for Heap, and he won the election fair and square without any input from the Commission.

The Commission has no right to steal the hundreds of thousands of votes of his supporters that brought Candidate Heap to victory in the primary election.





CHAIRMAN KIMBLE: Mr. Grainger, your time has expired.

MR. GRAINGER: Thank you for your attention to this matter, Scott and Maria Grainger.

CHAIRMAN KIMBLE: Thank you both Scott and Maria Grainger for your comments.

MRS. GRAINGER: Thank you.

CHAIRMAN KIMBLE: Next we have Nick Myers. Mr. Myers?

MR. MYERS: Yes, thank you. Good morning, Chairman and Commissioners. My name is Nick Myers, and I currently serve as the chairman of the Arizona Corporation Commission.

I am the immediate past candidate in this race and I am here today to raise additional concerns regarding the Heap campaign's compliance with Clean Elections' requirement.

I want to start with the most basic rule of the system. The Clean Elections -- the Citizens Clean Elections Candidate Guide states on the very first substantive page what may be the single most fundamental requirement of participating in the program. And I quote: A participating candidate must adhere to expenditure limits and may not make expenditures in excess of cash on hand. Cash on hand includes both early contributions received and candidate funding.





It is presented to every candidate as Rule 1. And by the Respondent's own counsel's letter, that rule was broken.

I don't believe that's where the concerns end. There have been a number of additional questions raised that simply cannot be resolved without the Commission examining the campaign's finances directly. One example, Mr. Heap and his running mate did not file their statement of organization until the night before their public announcement press conference. Yet, at that press conference, they already had signs bearing both names in a design and color -- color scheme substantially similar to several other campaigns around the Valley, including the Biggs, Farnsworth and Hendrix campaign and in Gilbert.

That similarity isn't necessarily improper on its own, but it raises real questions the Commission should be positioned to answer. Was there a coordination between these campaigns? Was this an independent expenditure or an in-kind contribution? Did the order and timing of that printed -- printing violate spending limits or contribution limits? Did the sign printer extend credit for that order? It was placed over a year ago at this point and I don't -- I ask whether the invoice for that has even been sent.

I won't know until -- or, we won't know until the full financial picture is accounted for, every receipt and

complete timeline of fundraising against spending. It seems clear that the activities supporting these campaigns was coordinated presumably by a single consultant.

While we don't -- we can't know with certainty until Clean Elections obtains financial records and invoices, it's reasonable to conclude that Jake Hoffman played a central role given his publicly acknowledged -- acknowledgment recruiting of Heap and Marshall and his role as Mr. Kolodin and Ms. Yee's consultant, both of whose signs were placed next to each other at the same time as Mr. Heap's.

This is, of course, assuming the printing vendor's records reflect what actually occurred. That assumption is exactly what I'd ask the Commission to test. The sworn statement submitted by Mesa Sign Shop leaves more questions than answered -- than answers. It's worth the Commission asking directly whether the statements hold up, because the incentives matter here. A relatively unknown, first-time statewide candidate is not, in my assessment, the kind of customer that a reputable sign shop would put its business on the line for. Someone who --

CHAIRMAN KIMBLE: Mr. Myers, your time is expired.

MR. MYERS: Okay. Thank you. Thank you for your attention.





CHAIRMAN KIMBLE: Thank you. Thank you, Mr. Myers.

Next we have Mary Maybeno. I apologize if I mispronounced your name.

MS. MAYBENO: Yes. It's Mary Maybeno.

CHAIRMAN KIMBLE: Okay. Thank you.

MS. MAYBENO: Hi. And these are my thoughts. Honestly, I've never seen in my life such vitriol and obsession being directed towards a candidate who just won his primary. Dr. Ralph Heap is a well-respected retired orthopedic surgeon who has even used his skills doing charitable work overseas. He's being accused of not fully reporting campaign costs and of inadvertently making a Clean Election mistake. But the facts also show that he has never received a dime from any Clean Elections money and that there is no taxpayer money -- money to recover.

He has asked to be released from this program so that he can finance his own campaign.

I voted for Dr. Heap and not because of any sign. Thousands of other voters put their trust in him to be their choice on the Arizona Corporation Commission. He won by a healthy margin. Please don't take away our voice in this matter.

Losing candidates should not use their machinations to pressure this Commission to remove Dr. Heap from his





general election race. Release him from Clean Elections and let the voters' choice stand.

Thank you for listening.

CHAIRMAN KIMBLE: Thank you very much for your comments.

Next is Gina Swoboda.

Ms. Swoboda?

MS. SWOBODA: Thank you, Mr. Chairman. Can you hear me okay?

CHAIRMAN KIMBLE: Can hear you fine, yes.

MS. SWOBODA: Thank you. Thank you, Mr. Chair, members of the Commission.

I did -- I filed a declaration. I -- I just wanted to say that it appears based on the vendor's affidavit that the line of credit reflecting what the candidate's counsel indicates he feels would not become an expenditure until some point in the future, that that occurred in April. So we're in August, and to my knowledge the campaign finance reports have not been amended to reflect what the amount of that line of credit is. It would appear that that is to avoid a further rule violation, because based on common, reasonable, customary costs, it would exceed the amount of cash on hand.

So I would ask the Commission to make sure that the candidate is fully in compliance should they continue as a Clean Elections candidate, and that their campaign finance





reports need to be amended to reflect all of the expenditures, whether future or current.

Thank you so very much.

CHAIRMAN KIMBLE: Thank you, Ms. Swoboda.

Next, Lynda Patrick-Hayes.

MS. PATRICK-HAYES: Good morning, Mr. Chairman and Commission members.

I'm going to probably just reiterate what everyone else has said. Thousands of people across the State of Arizona voted for Dr. Heap in this most recent primary. He never spent one dime of Clean Election money or taxpayers' money for his campaign. Please do not set a precedent with this particular case. Do what the reasonable man would do. If you don't give him the money, then release him from the Clean Elections. Let Dr. Heap raise his own money. Let him pay his own campaign expenses, and don't disenfranchise all of us Arizonans who gave him a primary victory.

Thank you so much.

CHAIRMAN KIMBLE: Thank you very much for your comments.

Next, Ben Stafford.

MR. STAFFORD: All right. Can you hear me?

CHAIRMAN KIMBLE: Can hear you fine, yes.

MR. STAFFORD: All right, super. Outside working on a car here.

I believe that would be profoundly unjust, antidemocratic and unconstitutional. It would also create a terrible precedent. Losing candidates and their allies should never be able to weaponize an administrative commission to accomplish after an election what they could not accomplish at the ballot box.

The Commission also cannot keep a candidate trapped indefinitely, refusing to fund him while refusing to let -- to let him leave the program and finance his own campaign.

11:29:16 There is a simple and fair solution: Release him from Clean Elections. Let him raise his own money. Let him bear his own campaign expenses. He never touched Clean Elections dollars.

I voted for Ralph Heap and this is silencing the hundreds of thousands of people who voted for him and bringing him to victory in the primary election.

Most importantly, let the voters' decision stand.

Thank you.

CHAIRMAN KIMBLE: Thank you, Ms. Walton.

11:29:48 Next, Meg Rubino.

MS. RUBINO: Yes, sir. Thank you, Mr. Chairman and commission members. It's Megan Rubino, PC for Legislative District 10, Dr. Ralph Heap.

I'm here for more of a character reference. I've worked for him for many years, and Dr. Heap has just only





shown me the utmost respect for his constituents. He's highly respected. His door was always open to any issues that I ever had that were extremely important to me. I've worked with him for many years.

And I just don't want you guys to take away my vote. I voted for him, along with so many others. Please don't silence us.

Thank you.

CHAIRMAN KIMBLE: Thank you.

11:30:28 Next is someone identified only as "John."

John, could you state your last name?

MR. DAVISON: Can you hear me?

CHAIRMAN KIMBLE: Yes, I can hear you. John, state your last name.

MR. DAVISON: I'm sorry, my dogs just see something out there.

But my name is John Davison and I'm a -- I'm a Mesa resident. And I'll voice what many have said here. Number one, thank you so much for allowing us all to speak. And 11:31:05 please release Dr. Heap from Clean Elections. That would be the simplest thing to do. Allow him to raise his own money. Let him pay for his own campaign expenses. My goodness.

He's never used Clean Election money, and, of course, many have voiced that, and I'm going to voice it also. And -- and I voted for -- for Dr. Heap. My voice and





thousands of, I mean, upon thousands of others need to be heard.

And -- and -- and please -- please look at this closely, all right. It can be dealt with so simply.

And -- and thank you so much for having me. And God bless you all.

CHAIRMAN KIMBLE: Thank you, Mr. Davidson.

Next we have Tyler Montague.

Mr. Montague?

11:32:01 MR. MONTAGUE: Thank you, Mr. Chairman, members of the Commission.

I think when you sign up to be a Clean Elections candidate, you sign up to follow the rules. And I think there are very clear rules violations here and evidence that there may be additional rule violations that could be discovered upon subpoena of various records from vendors. And I think we shouldn't only focus on the signs but should focus also on the signature-gathering process.

