Taft/

LAW OFFICES
TAFT STETTINIUS & HOLLISTER LLP
2525 EAST CAMELBACK ROAD, SUITE 600,
PHOENIX, ARIZONA 85016-4258
TELEPHONE: 602.240.3000
FACSIMILE: 602.240.6600

Craig A. Morgan (AZ Bar No. 023373)
(CMorgan@TaftLaw.com)
*Attorneys for Mark Kimble; Galen Paton; Sam Crump; Christina Estes-Werther; and Steve Titla*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 1Ten LLC, a Delaware limited liability company;<br>Plaintiff,<br><br>v.<br><br>Thomas M. Collins, in his official capacity as Executive Director of the Arizona Citizens Clean Elections Commission; *et al.*;<br><br>Defendants. | Case No. 2:26-cv-10652-DJH<br><br>**The Citizens Clean Elections Commission's Preliminary, Limited Response to the Motion for Preliminary Injunction** |

Defendants Mark Kimble, Galen Paton, Sam Crump, Christina Estes-Werther, and Steve Titla, members of the Arizona Citizens Clean Elections Commission (the "Commission"), oppose Plaintiff 1Ten LLC's ("1Ten") Motion for Preliminary and Permanent Injunction and to Consolidate (the "Motion"). *See* Doc. 2.

Arizona voters passed the Clean Elections Act (the "Act") and created the Clean Elections Fund (the "Fund"). Participation is premised on a simple bargain: a candidate who volunteers to follow the Act's rules receives public money to run for office, and in return certifies under oath that they are "subject to all enforcement actions by the Commission …." A.R.S. § 16-940 *et seq.*; A.A.C. § R2-20-104(C)(4). The voters entrusted the Commission with making that bargain work, directing it to ensure that Fund money is spent as the Act specifies "and not otherwise." A.R.S. § 16-956(A)(7); *see also* A.R.S. § 16-957(A). That core function cannot be performed without the ability to determine who paid for a participating candidate's campaign or where that participating candidate spent public funds.

Dr. Ralph Heap *volunteered* to accept public funds and follow the Act. He reported a single $644.47 payment to Mesa Sign Shop, while a complaint documented 184 of his signs deployed across the State. Doc 2-1, Castro Decl. (Ex. F at 16). The invoices for those signs are addressed not to Dr. Heap, but to "Jake Hoffman / 1ten.io," and one invoice reflects a $96,500.00 payment. *Id*. (Ex. A at 2–3). So the Commission's executive director, Thomas Collins (the "Director"), in his independent investigation, subpoenaed 1Ten's records of that purchase (the "Subpoena"), and only "to the extent they concern Dr. Heap." *Id*. (at 3).

1Ten now asks this Court to shut that inquiry down and to bar any "further process in MUR 26-06" directed toward 1Ten. Doc. 2 (at 17:17-18). The investigation is the Director's, not the Commission's, and its subject and scope are his to address. The Commission's concern here is broader: if 1Ten prevails, no one can learn who paid for a publicly funded campaign whenever the payment runs through a political consultant. Stretching the First Amendment to protect such activity would (1) strip the Commission of its core function of monitoring participant spending and ensuring Fund monies are spent only as the Act allows, (2) hand every participating candidate a roadmap for evading the Act: route expenditures through a consultant, then run to federal court invoking the First Amendment, and (3) stymie the Commission from learning the truth about how Fund monies are spent.

To manufacture constitutional protection, 1Ten recasts transactional records as associational secrets. They are not. A customer's invoices, payments, and reimbursement records for an identified purchase are business records, not a membership list, a donor roll, or a campaign's internal strategy. No protected association is burdened by the Commission's performance of its core function or the Director's Subpoena. Because 1Ten cannot make the threshold showing that the Subpoena burdens protected association, its claim fails at the outset. Nor is there any threat of imminent harm. The Act lets a subpoena recipient ask the Commission to quash or modify a subpoena, and the Director can compel compliance through an action in superior court. *See* A.A.C. R2-20-213; Doc 2-1, Castro

Decl. (Ex. A at 5–6). *None of that has happened.* But, in any event, even under exacting scrutiny, the Subpoena is narrowly tailored to the most important interest in public campaign financing: knowing how public funds were used and whether that use was lawful.