I submitted a supplement to my original complaint 11:32:38 detailing what I think those are. There is solid evidence for professional gathering of at least 45 percent. Those gatherers, those circulators, are also registered, paid circulators. And then another additional approximately 40 percent of the signatures gathered by people who appear to be professional gatherers. That's something that the





Commission could determine.

And also I noted the market value charged by the same vendors to other candidates in the same time period, and that would put that expenditure well beyond what is allowed by the Clean Elections' rules.

A further comment, if we can avoid reporting by simply doing all the spending that a candidate does on credit, then I guess we wouldn't have to report anything, right? We can just do all on credit and not report any of 11:33:36 it. And then -- that can't be it. That's kind of a silly proposition.

Furthermore, harm has been done. Other candidates following the rules lost by close margins. This should not be dismissed. I -- I -- I don't even think Dr. Heap has to have intentions to break the rules, but he did. And harm was done so that has to be addressed. Otherwise, the playbook could be: Come in, cheat the rules, if you don't get caught, great. You get your money. If they catch you say, oh, I'm sorry, just let me drop out of the program.

11:34:14 That can't be it. That's not fair. That's not what the public designed when they created this process and these rules.

And so I think for the integrity of this system, the rules should be enforced and there should be penalties for -- for severely breaking the rules, which is what appears

comments with, oh, well, you know, this is really, really preliminary, and, you know, this is not any kind of a finding. There is a whole process and this is preliminary and we need to -- to really get into the details, and -- but it's cut off Dr. Heap's money based on that preliminary finding that he poo-poos.

So now in terms of -- the other thing that he doesn't mention is the statute makes a comparison not between political debtors or people who are extended credit -- 12:21:36 debtors is the wrong word -- not between politicals. It makes the distinction between political and nonpolitical.

And if you saw Mr. Torgeson's affidavit, it talked about a large institutional investor -- excuse me, not investor. Large, large institutional player that orders signs from him, that I think is 120 days overdue.

So, I mean, you know, again we shift around. Now we've settled on this distinction, and we have this analogy with buying a Buick. That is just -- I don't really even understand what he's saying. It's not true. It's not 12:22:11 commercially realistic. It's once again trying to find something to seize on.

Now the last thing -- I also wanted to say that -- yeah. I mean, if -- if Heap is out, then he can raise personal funds.

And -- and he could have withdrawn before, right?





I mean, just because, you know, he chooses to -- to -- to not go through this process. And he made the application to withdraw before. I mean, he could have just decided right in the middle of it he wanted to raise private money, and then could, you know, in any -- anything that there was that extension of credit on he could pay with -- with private funds to raise.

So I -- I think that -- I think we're -- we're sort of grasping for a reason to -- to stick it to Dr. Heap as a 12:22:57 matter of first impression, a nice euphemism that Mr. Collins used at the outset.

So I don't know if the fact that we just went straight to Item III means we're not making a decision on Item I. But, you know, I think the committee needs to -- needs to release the funds. And if it fails to do the job it's legally required to do, then -- then we would ask that he be released from the overall program.

And I think this is a word to the wise, especially those of a certain political persuasion about, you know, you 12:23:35 might want to think twice about becoming a Clean Elections candidate. Because -- and I know what you said, Mr. Chairman. I disagree with you completely. This Commission has always been more interested in complaints against Republicans than complaints against Democrats.

So I would ask that you -- that you release Dr. --





release the funds. If you don't, then I would ask that you -- you discharge him from the program.

Thank you.

CHAIRMAN KIMBLE: Thank you, Mr. LaSota.

Any comments from members of the Commission, or does any member of the Commission wish to make a motion?

COMMISSIONER WERTHER: Mr. Chairman, I don't need to go into executive session, but I didn't want to speak for anybody else in case someone else wanted to do that.

12:24:22 CHAIRMAN KIMBLE: I -- I didn't -- I haven't heard any motion from anyone that we go into executive session.

COMMISSIONER WERTHER: Okay. So Mr. Chairman, I wanted to make a motion, but before I did that, I just wanted to thank all those who were speaking today, especially those voters. Specifically, I just wanted to clarify we were never here to remove anybody from the ballot. I just wanted to make that clarification. This is just about funding.

And so my motion would be -- there's going to be 12:24:52 two separate motions I think is what I -- I think is probably the best course of action.

So one is to move to release the Clean funding to Dr. Heap pursuant to that rule, R2-20-106(A). Yeah, that's the first motion.

CHAIRMAN KIMBLE: Okay. Thank you,





Commissioner Werther.

Is there a second?

Commissioner Paton, were you seconding that?

COMMISSIONER PATON: I'll second it, yes.

CHAIRMAN KIMBLE: Okay. Thank you.

It's been moved and seconded that we release the funds to Dr. Heap. I will call the roll.

Commissioner Werther.

COMMISSIONER WERTHER: Aye.

12:25:30 CHAIRMAN KIMBLE: Commissioner Paton.

COMMISSIONER PATON: Aye.

CHAIRMAN KIMBLE: Commissioner Crump.

COMMISSIONER CRUMP: No.

CHAIRMAN KIMBLE: Chair votes aye.

Commissioner Titla had a commitment and had to leave. So the motion passes 3-to-1.

Am I correct about that? Yes.

Okay. Commissioner Werther, you said you had a second motion.

12:25:58 COMMISSIONER WERTHER: Yes, Mr. Chairman. And I'm just trying to make sure I have the right language here for how to do this. I'm looking at the...

I'd like to move that the Commission finds there is reason to believe that Dr. Heap has violated a statute or rule of which the Commission has jurisdiction and to proceed

with an investigation.

CHAIRMAN KIMBLE: Is there a second to Commissioner Werther's motion?

COMMISSIONER PATON: I'll second it. It's Paton.

CHAIRMAN KIMBLE: Thank you.

It's been moved and seconded that we find that there's reason to believe in MUR 26-06 that he has -- can you restate?

12:26:50 COMMISSIONER WERTHER: Violated a statute or rule for which the Commission has jurisdiction.

CHAIRMAN KIMBLE: -- violated a statute or rule.

It's been moved and seconded. I will call the roll.

Commissioner Werther.

COMMISSIONER WERTHER: Aye.

CHAIRMAN KIMBLE: Commissioner Paton.

COMMISSIONER PATON: Aye.

12:27:01 CHAIRMAN KIMBLE: Commissioner Crump.

COMMISSIONER CRUMP: Aye.

CHAIRMAN KIMBLE: Chair votes aye.

The motion is approved 4-to-nothing.

We're going to move straight to adjournment. Item V, adjournment.





If there's no further business, I would entertain a motion to adjourn.

COMMISSIONER WERTHER: Mr. Chairman, I move to adjourn.

CHAIRMAN KIMBLE: Thank you, Commissioner Werther.

Is there a second?

COMMISSIONER PATON: I'll second it. Paton.

CHAIRMAN KIMBLE: Thank you, Commissioner

12:27:26 Paton.

It's moved and seconded that we adjourn. I will call the roll.

Commissioner Werther.

COMMISSIONER WERTHER: Aye.

CHAIRMAN KIMBLE: Commissioner Paton.

COMMISSIONER PATON: Aye.

CHAIRMAN KIMBLE: Commissioner Crump.

COMMISSIONER CRUMP: Aye.

CHAIRMAN KIMBLE: Chair votes aye.

12:27:39 We are adjourned. Thank you.

(Proceedings conclude at 12:27 p.m.)





C E R T I F I C A T E

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing proceedings were taken before me, Angela Furniss Miller, Certified Reporter No. 50127, all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

I CERTIFY that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome thereof.

I FURTHER CERTIFY that I have complied with the requirements set forth in ACJA 7-206. Dated at Litchfield Park, Arizona, this 17th of August, 2026.

Angela Furniss Miller, RPR, CR
CERTIFIED REPORTER (AZ50127)

* * *

I CERTIFY that Miller Certified Reporting, LLC, has complied with the requirements set forth in ACJA 7-201 and 7-206. Dated at LITCHFIELD PARK, Arizona, this 17th of August, 2026.

Miller Certified Reporting, LLC
Arizona RRF No. R1058

THE STATE OF ARIZONA

CITIZENS CLEAN ELECTIONS COMMISSION

REPORTER'S TRANSCRIPT OF VIRTUAL PUBLIC MEETING

Phoenix, Arizona

August 27, 2026

10:01 a.m.