The First Amendment does not give a paid consultant the power to hide how a publicly funded campaign was paid for, and nothing requires this Court to step in before the Act's own procedures have even begun, let alone been exhausted. Worse, the injunction 1Ten seeks would prejudice the Commission and the people it serves by thwarting enforcement of the Act. The Court should deny the Motion.

## I. BACKGROUND

### A. THE CLEAN ELECTIONS ACT AND DR. HEAP'S VOLUNTARY COMMITMENTS

The Act offers candidates an optional system of public campaign funding to "improve the integrity of Arizona state government by diminishing the influence of special-interest money." A.R.S. § 16-940(A). A candidate who opts in accepts, in exchange for public funds, conditions that nonparticipating candidates do not: "participating candidates agree to certain limits under A.R.S. § 16-941(A) and are obligated to account for their campaign activity under A.R.S. § 16-947, -948, and related rules." Doc 2-1, Castro Decl. (Ex. F at 16).[1]

Dr. Heap made that choice. He was certified as a participating candidate for the Arizona Corporation Commission on March 20, 2026, and thereby "agreed to the requirements of the Citizens Clean Elections Act and Commission rules, including restrictions on the source and amount of contributions, limits on personal monies, the requirement to conduct campaign financial activity through a single campaign account, campaign-finance reporting requirements, and restrictions on incurring debt before qualifying for Clean Elections funding." Doc 2-1, Castro Decl. (Ex. E at 2 ¶¶ 1, 2, 5); *see* A.R.S. §§ 16-941(A), 16-942(B), 16-947, 16-948(A); A.A.C. R2-20-104(D)(6). He

[1] 1Ten relies on several public records kept by the Commission and attaches them to the Motion. Given time constraints, the Commission lacks the time to gather its own evidence or declarations. Thus, the Commission cites to the record 1Ten provided where able and to support the Commission's position.

qualified for funding on July 20, 2026, and the Commission voted to release it on August 14. Doc 2-1, Castro Decl. (Ex. E at 2 ¶ 5, Ex. F at 6 (Tr. pp. 71-72)).

### B. THE INVESTIGATION AND THE SUBPOENA

On August 14, 2026, the Commission voted 4–0 that there is reason to believe Dr. Heap violated the Act "and to proceed with an investigation." Doc 2-1, Castro Decl. (Ex. F at 6–7 (Tr. pp. 72-73)). The Director conducts the investigation, independently of the Commission. On August 27, the Commission issued a compliance order identifying reason to believe Dr. Heap violated A.R.S. §§ 16-941(A), 16-948(A), 16-947, and 16-942(B) and A.A.C. R2-20-104(D)(6) in connection with a campaign sign-related transaction, and directed that the Director's independent "investigation shall continue." *Id.* (Ex. E at 4).

The Director later issued the Subpoena, captioned "In the Matter of: 26-06 Ralph Heap." *Id.* (Ex. A at 1). It defines "Mesa Sign Shop Invoices" as six invoices "each addressed to 'Jake Hoffman / 1ten.io,'" and "Heap Signs" and "Heap Materials" as material "bearing Dr. Heap's name." *Id.* (at 2). Request 1 seeks invoice records only "to the extent they concern Dr. Heap," including documents "sufficient to show" the payor, the source of funds, and "whether any portion was applied to the invoice lines for Dr. Heap." *Id.* (at 3). Requests 2 through 5 are likewise limited to Heap Signs, goods or services "for Dr. Heap's campaign," and communications with Dr. Heap or Mesa Sign Shop. *Id.* (at 3-4). The Subpoena advises 1Ten of its right under A.A.C. R2-20-213 "to quash or modify it," and is enforceable only through "proceedings in Superior Court." *Id.* (at 5–6).