MILLER CERTIFIED REPORTING, LLC
RRF Number R1058
12725 West Indian School Road
Suite F-100
Avondale, Arizona 85392
623-975-7472
Office@MillerCertifiedReporting.com

Prepared By:
**Angela Furniss Miller, RPR**
Certified Reporter
Certificate No. AZ50127





VIRTUAL PUBLIC MEETING, BEFORE THE CITIZENS CLEAN ELECTIONS COMMISSION, convened at 10:01 a.m. on August 27, 2026, in the presence of the following Board Members:

Ms. Christina Werther, Acting Chair
Mr. Galen Paton
Mr. Steve Titla
Mr. Sam Crump

OTHERS PRESENT:

Thomas Collins, Executive Director
Paula Thomas, Executive Officer
Mike Becker, Policy Director
Gina Roberts, Voter Education Director
Avery Xola, Voter Education Manager
Alec Shaffer, Web Content Manager
Craig Morgan, Taft Law
Bill Richards, Richards & Moskowitz
Samantha Fox, Richards & Moskowitz
Angela Miller, Miller Certified Reporting
Cathy Herring, KCA

MEMBERS OF THE PUBLIC:

Aaron Borders
Caitlin Sievers
Gina Swoboda
Jane Evans
Jeremy Duda
Jon Ralston, AZ Green Party
Lisa Everett
Nancy Hawkins
Nick Myers
Richard Grayson
Scott Neely
Tim LaSota, Timothy LaSota PLC
Thomas M. Ryan, Esq.
Wayne Schutsky, KJZZ





P R O C E E D I N G

ACTING CHAIR WERTHER: Okay. Good morning, everyone. I'm Christina Werther, Acting Chair today, and I call this meeting of the Citizens Clean Elections Commission to order. It is 10:01 a.m. on August 27th, 2026.

Today's meeting is being held virtually. With that, we'll take attendance. Commissioners, please identify yourselves for the record.

00:00:24 COMMISSIONER CRUMP: Sam Crump.

COMMISSIONER PATON: Galen Paton.

COMMISSIONER TITLA: Steve Titla.

ACTING CHAIR WERTHER: And Mark Kimble is absent, so we have four Commissioners who are present, and we have a quorum.

For Item Number II, discussion and possible action on the meeting minutes for July 23rd, August 4th, and August 14th. Commissioners, you have the minutes in your packets. Is there any discussion?

00:00:47 (No audible response.)

ACTING CHAIR WERNER: Hearing none, is there a motion to approve the minutes for these three meetings?

COMMISSIONER CRUMP: I'll move their approval.

COMMISSIONER TITLA: Second. Steve Titla.

ACTING CHAIR WERTHER: Commissioner Crump has





made motion to approve the minutes. Commissioner Titla has seconded. I'll call the roll.

Commissioner Crump.

COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: And Chair votes aye.

00:01:18 So the minutes are approved 4-to-0.

Item Number III is the Executive Director's report, including enforcement and regulatory updates and an update on participating candidates.

Tom, would you please provide the highlights of your report?

MS. HERRING: Tom, you are muted.

MR. COLLINS: I apologize. Chair Werther, members of the Commission, I just want to make a few highlights from the Executive Director report.

00:02:23 First, the general election voter education guide had -- has gone to print. We had 208 candidates eligible for inclusion. And, importantly, we were able to include the lieutenant governor candidates in the guide, so we did cancel the supplemental mailing. I think we'd provided some notice that we were anticipating that might happen if this came to

(No audible response.)
ACTING CHAIR WERTHER: Okay. Mr. LaSota, did you want to make any further comments?
MR. LA SOTA: No, thank you, Madam Chair.
ACTING CHAIR WERTHER: Thank you.
So any discussion from the Commissioners, or is there a motion from the member of the Commission to move into executive session for legal advice?
COMMISSIONER CRUMP: I make a motion we move into closed section for legal advice on this matter.
ACTING CHAIR WERTHER: Is there a second?
COMMISSIONER TITLA: I second that motion. Steve Titla.
ACTING CHAIR WERTHER: Okay. Commissioner Crump has made the motion for executive session; Commissioner Titla has seconded. I'll call the roll.
Commissioner Crump.
COMMISSIONER CRUMP: Aye.
ACTING CHAIR WERNER: Commissioner Paton.
COMMISSIONER PATON: Aye.
ACTING CHAIR WERNER: Commissioner Titla.
COMMISSIONER TITLA: Aye.
ACTING CHAIR WERTHER: And Chair votes aye.
So with a 4 -- vote of 4-to-0, we're moving into executive session.





For this e-session those attending are the Commissioners, Craig Morgan who is our Independent legal counsel, and then I believe Angela for our minute taking.
(Whereupon the proceeding is in executive session from 10:23 a.m. until 10:32 a.m.)

* * * * *

(Whereupon all members of the public are present and the proceeding resumes in general session.)

ACTING CHAIR WERTHER: Thank you. Does any Commissioner want to make a motion regarding the order in MUR 26-06?
COMMISSIONER TITLA: Yeah, this is Steve Titla. I'd like to make a motion to issue the order.
ACTING CHAIR WERTHER: Issue the compliance order?
COMMISSIONER TITLA: Yes.
ACTING CHAIR WERTHER: Is there a second?
COMMISSIONER CRUMP: Madame Chair?
COMMISSIONER PATON: I'll second it, Paton.
COMMISSIONER CRUMP: Sorry.
ACTING CHAIR WERTHER: I'm sorry I heard two at the same time.





Do you want to -- Commissioner Crump, do you want to...
COMMISSIONER CRUMP: I just, I wanted to propose an amendment to the motion. I don't know if you want to get the second first and then.
COMMISSIONER PATON: No, I'll take the second off.
ACTING CHAIR WERTHER: Okay.
COMMISSIONER CRUMP: Okay. I -- I wanted to propose an amendment. I think Commissioner Titla's motion was to approve the proposed order; is that what I heard? Okay.
ACTING CHAIR WERTHER: Yes.
COMMISSIONER CRUMP: And I would like to propose that we amend it by removing Roman IV, paragraph Roman IV subpart -- sorry. Well, I guess it's under the actual order language at the end of page 2. So numeral 4 subpart (b) which starts out: "All documents and communication reflecting Mesa Sign Shop."
ACTING CHAIR WERTHER: So you want to remove that from the compliance order, number 4(b)?
COMMISSIONER CRUMP: Correct.
ACTING CHAIR WERTHER: And Craig, maybe help me just to make sure, is it fine to just adopt that amendment, or does Commissioner Titla need to restate his





motion?
MR. MORGAN: I think the appropriate thing to do is there's a motion that wasn't seconded, restate the motion -- restate the motion as it relates to -- if someone wants to make another motion. I think you make a record that the first motion was not seconded, all right. I think someone makes a new motion with this new amendment. And I think as I understand the amendment, Madam Chair, it's to -- I'm sorry, did I miss? Was it to strike the entire paragraph or just clarify that the paragraph only applies to the candidate? I'm sorry.
COMMISSIONER CRUMP: Yeah, thank you, Mr. Morgan. That would be helpful I think.
So my -- my proposed amendment to the motion is that number 4(b) be amended so that it's clear it only applies to the participating candidate and his campaign.
MR. MORGAN: So, Madam Chair, if I may, members of the Commission, I think the appropriate move then is just to clarify, make the motion to approve as amended -- as amended by Commissioner Crump and then go from there.
ACTING CHAIR WERTHER: Okay. So do we need to restate it then?
MR. MORGAN: I would just to be careful, yes.
ACTING CHAIR WERTHER: Okay. So should Commissioner Titla do that since he did the first one or does

it matter?
(Simultaneous crosstalk.)
MR. MORGAN: I don't know it matters at this point. The first motion didn't get a second, so.
ACTING CHAIR WERTHER: Sure. Okay. Commissioner Crump, do you want to make that motion?
COMMISSIONER CRUMP: Sure. If it's all right with Commissioner Titla, then I'll just go ahead and do that.
So I would make a motion that we approve MUR 26-06, the draft compliance order, that we approve that with the amendment in number 4(b) that that paragraph be amended to state that it only apply to the participating candidate and his campaign committee.
ACTING CHAIR WERTHER: And there is a --
COMMISSIONER PATON: I'll second that, Paton.
ACTING CHAIR WERTHER: Okay. So Commissioner Crump has made the motion to approve MUR 26-06, draft compliance order, with the amendment 4(b) be amended that it only applies to participating candidate and his campaign. Commissioner Paton has seconded the motion, so I'll call the roll.
Commissioner Crump.
COMMISSIONER CRUMP: Aye.
ACTING CHAIR WERNER: Commissioner Paton.
COMMISSIONER PATON: Aye.