Counsel for the Director told 1Ten that "this is not an investigation of your client." Compl. ¶ 16. 1Ten never filed anything with the Commission asking it to modify or quash the Subpoena or otherwise objecting to it. Instead, 1Ten filed this action.

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm absent relief, that the balance of equities

tips in its favor, and that an injunction is in the public interest. *Id.* at 20. The same standard governs a TRO. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Irreparable harm is an independent requirement: it must be *likely*, not merely possible, *Winter*, 555 U.S. at 22, and imminent, not speculative, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Invoking the First Amendment does not excuse or diminish that showing. *See Dish Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). A movant who fails to show either likelihood of success or irreparable harm is not entitled to relief. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

## III. ARGUMENT

### A. 1TEN FACES NO IRREPARABLE HARM

1Ten asks this Court to halt a subpoena that no one has tried to enforce, subject to a process 1Ten has never invoked. Its claimed injury depends on events that have not occurred and may never occur.

First, 1Ten has not asked the Commission to quash or modify the Subpoena. The Commission's rules give every recipient the right to "apply to the Citizens Clean Elections Commission to quash or modify it," and empower the Commission to "deny the application, quash the subpoena, or modify the subpoena." A.A.C. R2-20-213; Doc 2-1, Castro Decl. (Ex. A at 5–6). The Subpoena itself told 1Ten so, and invited objections and privilege claims. Doc 2-1, Castro Decl. (Ex. A at 5-6). 1Ten ignored that invitation and filed this action instead. Every concern 1Ten raises, including confidentiality, Rogers Decl. (¶ 7), is one the Commission can address, if appropriate, by modifying the Subpoena if appropriate. Yet 1Ten has neglected to follow the normal processes available to address these concerns. A harm the movant could avoid simply by using the available process is self-inflicted, not irreparable.

Second, the Subpoena cannot be enforced without a court order, and no enforcement action has been filed. Even 1Ten concedes the Subpoena "is not self-executing." Doc. 2 (at 16:27-28). If an enforcement action is ever filed, 1Ten may raise in superior court every

objection it presses here. Until a state court orders production, not a single document will leave 1Ten's files. There is simply no imminent harm approaching.

Third, because any injury depends on a chain of future, contingent events, it is speculative, and thus not imminent. *Caribbean Marine*, 844 F.2d at 674 ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 416 (2013). Before any disclosure could occur, 1Ten would have to ask the Commission to consider the issue and lose, face an enforcement action, and lose again in superior court. Rather than pursue that process, which protects every subpoena recipient, 1Ten bypassed it and now asks this Court to strip the Commission of its core function: ensuring the lawful use of public funds by candidates who participate under the Act. Until that process runs its course, 1Ten faces no risk of compelled disclosure, and therefore no harm, irreparable or otherwise.

The absence of real imminent harm alone defeats the Motion. *Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.").

### B. THE SUBPOENA DOES NOT BURDEN PROTECTED ASSOCIATION

A party resisting a government demand on associational grounds bears the initial burden of making "a prima facie showing of arguable first amendment infringement." *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349–50 (9th Cir. 1988); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160–61 (9th Cir. 2010); *see also Dole v. Serv. Emps. Union, Local 280*, 950 F.2d 1456, 1459–61 (9th Cir. 1991) ("The record must contain objective and articulable facts, which go beyond broad allegations or subjective fears." (cleaned up)). That showing requires evidence that disclosure of the requested information will burden protected association, not a generalized objection to being investigated. 1Ten cannot meet its threshold burden for three reasons.