ACTING CHAIR WERNER: Commissioner Titla.
COMMISSIONER TITLA: Aye.
ACTING CHAIR WERTHER: And Chair votes aye. With a vote of 4-to-0, the motion passes.
Okay. Item V is review, consideration, discussion, analysis and possible action on repayment recommendation involving three participating candidates: Risa Lombardo is participating candidate for governor; Scott Neely, a participating candidate for governor; and Duwayne Collier, participating candidate for Secretary of State.
Commissioners, you have the letters sent by the Executive Director in your packet. The Commission's independent legal advisor for this matter is Bill Richards and Samantha Fox of Richards & Moskowitz.
My -- a suggestion would be that we at least hear from Tom Collins, our Executive Director, and then if the Respondents and the representative -- which I believe Mr. LaSota said he's representing them, or at least maybe one of them today -- and then we may want to go into executive session just since this is the first time we're hearing about this item to at least get some legal advice without sort of the framework of this process.
So Tom if you'd like to proceed, please just come with your opening statement on this matter.
MR. COLLINS: Thank you, Madam Chair,





Commissioners.
So as Madam Chair mentioned, I want to bring the Commission up to date on our efforts to understand how Ms. Lombardo, Mr. Collier, and Mr. Neely obtained and used in some cases Clean Elections Fund.
Before I begin I want to also make sure the record is clear on where we are procedurally. As you mentioned, the Commission has its own legal counsel, and I have counsel assisting me with this. And so, I'm obviously not here to provide you legal advice, the Commission, or tell you what you can or can't do.
Obviously, we sent notice to the campaign at the e-mail addresses that they use. And by virtue of -- I see Mr. Neely and Mr. LaSota that it appears for all of the --
UNKNOWN MALE: Is this for lunch again?
COMMISSIONER TITLA: Where?
UNKNOWN MALE: Oh. We're taking orders --
ACTING CHAIR WERTHER: Commissioner Titla, can you just mute yourself? Thank you.
Sorry, Tom.
MR. COLLINS: No, no. So, and there's a reason we're proceeding this way. Because this is an ongoing effort and, you know, ordinarily there would be good reason not to disclose anything sooner than we have to. Doing so creates some risk of evidentiary loss, you know, some





compromise. But we have set this here in order to ensure that Respondents have additional notice of the concerns we have identified. And they will have, as you identified already, Madam Chair, have an opportunity to respond to that.
And I think that this is appropriate given the repayment -- potential repayment obligations that we noted.
It doesn't mean that I -- what I present today reflects the entirety of the evidence we have or other evidence that we may obtain. As I mentioned in the letter specifically, you know, we're not anticipating asking the Commission to take action today. But I think that we have developed sufficient evidence that the Commission needs to understand where we are and where I expect this to go.
Now let me be precise about what the issue is here. This is not a request that the Commission impose a penalty because it believes fraud occurred. This is a narrower question. The question is, under the rules were these candidates entitled to the public funds they received.
Clean Elections Funding is not money to which candidate's automatically entitled. The candidate has to satisfy the statutory requirements for qualification before becoming entitled to public funding. And among the most fundamental requirements are the $5 contribution. Those $5 contributions are not simply paperwork, but they're a mechanism by which a candidate demonstrates the required

reporting issue, you know, where the campaign finance report need -- you know, could be amended to provide that additional detail. That's not a fine; that's just an amended report. That's another nothing burger.

And, oh, by the way, I brought Mr. Collins evidence of significant omissions in -- in the -- in the campaign finance reports of -- of certain candidates, and he told me he's not -- he's not doing anything about it.

So, you know, it -- it's -- this is -- this is something out of *The Twilight Zone*. He's got this theory and how did this happen and how did that happen, and a lot of words I, frankly, didn't understand. Like the -- was it the block in the chain of presumptions and the inferences.

Look, that's -- that's -- there's nothing but smoke and mirrors in Mr. Collins's letter. There are nothing -- there's nothing to rely on.

And I -- I think you should take action. I think you should reject this recommendation so you don't leave these candidates in a state of limbo. As it is, we're not giving the money back. Period. End of story. It was earned. It was properly certified by Adrian Fontes who did the job he was supposed to do, despite Mr. Collins claiming now three months later that he didn't. Obviously a claim that's been made in error.

And these candidates do not deserve this.





Mr. Neely doesn't deserve it either. I don't represent him, but I can certainly under why -- why he's not in a hurry to give more names to -- to Mr. Collins. Because every name he gets sort of a -- is another subpoena, another interview. And I think this has gone way too far.

It's the job of this Commission to put a stop to it. Now we're talking about donors are gon- -- are being investigated. We're talking about volunteers. And -- and the sin of the donors is that they didn't donate before.

So I think it's time for this to end. The letter is nothing but smoke and mirrors and -- and sort of -- well, unsupported conspiracy theories. So with that, I'll stop talking.

ACTING CHAIR WERTHER: Thank you, Mr. LaSota. I think you're still sharing your screen. Oh, there we go. Thank you.

Does any Commissioner want to make a motion for executive session?

COMMISSIONER CRUMP: I'll make a motion that we move to executive session for legal advice on this matter.

ACTING CHAIR WERTHER: Is there a second?

COMMISSIONER PATON: I'll second. Paton.

ACTING CHAIR WERTHER: Commissioner Crump has made the motion for executive session for legal advice. Commissioner Paton has seconded. I'll call the roll.





Commissioner Crump.

COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: And Chair votes aye. So by 4-to-0, we're going to move into executive session.

For those attending, again, it's the Commissioners, Bill Richards and Samantha Fox are our independent legal advisors, and then Angela for our minutes.

(Whereupon the proceeding is in executive session from 11:32 a.m. until 11:58 a.m.)

* * * * *

MS. HERRING: We are back from executive session.

ACTING CHAIR WERTHER: Perfect. Thank you. Just making sure all the Commissioners made it here. Okay.

So we're back in open session. Any further discussion by the Commissioners?

(No audible response.)

ACTING CHAIR WERTHER: If not, is there a motion regarding the repayment recommendations?





COMMISSIONER CRUMP: Yeah. Madam Chair, I would like to make a motion.

ACTING CHAIR WERTHER: Yes, Commissioner Crump.

COMMISSIONER CRUMP: All right. So I would move that the Commissioners vote to provide the following direction to the Executive Director regarding the information contained in his letter dated August 25, 2026, to Candidate Risa Lombardo the information provided to the Commissioners in Executive Director Collins' August 25th, 2026, letter provides sufficient cause to initiate proceedings that include completion of an investigation and submission to the Commissioners of a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Risa Lombardo in connection with matters addressed by the Executive Director's letter.

Therefore, the -- under this motion, the Commission directs the Executive Director to complete the investigation discussed in his August 25th, '26, letter to Candidate Lombardo, and provide the Commissioners by hopefully by September regular meeting, but no later than our October regular meeting of 2026, a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Risa Lombardo so that the Commission may consider and/or act upon any such

recommendation at an appropriately noticed meeting of the Commission.

And the Executive Director is authorized to utilize all powers and authority of the Commission in completing his investigation regarding Candidate Lombardo, including issuance and enforcement of subpoenas to witnesses to compel attendance and testimony, and issuance and enforcement of subpoenas for production of books, papers, records, or other material records all as authorized by A.R.S. Section 01:59:55 16-956(B).

ACTING CHAIR WERTHER: Is there a second?

COMMISSIONER TITLA: I second that motion.

ACTING CHAIR WERTHER: Okay. Commissioner Crump has made a motion to provide direction to the Executive Director regarding Risa Lombardo as Commissioner Crump has explained. Commissioner Titla has seconded the motion. I'll call the roll.

Commissioner Crump.

COMMISSIONER CRUMP: Aye.

02:00:16 ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: Chair votes aye.

A vote of 4-to-0 on that motion, it passes.





Is any Commissioner have another motion?

COMMISSIONER CRUMP: Yes, Madam Chair. With your indulgence, I have a second motion.

ACTING CHAIR WERTHER: Yes, Commissioner Crump. Please proceed.

COMMISSIONER CRUMP: I move that the Commission vote to provide the following direction to the Executive Director regarding information contained in his letter dated August 25, 2026, to Candidate Duwayne Collier. The information provided to the Commissioners in Executive Director Collins' August 25th, 2026, letter provides sufficient cause to initiate proceedings that include completion of an investigation and submission to the Commissioners of a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Duwayne Collier in connection with matters addressed by the Executive Director's letter.

Therefore, the Commission directs the Executive Director to complete the investigation discussed in his August 25th, '26, letter to Candidate Collier, and provide the Commissioners hopefully by the September regular meeting of this year, but no later than our October regular meeting of this year, a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Duwayne Collier so that the





Commission may consider -- excuse me. Back to where I was -- so that the Commission may consider and/or act upon any such recommendation at an appropriately noticed meeting of the Commission.

The Executive Director is authorized to utilize all powers and authority of the Commission in completing his investigation regarding Candidate Collier, including issuance and enforcement of subpoenas to witnesses to compel attendance and testimony, and issuance and enforcement of subpoenas for production of books, papers, records, and/or other material records all as authorized by A.R.S. 16-956(B).

ACTING CHAIR WERTHER: Commissioners, is there a second?

COMMISSIONER TITLA: I second.

ACTING CHAIR WERTHER: Okay. Commissioner Crump has made a motion to provide direction to the Executive Director regarding Duwayne Collier, and Commissioner Titla has seconded that motion. I'll call the roll.

Commissioner Crump.

02:02:45 COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: Chair votes aye.





With a vote of 4-to-0, the motion passed.

And do we have any other motions?

COMMISSIONER CRUMP: Yes, Madam Chair. I got one third motion.

ACTING CHAIR WERTHER: Yes, continue.

COMMISSIONER CRUMP: I move that the Commission vote to provide the following direction to the Executive Director regarding information contained in his letter dated August 25, 2026, to Candidate Scott Neely. The information provided to the Commissioners in Executive Director Collins' August 25th, 2026, letter provides sufficient cause to initiate proceedings that include completion of an investigation and submission to the Commissioners of a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Scott Neely in connection with matters addressed by the Executive Director's letter.

Therefore, the Commission directs the Executive Director to complete the investigation discussed in his August 25th, 2026, letter to Candidate Lombardo -- I'm sorry, Candidate Neely and provide the Commissioners hopefully by the September regular meeting of this year, but no later than the October regular meeting of this year, a final report and recommendation regarding whether to issue. And, if so, the appropriate terms for a repayment order to Candidate Scott

Neely so that the Commission may consider or act upon any such recommendation at an appropriately noticed meeting of the Commission.