First, the Subpoena seeks transaction records, not associational information. The privilege 1Ten invokes protects membership and donor lists and a political group's core internal deliberations. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462–63 (1958);

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606–07 (2021); *Perry*, 591 F.3d at 1165 n.12 (privilege limited to internal communications on "strategy and messages" among a "core group"). The Subpoena seeks none of that. 1Ten is a for-profit consulting business, Compl. ¶ 3, and the customer of record on the invoices, Doc 2-1, Castro Decl. (Ex. A at 2). The Subpoena asks who paid for Dr. Heap's signs, from what funds, how much was applied to his invoice lines, and whether he reimbursed 1Ten. *Id*. (Ex. A at 3–4). Those are facts about a commercial transaction, not a political associational strategy. The Subpoena seeks no client list, no donor list, and nothing about any candidate other than Dr. Heap – the very person who agreed to the Act's enforcement provisions in exchange for the public funds he took. *See id*. (Ex. A at 2–4). 1Ten's reliance on *First Choice Women's Resource Centers v. Davenport*, 608 U.S. 174 (2026), is misplaced for the same reason: by 1Ten's own description, that case concerned a nonprofit's member and donor information, not a vendor's customer records concerning a single publicly funded candidate's use of public funds. There is no associational issue here.

Second, 1Ten's only third-party evidence is the declaration of James Rogers, a candidate who used 1Ten, but his declaration describes communications the Subpoena does not request. His asserted chill concerns his communications with 1Ten "about strategy, messaging, timing, budgets, the identities of supporters and volunteers, and other sensitive campaign matters." Doc 2-11, Rogers Decl. (¶¶ 4, 8–9). The Subpoena asks for none of that, and it seeks nothing from Mr. Rogers. It seeks only communications between 1Ten and Dr. Heap or Mesa Sign Shop concerning Heap Materials, the invoices, or MUR 26-06. Doc 2-1, Castro Decl. (Ex. A at 4). Mr. Rogers's only connection to the Subpoena is a shared invoice that also lists signs for Dr. Heap, which Request 1 reaches only to the extent it concerns Dr. Heap, and which Mesa Sign Shop already produced. A declarant's worry about requests that were *never* made or disclosure that could theoretically someday maybe happen cannot establish that the requests *actually* made burden association.

Third, the asserted chill is subjective. Mr. Rogers would be less candid "even if the information went only to the Commission," because the Commission regulates campaigns.

Doc 2-11, Rogers Decl. (¶ 10). That is an objection to the Act itself, not evidence of reprisal traceable to this Subpoena. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). And the Subpoena seeks none of the information Mr. Rogers says he would withhold. 1Ten's remaining evidence is social-media posts by political rivals of Dr. Heap and Mr. Hoffman. Doc 2-1, Castro Decl. (Ex. B). Much of it *pre-dates* the Subpoena. And none of it shows that anyone has suffered reprisal from anything obtained in the Director's investigation, let alone a concrete associational harm likely to occur.

### C. The Subpoena Satisfies Exacting Scrutiny

Exacting scrutiny requires only a substantial relation to a sufficiently important interest and narrow tailoring, not the least restrictive means. *Bonta*, 594 U.S. at 607–08, 611.

The Commission's interest is at its peak. It is the steward of millions of dollars in public funds, and responsible for ensuring that Fund monies are spent only as the Act allows. Disclosure and recordkeeping are "an essential means of gathering the data necessary to detect violations of the contribution limitations." *Buckley v. Valeo*, 424 U.S. 1, 67–68 (1976) (per curiam); *see also Doe v. Reed*, 561 U.S. 186, 196–99 (2010). Whether a third party paid for or financed Dr. Heap's signs is the central question of the Director's investigation and falls squarely within the Commission's regulatory purview. Doc 2-1, Castro Decl. (Ex. E at 2–4). Moreover, the Commission is interested in having the Director perform a comprehensive independent investigation that enable him to present unbiased facts so that the Commission can independently determine what action, if any, is necessary to protect the Fund and effectuate the Act.