The Executive Director is authorized to utilize all powers and authority of the Commission in completing his investigation regarding Candidate Neely, including issuance and enforcement of subpoenas to witnesses to compel attendance and testimony, and issuance and enforcement of subpoenas for production of books, papers, records, and/or other material records all as authorized by A.R.S. 16-956(B).

02:04:44

ACTING CHAIR WERTHER: Thank you, Commissioner Crump.

Is there a second?

COMMISSIONER TITLA: I second.

ACTING CHAIR WERTHER: Okay. Commissioner Crump has made a motion to provide direction to the Executive Director regarding Scott Neely. Commissioner Titla has seconded. I'll call the roll.

Commissioner Crump.

COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: And Chair votes aye.





With a vote of 4-to-0, the motion passes.

That concludes that item. We're going to be moving now to Item Number VI, which is a discussion and possible action on an administrative fine involving Gwendalyn "Gwen" Johnston, a participating candidate for legislature for failure to appear at a Commission sponsored debate.

Commissioners, you have the relevant materials in your packets. And then I'll have the Executive Director make a statement. If Ms. Johnson or her representative is here, they may speak.

02:05:44

So Tom, if you want to please proceed.

Oh. And if we can just make sure everyone is muted. Thank you.

MR. COLLINS: Madam Chair, thank you.

So this is a little bit different thing. We have a rule, Rule 107, that says that, you know, if you are a participating candidate, you're obligated to attend a Commission debate unless you've sought a prior excuse.

In this case, Johnston did not attend and -- you know. And as I noted in my letter to her, she hadn't taken the training before this, the training goes into this. But, you know, on the other hand she is working with a very experienced former Clean Elections candidate.

02:06:26

You know, you -- you have her response. I don't know that I -- I feel like I ought to categorize it all,





unless you have questions about it.

You know, the sta- -- the rule here is not very complicated. It says if you -- if you -- having missed, if you're excuse, you're later excuse, doesn't fit within the categories there then you have -- you're fined $500.

My read on the response is I don't really think it gets at those -- those excuses. But, you know, so I think the $500 fine is appropriate.

But I'll take any questions.

02:07:25

ACTING CHAIR WERTHER: Commissioners, do you have any questions?

(No audible response.)

ACTING CHAIR WERTHER: Tom, I just want to confirm. So there, I guess, it looks like in her statement, it seems that she said she was first notified on May 16th. But it does not look like she reached out to any staff before the May 19th debate; is that --

MR. COLLINS: No, we don't -- we don't have any -- anything -- any record until the records we provided respecting staff member's efforts to contact her on the day of.

02:08:03

So our log, contact log that I think is in the packet --

ACTING CHAIR WERTHER: Yes.

MR. COLLINS: -- that's -- that's the complete





communication.

Part of this has to do with the expectation that the candidate, you know, is to know what the candidate's obligations are, you know. So, you know, we do try -- we do outreach, but we do rely on candidate having awareness of their obligations.

I mean --

ACTING CHAIR WERTHER: Okay.

MR. COLLINS: So, I mean, I'm not -- I'm not -- so I don't know that that -- it was not a failure of notice if that makes.

02:08:41

ACTING CHAIR WERTHER: Sure.

MR. COLLINS: If the notice is not the notice that the candidates would have preferred, I don't know that's the standard the rule articulates.

ACTING CHAIR WERTHER: Did any Commissioners have any questions for Tom?

(No audible response.)

ACTING CHAIR WERTHER: Is Ms. Johnston or any representative for Ms. Johnston online wishing to speak?

02:09:05

(No audible response.)

ACTING CHAIR WERTHER: I don't know that I see anybody.

Okay. Is there any motion from Commissioner regarding the administrative fine?

COMMISSIONER CRUMP: Madam Chair, I would make a motion that we impose administrative fine of $500 on Participating Candidate Gwen Johnston for failure to appear at the debate.

ACTING CHAIR WERTHER: Is there a second?

COMMISSIONER PATON: I'll second. Paton.

ACTING CHAIR WERTHER: Commissioner Crump has made the motion to -- for the administrative fine of $500 to Gwendalyn "Gwen" Johnston for failing to appear for a debate. 02:10:00 Commissioner Paton has seconded. I'll call the roll.

Commissioner Crump.

COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.

COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: Chair votes aye.

So vote of 4-to-0. The motion passes.

This is the time now Item Number VII, for 02:10:17 consideration of comments and suggestions from the public. Please limit your comments to no more than three minutes.

So if you're a member of the public and wish to make a comment, please use that raise hand feature in the icon in the Zoom, and I'll call on individuals one at a time. When your name is called, please unmute yourself and state





your name for the record before beginning your comments.

Does anyone on Zoom wish to make a comment?

(No audible response.)

ACTING CHAIR WERTHER: Okay. I don't see any.

So action taken as a result of public comment, of course, was always limited to directing staff, studying the matter, rescheduling for further consideration.

Since we have none, public may also submit comments by e-mail at ccec@azcleanelections.gov.

02:11:08 Item Number VIII, at this time I'm open to a motion to adjourn.

COMMISSIONER CRUMP: Madam Chair, I move that we adjourn.

ACTING CHAIR WERTHER: Is there a second?

COMMISSIONER PATON: I'll second. Paton.

COMMISSIONER TITLA: I'll second.

ACTING CHAIR WERTHER: Okay. I heard Mr. Paton.

So, Commissioner Crump has made the motion to 02:11:26 adjourn with Commission Paton seconding. I'll call the roll.

Commissioner Crump.

COMMISSIONER CRUMP: Aye.

ACTING CHAIR WERNER: Commissioner Paton.

COMMISSIONER PATON: Aye.

ACTING CHAIR WERNER: Commissioner Titla.





COMMISSIONER TITLA: Aye.

ACTING CHAIR WERTHER: Chair votes aye.

With a vote of 4-to-0, the motion passes and the meeting is adjourned. Thank you, everyone.

(Whereupon the meeting concludes at 12:13 p.m.)





C E R T I F I C A T E

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing proceedings were taken before me, Angela Furniss Miller, Certified Reporter No. 50127, all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

I CERTIFY that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome thereof.

I FURTHER CERTIFY that I have complied with the requirements set forth in ACJA 7-206. Dated at Litchfield Park, Arizona, this 1st of September, 2026.

Angela Furniss Miller, RPR, CR
CERTIFIED REPORTER (AZ50127)

* * *

I CERTIFY that Miller Certified Reporting, LLC, has complied with the requirements set forth in ACJA 7-201 and 7-206. Dated at LITCHFIELD PARK, Arizona, this 1st of September, 2026.

Miller Certified Reporting, LLC
Arizona RRF No. R1058

# NOTICE OF PUBLIC MEETING AND POSSIBLE EXECUTIVE SESSION OF THE STATE OF ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION

| | |
|---|---|
| **Virtual Meeting:** | **Citizens Clean Elections Commission** |
| | **Zoom Meeting: https://us02web.zoom.us/j/87997316858** |
| | **Meeting ID: 879 9731 6858** |
| | **One tap mobile: +1-669-900-6833,,87997316858#** |
| | **Commission Address: 1110 W. Washington, Suite 250, Phoenix, Arizona 85007** |
| **Date:** | **Friday, August 14, 2026** |
| **Time:** | **10:30 a. m.** |

Pursuant to A.R.S. § 38-431.02, notice is hereby given to the Commissioners of the Citizens Clean Elections Commission and the general public that the Citizens Clean Elections Commission will hold a regular meeting, which is open to the public on August 14, 2026. **This meeting will be held at 10:30 a.m. This meeting will be held virtually. The Zoom meeting room will be open by 10:15 a.m. at the latest**. Instructions on how the public may participate in this meeting are below. For additional information, please call (602) 364-3477 or contact Commission staff at ccec@azcleanelections.gov.

The meeting may be available for live streaming online at https://www.youtube.com/c/AZCCEC. You can also visit https://www.azcleanelections.gov/clean-elections-commission-meetings. Members of the Citizens Clean Elections Commission may attend in person, by telephone, video, or internet conferencing.

***Join Zoom Meeting***

**https://us02web.zoom.us/j/87997316858**

**Meeting ID: 879 9731 6858**

***One tap mobile***

**+1-669-900-6833,,87997316858# US**

# STATE OF ARIZONA

# CITIZENS CLEAN ELECTIONS COMMISSION

MUR: No. 26-06

## STATEMENT OF REASONS OF EXECUTIVE DIRECTOR

On behalf of the Citizens Clean Elections Commission (the "Commission"), the Executive Director hereby provides the Statement of Reasons for the recommendation that the Commission find reason to believe that violations of the Citizens Clean Elections Act and Commission rules (collectively, the "Act") occurred.

## Background

Lisa Everett filed a Complaint alleging that Dr. Ralph Heap had authorized campaign signs for his campaign that were placed throughout the state but had not accounted for the expense of those signs on his campaign finance reports. Exhibit 1. The Commission received other sworn statements regarding the signs. These documents have been provided to Tim La Sota, counsel to Dr. Heap.