Because the invoices are addressed to 1Ten, only 1Ten's records can show the payor, the source of funds, the amount attributable to Dr. Heap, and any reimbursement. The vendor's records cannot, and Dr. Heap's reports disclosed nothing approaching the cost of the signs. *Id.* (Ex. C at 1; Ex. D at 1–2; Ex. F at 16). Every request is tied to Dr. Heap, and

any residual overbreadth can be addressed through R2-20-213 or in superior court. Thus, the Commission's interests are sufficiently important and the means of gathering relevant information – the Subpoena – is appropriately narrow. 1Ten's remaining theory, that the Commission never separately voted to subpoena it, is a state-law question about what the Act requires to permit a subpoena. That cannot support a federal injunction against state officials. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

### D. PROHIBITING THE COMMISSION FROM PERFORMING ITS DUTIES WOULD IRREPARABLY HARM THE COMMISSION AND THE PEOPLE IT SERVES

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (cleaned up); *see also Dickinson v. Trump*, 174 F.4th 634, 648 (9th Cir. 2026); *SEIU, AFL-CIO v. DOJ - United States DOJ*, No. 26-7303, 2026 U.S. App. LEXIS 33648, at *12 (9th Cir. Nov. 3, 2026); *Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910, 930 (D. Ariz. 2020) ("On the other hand, a state suffers an irreparable injury whenever an enactment of its people or their representatives is enjoined." (cleaned up)); *Prison Legal News v. Shinn*, No. CV-15-02245-PHX-ROS, 2020 U.S. Dist. LEXIS 11821, at *8 (D. Ariz. Jan. 23, 2020).

Here, an injunction would invite publicly funded candidates to route expenditures through consultants beyond the Commission's oversight, and then escape scrutiny by rushing to federal court under the guise of protected association. Whatever its effect on the Director's independent investigation, such an injunction would render the Commission's most basic function – monitoring participant spending and ensuring that Fund monies are spent only pursuant to the Act – impotent. That is precisely what 1Ten seeks, and it would irreparably injure the Commission and the people who enacted the Act. This alone weighs strongly against injunctive relief.

## IV. CONCLUSION

The voters created the Fund, and Dr. Heap accessed those monies by making a simple bargain: he receives public money in exchange for accountability, including submission to "all enforcement actions by the Commission." A.A.C. § R2-20-104(C)(4). The Commission cannot honor its charge to ensure that Fund monies are spent as the Act specifies "and not otherwise," A.R.S. § 16-956(A)(7), unless the Commission can learn who paid for a participating candidate's campaign. This is why the people, when passing the Act, gave the Commission subpoena power. 1Ten's Motion seeks to curb that power and place proof of payment beyond reach whenever the payment runs through a so-called political consultant.

The First Amendment does not compel that result. 1Ten faces no irreparable harm: it never asked the Commission to quash or modify the Subpoena, no enforcement action has been filed, and no document will be produced unless a state court orders it. Nor can 1Ten succeed on the merits. The Subpoena seeks a vendor's transactional records concerning a single publicly funded candidate, not a membership list, donor roll, or internal campaign strategy, and 1Ten's evidence of chill is subjective and directed at requests never made. Even under exacting scrutiny, the Subpoena is narrowly tailored to the most important interest in public campaign financing: knowing whether public funds were used lawfully. And an injunction would irreparably harm the Commission and the people who enacted the Act by handing every participating candidate a roadmap for evading it.

Because 1Ten can establish neither irreparable harm nor a likelihood of success, and because the balance of equities and the public interest weigh decisively against relief, the Court should deny the Motion.[2]

[2] 1Ten asks for other relief in its Motion, including to advance the trial on the merits and consolidate with a hearing on the Motion. Doc. 2 (at 17:19-21). The Commission's counsel opposes this request for now, because counsel would need to speak with his clients in an executive session to both explain the legal significance of agreeing to such a request and receive direction. Doing so before the deadline to file this Response is impossible.

RESPECTFULLY SUBMITTED: November 24, 2026.

TAFT STETTINIUS & HOLLISTER LLP

By */s/*

Craig A. Morgan
2525 East Camelback Road, Suite 600
Phoenix, Arizona 85016
*Attorneys for Mark Kimble; Galen Paton; Sam Crump; Christina Estes-Werther; and Steve Titla*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, which will send notification of such filing to all counsel of record.

/s/ *Dean Henson*
Dean Henson