The Complaint argues that Dr. Heap should have reported expenditures for signs and did not report contributions sufficient to cover the signs that were posted throughout the state. Complaint at 1. Under the Clean Elections Act, participating candidates agree to certain limits under A.R.S. § 16-941(A) and are obligated to account for their campaign activity under A.R.S. §§ 16-947, -948, and related rules. The Complainant also provided photos and locations of 184 signs deployed that are authorized by Dr. Heap. Nick Myers, a competing candidate, provided a sworn statement that Dr. Heap told Commissioner Myers he had 1,000 signs deployed. Exhibit 2 (Myers's statement).

Reports of payments to Dr. Heap's sign provider, reproduced below, show that signs for a statewide campaign cost more than what Dr. Heap reported. The campaign finance reports did not disclose any contributions or expenditures related to the signs that close to the amount paid by other candidates. Heap disclosed one payment of $644.47 on July 7, 2025 to Mesa Sign Shop, but no payments during the timeframe relevant to the Complaint. In his qualifying period recap report, Dr. Heap reported having raised a total of about $17,000, about $8,500 of which were turned over to the Commission as qualifying contributions.

## Conclusion

For the forgoing reasons the Commission should determine there is a reason to believe a violation of the Act and Rules may have occurred.

If the Commission determines by an affirmative vote of at least three (3) of its members that it has reason to believe a respondent has violated a statute or rule over which the Commission has jurisdiction, the Commission shall notify such respondent of the Commission's finding setting forth: (i) the sections of the statute or rule alleged to have been violated; (ii) the alleged factual basis supporting the finding; and (iii) an order requiring compliance within fourteen (14) days. During that period, the Respondent may provide any explanation to the Commission, comply with the order, or enter into a public administrative settlement with the commission. A.R.S. § 16-957(A) & A.A.C. R2-20-208(A).

After the Commission finds reason to believe that a violation of a statute or rule over which the Commission has jurisdiction has occurred, the Commission shall conduct an investigation. A.A.C. R2-20-209(A). The Executive Director may subpoena all of the Respondent's records documenting disbursements, debts, or obligations to the present, and may authorize an audit.

Upon expiration of the fourteen (14) days, if the Commission finds that the alleged violator remains out of compliance, the Commission shall make a public finding to that effect and issue an order assessing a civil penalty in accordance with A.R.S. § 16-942, unless the Commission publishes findings of fact and conclusions of law expressing good cause for reducing or excusing the penalty. A.R.S. § 16-957(B).

After fourteen (14) days and upon completion of the investigation, the Executive Director will recommend whether the Commission should find probable cause to believe that a violation of a statute or rule over which the Commission has jurisdiction has occurred. A.A.C. R2-20-214(A). Upon a finding of probable cause that the alleged violator remains out of compliance, by an affirmative vote of at least three (3) of its members, the Commission may issue of an order and assess civil penalties pursuant to A.R.S. § 16-957(B). A.A.C. R2-20-217.

# AZPIA REPLY TO RESPONDENT'S AUGUST 7 SUBMISSION

**ARIZONA PUBLIC INTEGRITY ALLIANCE**

534 N. Orange • Mesa, Arizona 85201 • tjmontague@gmail.com • 602-717-3518

August 12, 2026

*Submitted Via Electronic Mail*

Thomas M. Collins, Executive Director

Citizens Clean Elections Commission

1110 W. Washington St., Suite 250

Phoenix, Arizona 85007

**RE: AZPIA Complaint of August 3, 2026 (as supplemented August 8, 2026) — Second Supplement and Memorandum Responding to Respondent's August 7, 2026 Submission in MUR-26-06**

Dear Director Collins and Members of the Commission:

Respondent's August 7, 2026 submission in MUR-26-06 responds to Ms. Everett's complaint, but the legal theory it advances reaches the same sign program at the center of AZPIA's own pending complaint, and its concluding request — dismissal and release of $370,000 in public funds — would resolve issues raised in both matters. AZPIA therefore submits this memorandum in further support of its complaint and for the Commission's consideration in MUR-26-06.

Respondent asks the Commission to dismiss, and to release $370,000 in public funds, on the theory that a statewide sign deployment was a vendor "extension of credit" that is "neither a contribution ... nor an expenditure ... until such time as payment is made." The theory rests on a single misunderstanding, so AZPIA begins with the rules that govern it — because once they are stated, the rest follows.

## I. THREE RULES DECIDE THIS MATTER

**Rule 1 — Spending happens when the campaign obligates itself, not when it pays.** "An expenditure or disbursement is deemed made either on the date the committee **authorizes the monies to be spent** or the date the monies are withdrawn from the committee's account." A.R.S. § 16-926(C)(2). The Commission's rules say the same thing for participating candidates: an expenditure is made "as of the date upon which the candidate or campaign **promises, agrees, contracts or otherwise incurs an obligation to pay** for goods or services," R2-20-110(A)(5), and an extension of credit must be reported "**as an expenditure, in an amount equal to the full future payment obligation, as of the date the contract, promise or agreement is made**," R2-20-110(B)(1). This is how spending works everywhere: a purchase on a credit card is spending when the card is swiped, not when the statement is paid. No one's December shopping happens in January because that is when the bill came due.

**Rule 2 — Payment is not the reporting trigger; the obligation is — and even unpaid credit is itself a mandatory line item.** Every campaign finance report must itemize

**PUBLIC COMMENT 2**

campaign placed an order," which concedes a campaign obligation and triggers Parts I–III). Whatever the reason, an obligation on which no demand has ever issued, with no written terms and no stated amount, cannot be found "substantially similar" to commercial credit; from the campaign's side it is indistinguishable from value received free of charge unless and until someone elects to collect.

Nor does the affidavit reach the conduct complained of. It describes the printing of one order, "made available for pickup." It says nothing about who transported and installed hundreds of four-foot signs across multiple counties — the major unreported cost the complaints identify — nothing about signs documented in the field relative to this order's timeline, nothing about earlier orders, and nothing about the signature-gathering operation in AZPIA's August 8 supplement. An affidavit about one print job cannot support dismissal of any complaint, still less the release of $370,000.

## V. THE QUESTION THE SUBMISSION RAISES: WHO STRUCTURED THIS

The arrangement has a shape: the campaign received and deployed the benefit during the capped primary period; no obligation appeared on any certified report; no invoice issued; and the statute's deemed-contribution date arrives only after the general election. A print shop does not design campaign-finance timing; candidates rarely do either. Someone decided how this purchase would be papered, when it would be billed, and that it need not be reported — the same categories of decision at issue in the sign-installation and petition operations described in AZPIA's supplement, for a campaign whose reports disclose **no consultant of any kind**. AZPIA does not allege who that was; it asks the Commission to find out. The Commission should compel the campaign to identify every person who advised it concerning the sign purchase, the financing or billing arrangement, or the position that the obligation was not reportable, and to produce the related communications — and should take the same evidence up through the examination AZPIA proposed in Sections III–IV of its supplement.

## VI. REQUESTED ACTION

AZPIA respectfully requests that the Commission: (1) decline to dismiss, and treat the admitted omission of the outstanding extension of credit as a reporting violation accruing under § 16-942(B); (2) compel production of the sign order records — order date and orderer, artwork transmittal, quantity and invoice amount, the unsent invoice, pickup identity, and all arrangements for transport and installation, together with all Mesa Sign Shop orders for the committee in 2025–2026; (3) compel identification of every person who advised the campaign on the purchase, its financing or billing, or its reporting treatment, with the related communications; (4) determine the total of unreported expenditures and in-kind value received — sign obligation, installation, and the signature operation valued in AZPIA's supplement — and compare that total to the $36,959 threshold of § 16-942(C) and the $147,836 adjusted primary spending limit; and (5) continue withholding Clean Elections funding pending resolution of this matter and AZPIA's August 8 supplement.

Respectfully submitted,

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON MY KNOWLEDGE, INFORMATION AND BELIEF.**

Executed this ____ day of August, 2026.

_________________________________

# NOTICE OF PUBLIC MEETING AND POSSIBLE EXECUTIVE SESSION OF THE STATE OF ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION

| | |
|---|---|
| **Virtual Meeting:** | **Citizens Clean Elections Commission** |
| | **Zoom Meeting: https://us02web.zoom.us/j/83417755836** |
| | **Meeting ID: 834 1775 5836** |
| | **One tap mobile: +1-669-444-9171,,83417755836# US** |
| | **Commission Address: 1110 W. Washington, Suite 250, Phoenix, Arizona 85007** |
| **Date:** | **Wednesday, September 2, 2026** |
| **Time:** | **2:00 p. m.** |

Pursuant to A.R.S. § 38-431.02, notice is hereby given to the Commissioners of the Citizens Clean Elections Commission and the general public that the Citizens Clean Elections Commission will hold a regular meeting, which is open to the public on September 2, 2026. **This meeting will be held at 2:00 p.m. This meeting will be held virtually. The Zoom meeting room will be open by 1:45 p.m. at the latest**. Instructions on how the public may participate in this meeting are below. For additional information, please call (602) 364-3477 or contact Commission staff at ccec@azcleanelections.gov.

The meeting may be available for live streaming online at https://www.youtube.com/c/AZCCEC. You can also visit https://www.azcleanelections.gov/clean-elections-commission-meetings. Members of the Citizens Clean Elections Commission may attend in person, by telephone, video, or internet conferencing.

***Join Zoom Meeting***

**https://us02web.zoom.us/j/83417755836**

**Meeting ID: 834 1775 5836**

***One tap mobile***

**+1-669-444-9171,,83417755836# US**

# Memorandum

To: Clean Elections Commissioners

From: Tom Collins

CC: Tim La Sota, Attorney for Ralph Heap

Craig Morgan, Independent Legal Advisor to the Commission MUR 26-06

Paula Thomas Executive Officer

Date: August 31, 2026

Re: MUR 26-06 Chronology of Actions and Communications Since August 14.

---

This memorandum is intended solely to provide the Commission with a chronology of staff actions, communications, and material developments following the Commission's August 14, 2026 Reason to Believe determination in MUR 26-06. It does not address the merits of the pending investigation.

Background

The Commission staff received a complaint regarding sign production and distribution against Dr. Ralph Heap, a participating candidate, in June.

Dr. Heap was notified he had qualified for funding on July 20, but that he had not submitted the sworn statement required by R2-20-106(A).

Dr. Heap requested to withdraw from the program July 31, but the Commission denied the request on August 4.

Dr. Heap submitted the statement under R2-20-106(A).

On August 14, the Commission directed that Dr. Heap's campaign receive funding.

In a separate action, the Commission determined there was reason to believe Dr. Heap had violated the Clean Elections Act and Rules.'

Chronology

**August 17 —Request for Campaign Records**

On August 17, staff sent Dr. Heap, through counsel, a written request for records in MUR 26-06. The request cited A.R.S. § 16-956(A)(7), A.A.C. R2-20-104(C)(6),

and Dr. Heap's agreement to participate in the Clean Elections program, and initially requested production by 5:00 p.m. August 24. Exhibit 1.

The request concerned the campaign's finances and the transaction underlying the Reason to Believe determination. It requested: campaign-account statements and records of transactions from accounts used for campaign purposes; agreements for services provided to the campaign; receipts, invoices, or other records supporting services, in-kind contributions, use of personal monies, or other transactions of value; and communications concerning the purchase and placement of the Mesa Sign Shop signs. *Id.* If a transaction lacked a written receipt or agreement, staff asked only that Heap identify the transaction, the persons involved, and the date the good or service was received. *Id.*

**August 20–24 — Mesa Sign Shop Subpoena and Contact with Owner Jim Torgeson**

On August 20, staff transmitted a subpoena directed to Mesa Sign Shop and owner Jim Torgeson to Mr. La Sota, along with a request that Dr. Heap return unspent primary monies pursuant to A.R.S. § 16-953 and communicate with the Commission staff regarding his debate obligations. Exhibit 2

The subpoena was tied specifically to Mr. Torgeson's August 7 declaration and to the Commission's August 14 reason-to-believe determination. It sought the underlying business records concerning the Heap sign order, including the order, quote or estimate, invoice, production records, dates of completion and availability, pickup or delivery records, account statements, payment terms, and related communications. Exhibit 3

Mr. La Sota advised staff on August 22 that he did not represent Mesa Sign Shop and could not accept service of the subpoena on its behalf. Exhibit 4. Staff acknowledged that response and proceeded to communicate directly with Mr. Torgeson concerning service and the subpoena.

Following direct communication with Mr. Torgeson, staff sent him a follow-up email on August 24. Exhibit 5. Staff expressly told Torgeson that it was not permitted to give him legal advice and explained that his declaration had been submitted as part of the response of a party whom staff was investigating. Staff advised Torgeson he should consider obtaining counsel.

**August 22–24 — Dr. Heap Requests and Receives Additional Time**

On August 22, Mr. La Sota responded to the August 17 document request by stating, without waiving objections, that production by the following Monday was "completely unrealistic." Exhibit 6. He requested an extension until the next Monday. *Id.*

On August 24, staff granted the requested one-week extension. Exhibit 7. In granting the extension, staff noted that campaign-account statements and records supporting approximately $8,500 in reported campaign expenses appeared to be materials Dr. Heap should have had available as candidate and treasurer, but nevertheless granted the requested additional time. *Id.*

**August 24 — La Sota Seeks Discussion of Resolution**

Also on August 24, Mr. La Sota invoked the Commission's rules concerning settlement and conciliation and asked staff to discuss resolution of MUR 26-06. Exhibit 8. He observed that the alternative appeared to be a lengthy enforcement process in the middle of an election. *Id.*

Staff responded by asking Mr. La Sota provide a written proposal to the attorney engaged by Staff for purposes of MUR 26-06. Exhibit 9.

**August 25 — Staff circulates enforcement process details and Proposed Order**

On August 25, in response to Mr. La Sota's August 18 demand for the notice required by R2-20-208(A), staff provided Mr. La Sota, Commission counsel, and the Commission with a detailed memorandum explaining the enforcement process under A.R.S. § 16-957 and the Commission's rules, together with a proposed compliance order. Exhibit 10.

The memorandum explained that following a reason-to-believe determination, a respondent may provide an explanation, comply with the order, or enter into a public administrative settlement; that the reason-to-believe determination also begins an investigation; and that the rules thereafter provide for probable-cause briefing, Commission consideration, conciliation, and possible penalties. Exhibit 11.

**August 27 — Torgeson Requests and Receives Additional Time**

On the morning of August 27, Mr.Torgeson contacted staff and stated that he was attempting to retain an attorney, was encountering conflicts, and needed a few additional days. Exhibit 12. He expressly stated that he was not attempting to obstruct the investigation and intended to comply with the subpoena with the assistance of counsel. *Id.*

Staff granted the request that afternoon. It extended the deadline for objections to September 7 and the deadline for compliance with the subpoena to September 15. Exhibit 13.

**August 27 — Commission Acts on Heap's Request for a Compliance Order**

On August 27, the Commission considered the compliance-order issue that La Sota had asked it to address. The Commission approved an order consistent with the Reason to Believe determination.

At the Commission Meeting, Mr. La Sota addressed the Commission. *August 27, 2026 Clean Elections Commission Meeting*, YouTube, beginning at 15:21 (Aug. 27, 2026), https://youtu.be/xvu1Zl16fxQ?t=921. During the course of his statement, Mr. La Sota said that Dr. Heap has been "bombarded" with Complaints, that the process was "byzantine" and that "Dr. Heap does not want to anything to do with this program anymore and he's requesting now that he be allowed to withdraw." He also objected to Staff's response to his request to discuss a conciliation or public administrative settlement.[1]

The order expressly stated that the investigation would continue during and after the compliance period. Exhibit 14. Staff transmitted the approved order to La Sota and the Commission's independent legal advisor for MUR 26-06 afternoon. *Id.*

**August 28 — Renewed Withdrawal Request**

On August 28, Mr. La Sota transmitted a letter signed by Heap stating that Heap elected to withdraw as a participating candidate under R2-20-108(A), that his reasons were those stated at the prior day's hearing, and that he would return all Clean Elections funds unspent. Exhibit 15.

---

[1] One additional complaint concerning Dr. Heap, MUR 26-09, is pending. Mr. La Sota has submitted a response, and staff is reviewing that matter separately in the ordinary course.

Staff immediately circulated the request to the Commission, quoted the provision on which Dr. Heap's request relied. Exhibit 16. Staff stated in an email to the Commission, it's independent advisor, and Mr. La Sota, that the request raised the same issue the Commission had considered previously. *Id.* Staff recommended that the Commission consider the renewed request within one week. Exhibit 17.

Dr. Heap's campaign delivered a check to the Commission's Mail and Delivery address August 28.

Gmail **Exhibit 12**

Thomas Collins <thomas.collins@azcleanelections.gov>

## Mesa Sign Shop Subpeona

1 message

**Admin .** [redacted]
To: thomas.collins@azcleanelections.gov

Thu, Aug 27, 2026 at 9:52 AM

Sir,

I am trying to retain an attorney for this situation. I will say that I am not trying to be difficult nor obstruct your investigation in any way, shape or form.

It's in my best interest to make sure I comply with the best and most relevant information and will do so as told with an attorney involved. It does appear that many attorneys have conflicts, so give me a few days as to not be "non-compliant."

Respectfully,

Jim Torgeson
[redacted]

[redacted]

**Mesa Sign Shop**

For all your Sign & Printing Needs | *Experts in Real Estate & Political printing*

signs - banners - business/palm cards - flyers/brochures - decorated apparel - vehicle graphics

Check out MesaSignPromotions.com for your Advertising & Promotional needs

[redacted]

MesaSignShop.com

[redacted]

NEED SWAG?

Gmail **Exhibit 13** Thomas Collins <thomas.collins@azcleanelections.gov>

## Re: Mesa Sign Shop Subpoena

1 message

**Thomas Collins** <thomas.collins@azcleanelections.gov> Thu, Aug 27, 2026 at 1:38 PM
To: "Admin ." [redacted]

Mr. Torgeson (Jim)

We can extend the deadline for objections and compliance by one week. That would make your objections due Monday September 7, 2026, and the deadline for compliance with the subpoena would be Tuesday, September 15, 2026.

Thank you for reaching out,

Tom

On Thu, Aug 27, 2026 at 9:53 AM Admin . <[redacted]> wrote:

> Sir,
>
> I am trying to retain an attorney for this situation. I will say that I am not trying to be difficult nor obstruct your investigation in any way, shape or form.
>
> It's in my best interest to make sure I comply with the best and most relevant information and will do so as told with an attorney involved. It does appear that many attorneys have conflicts, so give me a few days as to not be "non-compliant."
>
> Respectfully,
>
> Jim Torgeson
> [redacted]
>
> --
>
> **Mesa Sign Shop**
>
> For all your Sign & Printing Needs | *Experts in Real Estate & Political printing*
>
> signs - banners - business/palm cards - flyers/brochures - decorated apparel - vehicle graphics
>
> Check out MesaSignPromotions.com for your Advertising & Promotional needs
>
> 480-593-7500
>
> admin@mesasignshop.com
>
> MesaSignShop.com
>
> 756 W Main st. Mesa, Az 85201
>
> NEED SWAG?

# NOTICE OF PUBLIC MEETING AND POSSIBLE EXECUTIVE SESSION OF THE STATE OF ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION

**Location:** **Citizens Clean Elections Commission**

**1110 W. Washington, Suite 250**

**Phoenix, Arizona 85007**

**Date:** **Thursday, October 29, 2026**

**Time:** **10:00 a. m.**

Pursuant to A.R.S. § 38-431.02, notice is hereby given to the Commissioners of the Citizens Clean Elections Commission and the general public that the Citizens Clean Elections Commission will hold a regular meeting, which is open to the public on October 29, 2026. This meeting will be held at 10:00 a.m. **This meeting will be held in person and virtually. The meeting location will be open by 09:45 a.m. at the latest**. Instructions on how the public may participate in this meeting are below. For additional information, please call (602) 364-3477 or contact Commission staff at ccec@azcleanelections.gov.

The meeting may be available for live streaming online at https://www.youtube.com/c/AZCCEC. You can also visit https://www.azcleanelections.gov/clean-elections-commission-meetings. Members of the Citizens Clean Elections Commission may attend in person, by telephone, video, or internet conferencing.

***Join Zoom Meeting***

**https://us02web.zoom.us/j/89185604881**

**Meeting ID: 891 8560 4881**

***One tap mobile***

**+1-719-359-4580,,89185604881# US**

Please note that members of the public that choose to use the Zoom video link must keep their microphone muted for the duration of the meeting. If a member of the public wishes to speak, they

# CITIZENS CLEAN ELECTIONS COMMISSION
# EXECUTIVE DIRECTOR REPORT
# October 29, 2026

## Announcements:

The General Election is November 3, 2026. Voters can find their voting location at azcleanelections.gov/voter-dashboard.

Key dates

- Polls are open from 6am-7pm on November 3. Ballots must be returned by 7 p.m. to be counted.
- Unofficial results will be released and ongoing beginning at 8pm on election night.
- ID is required to vote in person on Election Day.
- A list of acceptable ID is on the website or voters can use our ID at the Polls tool to ensure they are prepared. https://www.azcleanelections.gov/how-to-vote/what-id-do-i-need-at-the-polls
- The signature curing deadline is November 8. Counties will make efforts to contact voters whose signature requires curing. Signature curing is when there is an issue matching the signature on an mail ballot affidavit envelope with a voter's record.
- The deadline for providing ID for conditional provisional ballots is November 8.
- The statewide canvass is November 23.

## Voter Education and Outreach:

Clean Elections staff continued voter education efforts through community events, media appearances, and partnerships ahead of the General Election.

- **Community Outreach**
  - Avery, Gina, and Tom hosted Coffee Talks with Clean Elections at Showtime Cafe in Phoenix. Attendees worked through sample ballots and voter research exercises and discussed their priorities and engagement with local government.
  - Staff also provided election information and voter education resources at the Tempe Public Library Volunteer Fair and the City of Phoenix Future Leaders Town Hall.
  - Captain Activate! appeared at the Tempe City Departments Family Day event.

- Arizona Citizens Clean Elections Commission v. Fontes, Arizona Court of Appeals, 2 CA-CV 2026-0185
  - The Court of Appeals now has jurisdiction over the party's appeal.

- Center for Arizona Policy v. Arizona Secretary of State, Maricopa Superior Court, CV2022-016564
  - This is the matter on remand after the Arizona Supreme Court upheld the Voters' Right to Know Act against a facial challenge under the Arizona Constitution. The Court remanded to allow consideration of Plaintiffs' as applied challenge.
- Americans for Prosperity v. Meyer, No. 24-2933 (9th Cir.).
  - The Court upheld VRKA on a 2-1 vote. Plaintiff declined to seek en banc review from the full Ninth Circuit Court of Appeals, there is still time for Plaintiff to file a petition for certiorari with the U.S. Supreme Court.
  - The podcast Advisory Opinions recently discussed the Ninth Circuit decision
- Montenegro v. Fontes, Arizona Court of Appeals, No. 1 CA-CV 26-0154.
  - Briefing is underway on this appeal regarding appeal from Superior Court.

- The Power of Fives, LLC v. Clean Elections, CV2021-015826, Superior Court for Maricopa County & Clean Elections v. The Power of Fives, LLC et al. CV2022-053917, Superior Court for Arizona. Plaintiff filed a form of judgment and application for attorneys' fees. Defense filed an objection to the form and a response to attorneys' fees application.

- Branch et al. v. Collins, et al., CV2024-004136, Superior Court for Maricopa County. Ongoing.

**Appointments:**

- Staff continues to monitor appointments, and direct interested applicants to the appropriate officials.

**Complaints:**

- MUR 25-04, Turning Point (Prop. 211).
- MUR 25-05, Turning Point (Prop. 211).
- MUR 26-03, Turning Point (Prop. 211).
- MUR 26-04, Fortify AZ (Prop. 211), please see dismissal report under AAC R2-20-811(F), Exhibit 1 to this report. The Commission may set this matter for review at a later meeting if chooses.
- MUR 26-05, Arizona Values Fund (Clean Elections Act Trigger Report), please see dismissal letter pursuant to AAC R2-20-206, Exhibit 2 to this report. The Commission may set this matter for review at a later meeting if chooses.
- MUR 26-06 Ralph Heap (participating candidate).

- MUR 26-07 Kevin Thompson & Nick Myers (participating candidates), this agenda.
- MUR 26-09 Ralph Heap Heap (participating candidate).
- MUR 26-10 Kevin Thompson & Nick Myers (participating candidates), this agenda.

**2026-2027 Regulatory Agenda:**

The Commission may conduct a rulemaking even if the rulemaking is not included here.

Commission staff will begin working on how it might address the Arizona Supreme Court's decision *in Ctr. for Ariz. Pol'y, Inc. v. Ariz. Sec'y of State*. No. CV-24-0295-PR, slip op. (Ariz. June 29, 2026). In that case, the Court indicated that the Voters' Right to Know Act "The Act . . . cannot be properly interpreted as compelling disclosure of donors who were never given the opportunity to opt out of having their donations used for campaign media. *Id.* at ¶ 82. The Court explained that A.R.S. § 16-972 "does not expressly specify who must provide upstream donors notice of the opt-out opportunity or require a covered person to investigate whether an immediate donor's contribution includes original monies from upstream donors." *Id.* It stated that a Commission rule or as applied challenges could clarify the responsibilities associated with notice. *Id.*

The following information is provided under A.R.S. § 41-1021.02:

- Notices of Docket Opening:
  - 32 A.A.R. 694 (candidate statement pamphlet), https://apps.azsos.gov/public_services/register/2026/12/contents.pdf.
  - 32 A.A.R. 266 (use of funds), apps.azsos.gov/public_services/register/2026/4/contents.pdf.
  - 31 A.A.R. 2255 (revision and addition of funding rules), https://apps.azsos.gov/public_services/register/2025/27/contents.pdf.
- Notices of Proposed Rulemaking:
  - 32 A.A.R. 669 (candidate statement pamphlet) https://apps.azsos.gov/public_services/register/2026/12/contents.pdf
  - 32 A.A.R. 245 (use of funds), apps.azsos.gov/public_services/register/2026/4/contents.pdf.
  - 31 A.A.R. 2141 (revision and addition of funding rules), https://apps.azsos.gov/public_services/register/2025/27/contents.pdf.
- Supplemental Notices 31 A.A.R.3917 (setting our next meeting to consider rules related to campaign finance report and monitoring of clean candidate funds). https://apps.azsos.gov/public_services/register/2025/40/contents.pdf.
- Federal funds for proposed rulemaking: **None**
- Review of existing rules: **Five Year Report Approved 9/2/2025**
- Notice of Final Rulemaking: Notice of final rulemaking for
  - 32 A.A.R. 807 (revision and addition of funding rules), apps.azsos.gov/public_services/register/2026/14/contents.pdf
  - 32 A.A.R. 1440 (use of funds), https://apps.azsos.gov/public_services/register/2026/26/contents.pdf.