# EXHIBIT A

Mary R. O'Grady, 011434
John S. Bullock, 034950
Allie Karpurk, 037029
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 640-9000
mogrady@omlaw.com
jbullock@omlaw.com
akarpurk@omlaw.com

*Attorneys for Defendant Thomas M. Collins, in his official capacity as Executive Director of the Arizona Citizens Clean Elections Commission*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| 1Ten LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Thomas M. Collins, in his official capacity as Executive Director of the Arizona Citizens Clean Elections Commission; Mark Kimble; Galen Paton; Sam Crump; Christina Estes-Werther; and Steve Titla, in their official capacities as members of the Arizona Citizens Clean Elections Commission,<br><br>Defendants. | No. CV-26-10652-PHX-DJH<br><br>**DECLARATION OF THOMAS M. COLLINS IN SUPPORT OF HIS PRELIMINARY, LIMITED RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, Thomas M. Collins, declare:

1. I am the Executive Director of the Arizona Citizens Clean Elections Commission (the "Commission"). I have personal knowledge of the facts in this declaration, including through my review of the Commission's records in MUR 26-06,

OSBORN MALEDON ATTORNEYS AT LAW

and I could testify to them. I submit this declaration in support of my preliminary, limited response to 1Ten LLC's ("1Ten") Motion for Preliminary and Permanent Injunction.

2. I have served as the Commission's Executive Director since 2013. The Commission appoints the Executive Director under A.R.S. § 16-955(J). Under the Commission's direction, I have overall responsibility for carrying out the agency's mission, reviewing candidates' disclosure statements to determine their compliance with contribution and expenditure limits, and managing and overseeing the Commission's enforcement work. The Commission's rules assign me specific responsibilities in processing complaints, conducting investigations, and issuing subpoenas. *See* A.A.C. R2-20-203 to -211, -213 to -214.

**The Clean Elections program and the enforcement process**

3. A candidate who chooses to run as a participating candidate may receive public funding "instead of receiving private contributions." A.R.S. § 16-950(A); *see* A.R.S. § 16-951(A). In exchange, the candidate agrees to conditions. Among other things, a participating candidate "[s]hall not accept any contributions, other than a limited number of five-dollar qualifying contributions" and early contributions, is limited in how much of his own money he may spend, and must comply with the Act's campaign-account requirements. A.R.S. § 16-941(A)(1), (2), (5). In the application for certification, the candidate certifies under oath that he "[w]ill comply with all requirements of the Act and Commission rules," "[i]s subject to all enforcement actions by the Commission," "[w]ill keep and furnish to the Commission all documentation relating to expenditures, receipts, funding, books, records (including bank records for all accounts), and supporting documentation and other information that the Commission may request," and will "provide any material required in connection with an audit, investigation, or examination conducted by the Commission." A.A.C. R2-20-104(C)(3), (4), (6), (7). Dr. Ralph Heap was a participating candidate for the Arizona Corporation Commission and was certified as a participating candidate on March 20, 2026. (Doc. 2-9 at 2 ¶¶ 1, 5.) On August 14, 2026, the Commission directed that his campaign receive funding. He received $147,836

in public funds for the primary election and $221,754 in public funds for the general election.

4. The Act directs the Commission to "[e]nforce this article" and to "monitor reports filed pursuant to this chapter and financial records of candidates as needed." A.R.S. § 16-956(A)(7). It authorizes the Commission to "require by subpoena the production of any books, papers, records or other items material to the performance of the commission's duties or the exercise of its powers," A.R.S. § 16-956(B), and to "adopt rules to carry out the purposes of this article and to govern procedures of the commission," A.R.S. § 16-956(C). If the Commission finds reason to believe that a person violated the Act, it serves an order requiring compliance. A.R.S. § 16-957(A); A.A.C. R2-20-208(A). Under the Commission's rules, "[t]he Executive Director or any other person designated by the Executive Director shall conduct an investigation in any case in which the Commission finds reason to believe that a violation of a statute or rule over which the Commission has jurisdiction has occurred or is about to occur." A.A.C. R2-20-209(A). The investigation "may include, but is not limited to, field investigations, audits, and other methods of information gathering." A.A.C. R2-20-209(B). The rules also provide for orders requiring "sworn, written answers to written questions," R2-20-210, and for subpoenas duces tecum and depositions, R2-20-211.

5. A person who receives a Commission subpoena may challenge it within the agency. The person may, "prior to the time specified therein for compliance, but in no event more than five days after the date of receipt," "apply to the Commission to quash or modify such subpoena," and the Commission may deny the application, quash the subpoena, or modify it. A.A.C. R2-20-213. A Commission subpoena is not self-executing. If a person does not comply, the Executive Director, as the officer who issued the subpoena, may apply to the superior court, which then proceeds as though the failure occurred in an action pending before it. A.R.S. § 12-2212(B).

6. The investigation is not the end of the process. "Upon completion of the investigation," I must prepare a brief "setting forth [my] position on the factual and legal

issues of the case and containing a recommendation on whether the Commission should find probable cause to believe that a violation ... has occurred." A.A.C. R2-20-214(A). The respondent receives the brief and may file a responsive brief. A.A.C. R2-20-214(B)-(C). Only then does the Commission decide whether there is probable cause to believe that a violation occurred. A.A.C. R2-20-215(A). If it finds probable cause, the Executive Director must attempt to resolve the matter through conciliation before the Commission may authorize any penalty. A.A.C. R2-20-216(A), -217.

7. A reason-to-believe finding is not a finding that a violation occurred. My job during the investigation is to gather the facts so that the Commission can decide, on an accurate and complete record, whether there is probable cause. That includes facts that help the respondent.

**The complaint and Dr. Heap's response**

8. On June 25, 2026, Lisa Everett, a voter, filed a sworn complaint against Dr. Heap. She stated that she had observed "what appear to be hundreds of 4' x 4' campaign signs" for Dr. Heap and that, after reviewing his campaign finance reports, she was "unable to determine how the production and installation of these signs are being funded." She stated that she was "not asserting that a violation has occurred," but was requesting "clarification and, if appropriate, an investigation." A true and correct copy of the complaint, with personal identifying information redacted, is attached as Exhibit A-1. The Commission also received other sworn statements about the signs, which were provided to Dr. Heap's counsel. (Doc. 2-10 at 16.)

9. On August 7, 2026, Dr. Heap, through his counsel Tim La Sota, responded to the complaint. A true and correct copy of the response is attached as Exhibit A-2. The response argued that the signs were neither a contribution nor an expenditure because Mesa Sign Shop, LLC ("Mesa Sign") extended credit to Dr. Heap's campaign on ordinary commercial terms. *See* A.R.S. §§ 16-911(B)(6)(d), 16-921(B)(4)(d). It attached a declaration from Mesa Sign's owner, Jim Torgeson. Mr. Torgeson swore that:

a. "In late April of 2026, I received an order for signs to be printed for Dr. Heap's candidacy." (Torgeson Decl. ¶ 3.)

b. "I have prepared an invoice for these signs, but it has not yet been sent to Dr. Heap." (*Id.* ¶ 5.)

c. "I extend credit to Dr. Heap on the same basis and under the same terms as I extend credit to other clients of comparable creditworthiness and order size." (*Id.* ¶ 8.)

d. He viewed Dr. Heap as "honorable and trustworthy," and Dr. Heap's standing as "a licensed physician and orthopedic surgeon" made him "a low credit risk." (*Id.* ¶¶ 8-9.)

e. "At no time did Dr. Heap, his campaign committee, or any agent of his campaign direct, coordinate, or consult with me regarding the content, design, placement, or distribution of the signs." (*Id.* ¶ 11.)

The declaration did not state the number of signs, their price, or the terms of any credit, and neither it nor Dr. Heap's response mentioned Jake Hoffman or 1Ten.

**The reason-to-believe finding and the investigation**

10. I recommended that the Commission find reason to believe that Dr. Heap violated the Act and Commission rules. My statement of reasons explained, among other things, that the extension-of-credit exemption did not appear to apply because the credit described in Mr. Torgeson's declaration was not extended on the campaign committee's behalf and the declaration did not establish substantially similar terms or any attempt to collect. (Doc. 2-10 at 16-17.) On August 14, 2026, the Commission voted 4-0 "that the Commission finds there is reason to believe that Dr. Heap has violated a statute or rule of which the Commission has jurisdiction and to proceed with an investigation." (Doc. 2-10 at 6-7.)

11. On August 27, 2026, the Commission approved a compliance order in MUR 26-06. (Doc. 2-9.) The order states that the Commission "found reason to believe that violations of the Citizens Clean Elections Act and Commission rules may have occurred

and authorized an investigation." (*Id.* at 2 ¶ 6.) It gave Dr. Heap fourteen days to amend his reports, disclose the Mesa Sign transaction, provide supporting records, and provide an explanation, and it stated that "[t]he Commission's investigation shall continue during and after the compliance period as provided by law and Commission rules." (*Id.* at 3-5.) Consistent with the Act and the Commission's rules, I have conducted the investigation since the August 14 finding, and I have kept the Commission informed of its progress, including through my August 31, 2026 memorandum in the Commission's September 2, 2026 meeting packet, which described my request to Dr. Heap and my subpoena to Mesa Sign. (Doc. 2-10 at 21-25.)

12. On August 17, 2026, I asked Dr. Heap, through counsel, for his campaign-account statements, agreements for services provided to the campaign, records of services, in-kind contributions, and other transactions of value, and "[a]ny and all communications regarding the purchase of signs from Mesa Sign Shop or the placement of signs purchased." At his counsel's request, I extended the deadline by one week. (Doc. 2-10 at 21-23.) Dr. Heap responded on September 7, 2026. A true and correct copy of the response letter is attached as Exhibit A-3. He produced bank-account activity, ten cleared checks, a spreadsheet of online contributions, an agreement with a consultant, and four invoices: a November 26, 2025 Mesa Sign invoice, two invoices from Uncle Sam Petitions dated January and February 2026, and an April 1, 2026 consultant invoice. He objected to producing records of "any service provided to the campaign." In response to the request for communications about the purchase and placement of the signs, he stated: "Dr. Heap does not have any communications responsive to this request." (Ex. A-3 at 1-2.) None of the records Dr. Heap produced reflects the April 2026 sign order, any payment for those signs, or any payment for picking up, transporting, or placing them. To date, Dr. Heap has not produced any such records.

**The Mesa Sign subpoena and documents**

13. On August 20, 2026, I issued a subpoena duces tecum to Mesa Sign under A.R.S. § 16-956(B). A true and correct copy is attached as Exhibit A-4. The subpoena was

tied to Mr. Torgeson's declaration and sought Mesa Sign's underlying records of the Heap sign order, including the order, quote or estimate, invoice, production records, dates of completion and availability, pickup or delivery records, account statements, payment terms, and related communications. I extended Mesa Sign's deadlines to respond at Mr. Torgeson's request so that he could retain counsel. (Doc. 2-10 at 22-24.) Mesa Sign retained Kurt Altman as counsel.

14. Mesa Sign produced documents on September 22 and September 30, 2026, and served written responses and objections on September 25, 2026. (Docs. 2-7, 2-8.) The documents showed the following:

a. The invoice that includes the signs at issue, Invoice No. 2947, is dated April 10, 2026, and is billed to "Jake Hoffman" and "1ten.io," not to Dr. Heap or his campaign committee. It lists 1,750 "Heap 48x48" signs and 1,000 "Heap YS" signs alongside signs for other candidates, states terms of "Due on receipt," and reflects a payment of $96,500 against a total of $108,857.75. In other words, the invoice combined Mr. Hoffman's orders for several candidates' signs; Mr. Hoffman had paid a portion of the total; and a balance of $12,357.75 remained when Mesa Sign produced the invoice. The line items for Dr. Heap's signs (1,000 yard signs at $3.90 and 1,750 four-by-four signs at $13.75) total $27,962.50 before tax, or approximately $30,280 applying the tax rate reflected on the invoice. True and correct copies of the invoices for Dr. Heap's materials, redacted as described in paragraph 16, are attached as Exhibit A-5.

b. Five other invoices for materials for Dr. Heap's campaign, dated between June 2025 and July 2026, are also billed to Jake Hoffman and 1ten.io. The three 2025 invoices are marked paid. The two 2026 invoices, for rack cards and business cards, show balances due; one notes that part of the order was "picked up by Dr.H."

c. Mesa Sign's accounts-receivable summary as of September 29, 2026, shows an open balance for 1ten.io.

d. The production includes design files for Dr. Heap's palm cards whose file names include "[via Jake]."

e. Mesa Sign stated that it has no documents reflecting a standard practice for establishing customer creditworthiness, any assessment of Dr. Heap's creditworthiness, or the "other clients of comparable creditworthiness and order size" referenced in Mr. Torgeson's declaration.

15. Because the invoices and the accounts-receivable summary include information about other customers, Mesa Sign asked that it be kept confidential. Mr. Altman's September 30, 2026 letter stated: "We trust that the information concerning other candidates and non-political clients will be maintained as confidential because it is unrelated to the current investigation." (Doc. 2-7 at 1.) I agreed to honor that request.

16. Before providing the Mesa Sign documents to Dr. Heap, my counsel redacted the invoices and accounts-receivable records to remove information regarding anyone other than Dr. Heap. On October 12, 2026, my counsel sent the proposed redactions to Mr. Altman, explaining: "We plan to provide the documents Mr. Torgeson produced ... to Dr. Heap and his counsel. Before we do, we would like to give you the opportunity to review our proposed redactions." Mr. Altman responded the same day: "Those redactions look fine to me and we have no problem with the disclosure in that form." True and correct copies of those emails are attached as Exhibit A-6. The redacted invoices are attached as Exhibit A-5.

17. On October 13, 2026, I sent letters to Dr. Heap's counsel, Mr. La Sota and Linley Wilson, enclosing the Mesa Sign subpoena, the redacted documents, and Mr. Altman's letter. A true and correct copy of my letter in MUR 26-06 is attached as Exhibit A-7. Because the documents differed from Dr. Heap's August 7 response and Mr. Torgeson's declaration, the letter invited Dr. Heap to supplement his response under oath and asked him to produce any documents or communications about the orders, including

any with Mr. Hoffman or 1ten.io. I have not made the unredacted Mesa Sign records public or provided them to the complainants. The only invoice information about other candidates that has become public in connection with this matter is the information in 1Ten's own filings in this case.

**Mr. Torgeson's deposition**

18. To better understand Mesa Sign's records and Mr. Torgeson's declaration, my counsel deposed Mr. Torgeson on October 20, 2026. Mr. Torgeson, represented by Mr. Altman, cooperated with the investigation. Exhibit A-8 contains true and correct excerpts of the transcript.[1]

19. Mr. Torgeson testified, among other things, that:

a. The Heap orders "came from 1TEN." (Ex. A-8 at 25:1.)

b. All of the orders and communications about Dr. Heap's 2026 orders came through Jake Hoffman or 1ten.io, and Dr. Heap did not communicate with him personally about them. (*Id.* at 51:6-12.)

c. Dr. Heap never personally asked him to make the signs and never discussed "quantity, price or payment" with him. (*Id.* at 56:8-14.)

d. He billed the invoice to "[t]he guy that asked for it, Jake Hoffman," and Mr. Hoffman "would have supplied the art." (*Id.* at 56:15-25.)

e. Asked who picked up the four-by-four signs, he said he was "trying to remember which guy picked that up," that "Jake sends a lot of kids by to pick up certain things," and that those who pick up orders work for Mr. Hoffman's company. He did not "recall specifically" who picked up these signs but thought it was likely an installer who works for Mr. Hoffman's company. (*Id.* at 57:24-58:16.)

---

[1] Because the transcript refers to other Mesa Sign customers, Exhibit A-8 includes only the pages cited in this declaration and my response. My counsel has provided those page and line references to Mr. Altman to confirm that they do not disclose information about other customers.

f. Mr. Hoffman paid the $96,500 reflected on Invoice No. 2947. (*Id.* at 60:1-6.)

g. Invoice No. 2947 "was never sent to" Dr. Heap. (*Id.* at 60:16-24.)

h. He does not know how the $96,500 payment was applied among the candidates on the invoice: "I have no idea. I'm not privy to his business." (*Id.* at 61:10-18.)

i. If he extended credit to anyone for the invoices billed to Mr. Hoffman, it was to Mr. Hoffman or 1ten.io: "In the end, the guy that's really responsible for the bill is Jake Hoffman." (*Id.* at 72:8-14.)

j. He recalled Mr. Hoffman saying something to the effect that he would "wait for Clean Elections money." (*Id.* at 49:13-23.)

20. At the deposition, Mr. Torgeson agreed to search for and produce any communications about invoices for Dr. Heap, any additional invoices for Dr. Heap, any information from the printers about when the orders were completed, and any payment history on Invoice No. 2947. On November 9, 2026, Mr. Altman produced two additional items, which I am reviewing. Mesa Sign has not produced any documents showing how Mr. Hoffman's $96,500 payment was applied among the orders on Invoice No. 2947.

**Dr. Heap's supplemental response**

21. On October 20, 2026, Dr. Heap, through Ms. Wilson, submitted a supplemental response that he verified under oath. A true and correct copy is attached as Exhibit A-9. It stated that Dr. Heap returned his primary election funds and has not used his general election funds. It stated that "Senator Jake Hoffman supported Dr. Heap's candidacy. He was neither retained nor paid as a consultant to the campaign," and that "Dr. Heap did not have any involvement in Mesa Sign Shop's billing decisions or invoices. Dr. Heap expected any invoices to be issued to the campaign." It stated that "Dr. Heap did not prepare these invoices and did not receive them," and that Dr. Heap "understood that his campaign would pay the fair market value for its materials." It also

stated that the campaign will amend its reports and that Dr. Heap is prepared to work toward a resolution, including a public settlement. (Ex. A-9 at 1-2.)

22. The supplemental response does not say who paid Mesa Sign for Dr. Heap's signs or with what funds. Its statements that Dr. Heap "expected any invoices to be issued to the campaign" and "understood that his campaign would pay" indicate that the campaign has not paid for the signs, but the response does not say who has. It also does not say who picked up or placed the signs or who paid for that work. Dr. Heap did not produce any documents or communications with his supplemental response.

**The Subpoena to 1Ten**

23. The investigation thus left open the central questions: who paid for Dr. Heap's signs, with what money, whether Dr. Heap or his campaign repaid that person, and who picked up and placed the signs and paid for that work. Mesa Sign's records and Mr. Torgeson's testimony show that Mr. Hoffman and 1Ten ordered the signs, were billed for them, and made the payment on the invoice. Dr. Heap has no communications about the signs and has produced no records of their payment. 1Ten is the remaining source of that information. For these reasons, I issued a subpoena duces tecum to 1Ten (the "Subpoena") on November 3, 2026, and it was delivered to 1Ten's counsel on November 6, 2026. (Doc. 2-2.) On November 4, 2026, my counsel sent a copy of the Subpoena to Dr. Heap's counsel, Ms. Wilson and Erica Leavitt. A true and correct copy of that email, without its attachment, is Exhibit A-10. The Subpoena advised 1Ten of its right under R2-20-213 to apply to the Commission to quash or modify it. 1Ten has not applied to the Commission to quash or modify the Subpoena.

24. At 1Ten's request, I extended the deadline for 1Ten to apply to the Commission to quash or modify the Subpoena to November 23, 2026, and the date for producing documents to November 25, 2026. I have agreed to extend 1Ten's deadline to apply to the Commission to quash or modify the Subpoena to December 14, 2026, and its deadline to produce documents to December 30, 2026. I will agree to further extensions

of the deadlines to allow 1Ten to fully respond to the Subpoena. Any enforcement of the Subpoena would require an application to the superior court under A.R.S. § 12-2212(B).

25. I am not seeking information about 1Ten's other clients, donors, funders, or members, or about any candidate other than Dr. Heap. To address 1Ten's concerns, I am willing to do the following:

a. **Request 1.** Request 1 seeks only who paid Mesa Sign for Dr. Heap's portion of the invoices and the source of those funds. For example, if 1Ten paid, I want to know whether the money came from Dr. Heap's campaign, from Dr. Heap personally, or from a third party. If 1Ten paid from its general revenues, records sufficient to show that are enough. I do not need 1Ten to account for any other candidate's order.

b. **Request 2.** Request 2 concerns the costs of picking up, transporting, and placing Dr. Heap's signs, including stakes and other installation materials. My concern is with payment: how much was paid for that work and materials, and who paid. If 1Ten's records include confidential information, such as the names of individuals who picked up or placed the signs, I am willing to work with 1Ten to redact them. If we cannot agree, I would ask that the dispute be resolved through a court's in camera review of the documents.

c. **Request 3.** Request 3 seeks a complete record of the transactions already acknowledged. The documents produced by Mesa Sign and Dr. Heap go beyond the April 2026 sign order identified in the complaint. Mesa Sign produced five other invoices for Dr. Heap's materials, dated from June 2025 to July 2026, each billed to "Jake Hoffman" and "1ten.io." (Ex. A-5.) Dr. Heap produced invoices from Mesa Sign and other vendors for other campaign goods and services. (Ex. A-3 at 2.) Dr. Heap also stated under oath that his campaign had no contract with Mr. Hoffman or any entity affiliated with him and did not pay or agree to pay him. (Ex. A-9 at 1-2.)

Request 3 asks 1Ten to complete that picture: what other goods or services it paid for, provided, or arranged for Dr. Heap's campaign, what each cost, and whether Dr. Heap paid for them. Request 3 does not seek 1Ten's dealings with other clients, and records sufficient to show each item, its cost, and any payment or reimbursement are enough.

d. **Requests 4 and 5.** These requests seek communications about Dr. Heap's materials, their cost, and their payment. If a responsive communication also contains confidential information unrelated to Dr. Heap's signs or their payment, such as campaign strategy, I will work with 1Ten to redact it. If we cannot agree, I would ask that the dispute be resolved through a court's in camera review of the documents.

e. **Index instruction.** I will reissue the Subpoena without the instruction to "provide an index identifying the records and who is in possession of such records," or I will not enforce that instruction.

f. **Confidentiality.** I will treat information 1Ten produces about individuals other than Dr. Heap as confidential. As with Mesa Sign's records, I will redact that information before providing the documents to Dr. Heap or anyone else, and I will give 1Ten the opportunity to review the redactions first.

26. Completing the investigation matters. When it is complete, I must brief the Commission on whether it should find probable cause. A.A.C. R2-20-214(A). I need to know who paid for Dr. Heap's signs and with what funds so that I can present the full account of the transaction to the Commission. My goal is to give the Commission an accurate and complete account, as it decides whether a violation of the Act occurred.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 24, 2026.

Thomas M. Collins
Executive Director,
Arizona Citizens Clean Elections Commission

# EXHIBIT A-1

June 25, 2026

Arizona Citizens Clean Elections Commission

Re: Request for Review of Campaign Finance Reporting by Dr. Ralph Heap

Dear Commissioners,

I am writing to request that the Arizona Citizens Clean Elections Commission review the campaign finance reporting of Dr. Ralph Heap, a participating candidate for the Arizona Corporation Commission.

As a voter and citizen, I have observed a substantial number of campaign signs promoting Dr. Heap's candidacy throughout the West Valley. Specifically, I have observed what appear to be hundreds of 4' x 4' campaign signs. Based on commonly available pricing, signs of this size, together with installation costs, represent a significant expenditure.

My concern is whether all expenditures, contributions, or in-kind contributions associated with the production, distribution, and installation of these signs have been properly reported and are consistent with the requirements applicable to Clean Elections candidates.

Arizona Revised Statutes § 16-941 provides, in part, that a participating candidate shall not accept contributions other than those specifically authorized under the Citizens Clean Elections Act and must comply with applicable spending limitations and reporting requirements.

Because this is a statewide race, it is reasonable to assume that campaign signs may be deployed in multiple counties across Arizona. If the number of signs observed in the West Valley is representative of activity elsewhere in the state, the total cost associated with the sign program could be substantial.

I have reviewed publicly available campaign finance reports and have been unable to determine how the production and installation of these signs are being funded. As a result, I respectfully request that the Commission review the campaign's filings and determine whether all expenditures and any in-kind contributions related to campaign signage have been properly disclosed and whether the campaign is in compliance with applicable Clean Elections requirements.

I am not asserting that a violation has occurred. Rather, I am requesting clarification and, if appropriate, an investigation into whether the reported expenditures accurately reflect the campaign activity that is visible throughout the state.

Thank you for your time and consideration of this matter.

[redacted]

I affirm the above statement.

[redacted]

Lisa Everett

[redacted]

State of Arizona )

County of Maricopa )

Subscribed and sworn before me this 26th day of June, 2026.

[redacted]

Notary Public

My Commission Expires: 1-5-2030

HOLLY HECKENBERG
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 690864
Expires January 5, 2030

# EXHIBIT A-2

*Timothy A. La Sota, PLC*
2198 E. Camelback Rd., Suite 305
Phoenix, Arizona 85016
P 602-515-2649
tim@timlasota.com

August 7, 2026

**Via hand delivery to:**

Mr. Thomas Collins
Executive Director
Arizona Citizens Clean Elections Commission
1110 W. Washington Street, Suite 250
Phoenix, Arizona 85007

**Re:** ***MUR-26-06***

Dear Mr. Collins:

As you know, this firm represents Dr. Ralph Heap in connection with MUR-26-06. In my previous communication, I indicated that I was still investigating the allegations raised in the complaint filed by Ms. Lisa Everett. This letter sets forth our response. In short, the complaint is without legal merit and should be dismissed.

## I. Summary of the Complaint

Ms. Everett's complaint alleges that Dr. Heap's campaign placed a number of political signs in advance of the July 21, 2026 primary election but that his campaign finance reports did not reflect an expenditure for those signs. It is true that campaign signs were placed supporting Dr. Heap's candidacy for Corporation Commission and that his campaign finance reports do not yet reflect an expenditure for those signs. But there is no violation of law. As set forth below, the signs were provided to the campaign by Mesa Sign Shop as a lawful extension of credit in the ordinary course of that company's business. Under Arizona law, this extension of credit is neither a contribution to Dr. Heap's campaign nor an expenditure by his campaign until such time as payment is made.

## II. The Applicable Statutory Framework

Arizona law expressly exempts extensions of credit from the definitions of both "contribution" and "expenditure." A.R.S. § 16-911(B)(6)(d) provides that the following is not a "contribution" under Title 16:

> The value of any of the following to a committee . . . (d) An extension of credit for goods and services on a committee's behalf by a creditor if the terms are substantially similar to extensions of credit to nonpolitical debtors that are of similar risk and size of obligation. The creditor must make a commercially reasonable attempt to collect the debt, except that if an extension of credit remains unsatisfied by the committee after six months the committee is deemed to have received a contribution but the creditor is not deemed to have made a contribution.

The sister provision, A.R.S. § 16-921(B)(4)(d), provides an identical exemption from the definition of "expenditure":

> The value of any of the following to a committee . . . (d) An extension of credit for goods and services on a committee's behalf by a creditor if the terms are substantially similar to extensions of credit to nonpolitical debtors that are of similar risk and size of obligation. The creditor must make a commercially reasonable attempt to collect the debt, except that if an extension of credit remains unsatisfied by the committee after six months the committee is deemed to have received a contribution but the creditor is not deemed to have made a contribution.

These provisions establish that a legitimate commercial extension of credit does not constitute a contribution or expenditure unless and until it remains unsatisfied after six months.

## III. Application to Dr. Heap's Campaign Signs

The attached affidavit of Jim Torgeson, the principal and owner of Mesa Sign Shop, establishes that every element of the statutory exemption is satisfied here.

### *A. The Credit Was Extended in the Ordinary Course of Business*

Mr. Torgeson has owned and operated Mesa Sign Shop for many ears. The shop prints a large volume of signs for a wide variety of clients, including political candidates from both major parties, government agencies, businesses, churches, schools, and other non-political entities. Mr. Torgeson's standard business practice—for both political and non-political clients he considers creditworthy—is to print signs, make them available for pickup, and invoice the client after completion. This is the same practice he follows for the majority of his established clients, regardless of whether the order is political in nature. Mesa Sign Shop's extension of credit to Dr. Heap's campaign was entirely consistent with its ordinary course of business.

### *B. The Terms Are Substantially Similar to Those Extended to Nonpolitical Debtors of Similar Risk and Size and the Signs Were Provided at Full Fair Market Value*

Mr. Torgeson attests that he extends the same credit terms to Dr. Heap as he extends to other clients of comparable creditworthiness and order size—political and non-political alike. He currently has a large, non-political institutional client that has not paid for signs delivered over four months ago. He has numerous other clients, both political and non-political, with invoices outstanding for two to four months. Mr. Torgeson applies the same creditworthiness assessment to all clients. There is nothing preferential or unusual about the credit extended to Dr. Heap's campaign.

Mr. Torgeson confirms that Dr. Heap has received no special treatment on terms of payment or pricing. Others similarly situated were afforded the same things.

### *C. Collection Efforts Are Not Yet Required*

Mr. Torgeson states that Dr. Heap's invoice remains within the normal payment window that he extends to clients of similar creditworthiness and order size. He does not consider payment overdue, and he has not commenced collection efforts because the account is not delinquent under his standard business terms. The statute requires only that the creditor make a "commercially reasonable attempt to collect the debt"—it does not require that collection efforts begin before the debt is even due. The six-month statutory period has not elapsed, and Dr. Heap remains in good standing under Mesa Sign Shop's standard terms.

### *D. No Coordination Occurred Beyond an Arm's-Length Commercial Transaction*

Mr. Torgeson further attests that at no time did Dr. Heap, his campaign committee, or any agent of his campaign direct, coordinate, or consult with him regarding the content, design, placement, or distribution of the signs. Mr. Torgeson's sole involvement was as a commercial vendor providing printing services in the ordinary course of his business. The campaign placed an order, the order was fulfilled, and the invoice will be paid in the normal course, just as other persons and entities who utilize Mesa Sign Shop are allowed to do—nothing more.

## IV. The Commission's Administrative Rules Cannot Override the Statute

The Commission may contend that its administrative rules require candidates to report expenditures as of the date a "promise" is made to pay for an item. See Arizona Administrative Code R2-20-110(A)(3), (B)(1). To the extent these rules conflict with the statute, they are without legal effect. An agency regulation "is of no effect to the extent that it conflicts with the proper interpretation of a statute." *Pima Cmty. Coll. v. Ariz. Dep't of Econ. Sec.*, 148 Ariz. 302, 304, 714 P.2d 472, 474 (App. 1986); see also *Dioguardi v. Superior Court*, 184 Ariz. 414, 417, 909 P.2d 481, 484 (App. 1995) (an appellate court will strike down an agency rule that "would defeat the legislative purpose"); *Leach v. Hobbs*, 250 Ariz. 572, 576 (2021) (a regulation that contravenes a statute's purpose does not have the force of law); A.R.S. § 41-1030(A) (a rule is "invalid unless it is consistent with statute [and] reasonably necessary to carry out the purpose of the statute").

The statutory provisions at issue—now codified at A.R.S. §§ 16-911(B)(6)(d) and 16-921(B)(4)(d)—preceded the enactment of the Arizona Citizens Clean Elections Act. Arizona law has long recognized that ordinary commercial extensions of credit do not constitute contributions or expenditures. See A.R.S. § 16-901(5)(b)(xii) (1998). Had the drafters of the Clean Elections Act intended to abrogate this longstanding principle, they could have done so expressly. They did not. Cf. *State v. Bonillas*, 197 Ariz. 96, 97 ¶ 5 (App. 1999) (courts "presume that the legislature is aware of the existing case law and that, if it revises a statute and retains the language on which we have based our decisions, the legislature agrees with our interpretation of the statute").

Moreover, the Commission's recent efforts to expand its regulatory authority beyond what the statutes authorize have been rejected by the courts. See *The Power of Fives v. Arizona Clean Elections Commission*, Maricopa County Superior Court Case No. CV2021-015826 (May 11, 2026) (holding that the Commission's attempt to expand its

regulatory reach by broadening a definition through administrative rulemaking was "ineffective").

**V. The Extension-of-Credit Exemption Is Not Surplusage**

If a standard commercial extension of credit were treated as either a loan or an in-kind contribution, the specific statutory provisions at A.R.S. §§ 16-911(B)(6)(d) and 16-921(B)(4)(d) would be rendered mere surplusage. The Legislature clearly did not intend for an ordinary extension of credit to be treated as a "loan" within the meaning of A.R.S. § 16-901(11)(d).[1] The extension-of-credit provisions are distinct and highly specific: the transaction is not a gift, not a loan, and not a contribution or expenditure until either (1) it is paid, at which point it becomes a reportable expenditure, or (2) six months elapse without payment, at which point it is deemed a contribution by operation of law. Neither condition has been met here.

The policy rationale for this provision is sound. If every extension of credit were treated as an in-kind contribution, then every candidate who receives goods or services from a commercial vendor without prepaying—a routine and unavoidable aspect of campaign operations—would potentially violate contribution limits or, in the case of corporate vendors, the constitutional prohibition on corporate contributions. See Ariz. Const., Art. XIV, § 18; A.R.S. § 16-1022(A). The Legislature enacted §§ 16-911(B)(6)(d) and 16-921(B)(4)(d) precisely to avoid this untenable result, subject to the safeguards of the six-month limitation, the commercially reasonable collection requirement, and the substantially-similar-terms condition.

**VI. Dr. Heap's Reports Are Accurate**

Because the extension of credit to Dr. Heap's campaign satisfies every element of §§ 16-911(B)(6)(d) and 16-921(B)(4)(d), the signs do not constitute a contribution to or expenditure by the campaign at this time. Dr. Heap's campaign finance reports are not inaccurate. The signs will be reflected as an expenditure when payment is made—which is precisely how the statute contemplates such transactions should be reported.

To the extent the Commission's administrative rules create a preferred form of reporting for extensions of credit that have not yet been paid, Dr. Heap is willing to amend his filings to reflect the outstanding obligation. However, such an amendment would be a matter of form, not substance, and does not render his current reports inaccurate or create any basis for a finding of violation.

---

1 A.R.S. § 16-901(11) defines "Contribution" to include "(d) A loan that is made to a committee for the purpose of influencing an election, to the extent the loan remains outstanding."

## VII. Conclusion

For the foregoing reasons, the complaint filed by Ms. Everett is without merit. The extension of credit from Mesa Sign Shop to Dr. Heap's campaign satisfies every statutory requirement: it was made in the ordinary course of business, on terms substantially similar to those extended to nonpolitical debtors of similar risk and size of obligation, at full fair market value, and without any coordination beyond an arm's-length commercial transaction. No contribution or expenditure has occurred under Arizona law.

We respectfully request that the Commission dismiss this complaint and release Dr. Heap's qualified Clean Elections funding, for which he has already been certified as eligible.

Very truly yours,

**TIMOTHY A. LA SOTA, PLC**

Timothy A. La Sota

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON MY KNOWLEDGE, INFORMATION AND BELIEF.**

Executed this 7th day of August, 2026.

Timothy A. La Sota

TIMOTHY LA SOTA

STATE OF ARIZONA )
) ss.:
COUNTY OF MARICOPA )

I hereby certify that Timothy La Sota personally appeared before me and signed the above document. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 7th day of August, 2026.

Notary Public:______________________

Commission Expires: 05/28/2028

NOAH ENGLEBRETSON
Notary Public - Arizona
MARICOPA COUNTY
Commission # 669165
Expires May 28, 2028

**Under penalty of perjury as provided herein, JIM TORGESON declares as follows:**

1. I am the principal and owner of Mesa Sign Shop, a sign printing company in Mesa, Arizona. I have been in business for twenty five years and am personally familiar with all aspects of the business, including pricing, invoicing, and credit practices.

2. Mesa Sign Shop prints a large volume of signs for a wide variety of clients, including political candidates from both major parties, government agencies, businesses, churches, schools, and other non-political persons and entities. As the Mesa Sign Shop is a business, I do not favor one party over the other. I believe Mesa Sign Shop is the preeminent printing company in this state for political signs, but political orders represent only a portion of our total business.

3. In late April of 2026, I received an order for signs to be printed for Dr. Heap's candidacy for Corporation Commission. The order was for 4-foot by 4-foot coroplast signs. This sign request was completed and the signs were made available for pickup in late May of 2026. The total invoiced amount for this order was consistent with our standard pricing for signs of this type and quantity. I invoiced Dr. Heap's campaign the same per-unit price that I charge other customers, political and non-political, for comparable sign orders.

4. I did not require a signed contract prior to printing these signs, and do not have a signed contract with Dr. Heap or his campaign committee to this day. My standard business practice—for both political and non-political clients whom I believe can be relied upon for payment—is to print the signs, deliver or make them available for pickup, and invoice the person or entity sometime after completion. This is the same practice I follow for the majority of my established or creditworthy clients, regardless of whether the order is political in nature.

5. I have prepared an invoice for these signs, but it has not yet been sent to Dr. Heap and Dr. Heap has not yet remitted payment. The invoice remains within the normal payment window that I extend to clients of similar creditworthiness and order size. I do not consider Dr. Heap's invoice overdue nor at risk, and I have not commenced any collection efforts because the account is not delinquent under my standard business terms.

6. An unpaid invoice for signs printed two or three months ago is not unusual in my business. By way of specific example: I currently have a large, non-political institutional client that has not paid me for signs delivered over four months ago. I have printed signs for candidates from both parties—as well as for non-political businesses and organizations—where the invoice remains outstanding after two to four months. This is a routine part of my accounts receivable cycle and does not concern me. I made the same business decision with respect to Dr. Heap's order that I make routinely with clients I consider creditworthy: to print the signs, release them, and collect payment subsequently.

7. None of the signs that I describe in this affidavit, including Dr. Heap's, are by any means "gifts" from Mesa Sign Shop to any candidate or other entity, political or nonpolitical. The signs were printed at a price consistent with my standard rates. I fully expect to be paid for them, and it is extremely rare that any client ultimately fails to pay; and never has any political candidate not paid their invoice. Nor has Dr. Heap received any special pricing—he has been treated as others who are in a similar situation as he is have been treated.

8. I have known Dr. Heap for a number of years. Based on my experience with him, I view him as honorable and trustworthy. These are factors I consider when evaluating any client's creditworthiness—political or otherwise—and deciding whether to extend credit without requiring prepayment. I apply the same creditworthiness assessment to all of my clients. Even for clients I have less personal familiarity with, I generally do not require prepayment if I have reason to believe they are reliable. I extend credit to Dr. Heap on the same basis and under the same terms as I extend credit to other clients of comparable creditworthiness and order size.

9. I am also aware that Dr. Heap is a licensed physician and orthopedic surgeon. His professional standing and financial capacity are additional factors that, in my commercial judgment, make him a low credit risk—similar to other professionals and established business clients to whom I routinely extend credit without requiring prepayment.

10. Overall, I view Dr. Heap as presenting no risk of nonpayment for the signs that Mesa Sign Shop printed. This assessment is consistent with the credit risk evaluations I perform for other clients of similar financial standing and is not based on any political affiliation or preference.

11. At no time did Dr. Heap, his campaign committee, or any agent of his campaign direct, coordinate, or consult with me regarding the content, design, placement, or distribution of the signs. I printed the signs based on the order I received and made them available for pickup. My only involvement was as a commercial vendor providing printing services in the ordinary course of my business.

12. Further affiant sayeth naught.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON MY KNOWLEDGE, INFORMATION AND BELIEF.**

Executed this 7th day of August, 2026.

JIM TORGESON

# EXHIBIT A-3

*Timothy A. La Sota, PLC*
2198 E. Camelback Rd., Suite 305
Phoenix, Arizona 85016
P 602-515-2649
tim@timlasota.com

September 7, 2026

**Via email to:**

Mr. Thomas Collins
Executive Director
Arizona Citizens Clean Elections Commission
1110 W. Washington Street, Suite 250
Phoenix, Arizona 85007

**Re:** ***Response to Request for Financial Records (MUR-26-06)***

Dear Mr. Collins:

As you know, this firm represents Dr. Ralph Heap. Enclosed are the following documents in response to your letter dated August 17, 2026:

**Request No. 1**: Copies of any and all statements from financial accounts used for campaign purposes, including copies of all electronic transactions or cleared/cancelled checks issued

- Printout of Wells Fargo business checking account activity from June 23, 2025, to September 4, 2026;
- Copies of 10 cleared checks corresponding to the withdrawals from the Wells Fargo business checking account; and
- Spreadsheet of Anedot transactions from October 1, 2025 to August 10, 2026

Please note: the $100 square purchase on May 26, 2026, reflects an expense to print copies of the Clean Elections qualifying forms.

**Request No. 2**: Copies of any and all agreements to provide any services to the candidate or the campaign

- Moir & Associates Agreement executed on March 27, 2026

**Request No. 3:** Copies of any and all receipts, invoices, or records regarding any service provided to the campaign, any in-kind contribution, any use of personal monies, or any other transaction of value

Dr. Heap objects to this request to the extent it seeks receipts, invoices, or records "regarding any service provided to the campaign" without limitation. The request is overbroad and disproportionate to the Commission's investigative needs in MUR 26-06 for the following reasons.

First, the scope of MUR 26-06 is defined by the complaint that initiated it, which concerns specific, discrete transactions pertaining to the Mesa Sign Shop sign order and questions about its reporting treatment. The Commission's reason-to-believe determination was grounded in those specific allegations, not in a general audit of every service ever rendered to the campaign. A request for records regarding "any service provided to the campaign" sweeps far beyond the subject matter of the complaint and the Commission's reason-to-believe finding, effectively converting a targeted enforcement proceeding into a plenary audit of the campaign's entire vendor history.

Second, the Commission's own rules recognize the principle of proportionality. Under A.R.S. § 16-957(A), a compliance order must state "with reasonable particularity the nature of the violation." That standard of reasonable particularity should likewise govern the scope of the Commission's document requests during an investigation; the Commission's investigative reach should be tethered to the alleged violations, not extend to every conceivable campaign transaction.

Notwithstanding this objection, and without waiving it, Dr. Heap has included the following records that are responsive to Request No. 3:

- Mesa Sign Shop Invoice dated November 26, 2025;
- Uncle Sam Petitions Invoice dated January 13, 2026;
- Uncle Sam Petitions Invoice dated February 13, 2026; and
- Moir & Associates Invoice dated April 1, 2026.

**Request No. 4**: Any and all communications regarding the purchase of signs from Mesa Sign Shop or the placement of signs purchased

Dr. Heap does not have any communications responsive to this request.

Dr. Heap has conducted a diligent search of his records and believes the enclosed documents are responsive to each of the above requests. Please do not hesitate to contact me if you have any questions or require additional information.

Very truly yours,

**TIMOTHY A. LA SOTA, PLC**

Timothy La Sota

Timothy A. La Sota

# EXHIBIT A-4

# THE STATE OF ARIZONA
# ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION

In the Matter of:

26-06 Ralph Heap

**SUBPOENA DUCES TECUM**

**TO:**

Mesa Sign Shop, LLC
James E. “Jim” Torgeson, Member
c/o James E. Torgeson, Statutory Agent
756 W. Main St.,
Mesa, AZ 85201

YOU ARE HEREBY REQUIRED, pursuant to A.R.S. § 16-956(B) and R2-20-211(A), to produce and permit inspection and copying of all Documents in your possession, custody, or control related to your Declaration in CCEC MUR 26-06 dated August 7, 2026 and the determination there is reason to believe violations occurred made by the Commission on August 14, 2026, with the Arizona Citizens Clean Elections Commission. *See* A.R.S. § 16-956(B); A.A.C. R2-20-211. This information is requested in connection with an inquiry authorized pursuant to A.R.S. § 16-956(A)(7) and A.A.C. R2-20-209(A).

This Subpoena Duces Tecum requires that you produce the following

materials:

## General Definitions

"Mesa Sign Shop" means Mesa Sign Shop, LLC, including its owners, employees, agents, representatives, and persons acting on its behalf.

"Dr. Heap" means Dr. Ralph Heap, his candidate committee, and any person acting on behalf of either.

"Heap Sign Order" means the order for Dr. Heap's Corporation Commission campaign signs described in James "Jim" Torgeson's August 7, 2026 declaration.

"Declaration" means the Declaration submitted by James "Jim" Torgeson in the Response submitted for Dr. Ralph Heap in MUR 26-06.

"Document" means any written, printed, electronic, or recorded material, including emails, text messages, invoices, estimates, quotes, work orders, account statements, accounting records and entries, customer account histories, contracts, correspondence, internal notes, and electronically stored information.

"Communication" means any written, electronic, or recorded communication, including email and text messages.

## Requests

1) All Documents relating to the Heap Sign Order, including any order, work order, quote, estimate, invoice, proof, production record, unit price, total price, date ordered, date completed, and date made available for pickup, pickup or delivery record, account statement, and the payment terms applicable to the Heap Sign Order, including

but not limited to information referenced in paragraphs 3, 4, and 5 of the Declaration. All Documents and Communications relating to the content, design, placement, or distribution of the signs comprising the Heap Sign Order, including any Communication between Mesa Sign Shop and Dr. Heap, including but not limited to information referenced in paragraph 11 of the Declaration, and communications with any other person concerning the Heap Sign Order.

2) Documents sufficient to establish Mesa Sign Shop's standard pricing during the 2025-2026 election cycle for 4-foot-by-4-foot coroplast signs in quantities comparable to the Heap Sign Order, including price lists, rate sheets, and pricing schedules, including but not limited to information referenced in paragraphs 3 and 7 of the Declaration.

3) Documents sufficient to identify and establish the pricing of the political and nonpolitical customer orders upon which Jim Torgeson relied in stating that Dr. Heap's campaign was invoiced the same per-unit price charged to other political and nonpolitical customers for comparable sign orders, including Documents showing the customer, quantity, specifications, order date, unit price, and total price, including but not limited to information referenced in paragraphs 3 and 7 of the Declaration.

4) Documents sufficient to establish Mesa Sign Shop's standard practice during 2025 and 2026 concerning when established or creditworthy customers are invoiced after an order is completed,

delivered, or made available for pickup and when payment is then due, including the "normal payment window" and payment terms ordinarily extended to such customers, including but not limited to information referenced in paragraphs 4, 5, and 6 of the Declaration.

5) All Documents relating to the "large, non-political institutional client" identified in paragraph 6 of the Declaration as having not paid Mesa Sign Shop for signs delivered more than four months earlier, including the order, invoice, delivery record, payment terms, account statements, collection Communications, and Documents showing the current status or ultimate disposition of the account.

6) Mesa Sign Shop's accounts-receivable aging reports or equivalent records for April 1 through August 7, 2026, sufficient to evaluate Jim Torgeson's statement that invoices outstanding for two to four months are a routine part of Mesa Sign Shop's accounts-receivable cycle, together with Documents sufficient to identify each political and nonpolitical customer whose invoice remained outstanding for two to four months and to show, for each, the amount, order completion or delivery date, invoice date, due date, payment terms, and payment date, including but not limited to information referenced in paragraphs 5 and 6 of the Declaration.

7) Documents sufficient to identify the political and nonpolitical customers whose invoices remained outstanding for two to four months, together with Documents showing the amount, order completion or delivery date, invoice date, due date, payment terms,

and payment date for each identified transaction, including but not limited to information referenced in paragraph 6 of the Declaration.

8) Documents sufficient to establish the policies, standards, criteria, or practices used by Mesa Sign Shop during 2025 and 2026 to determine whether a customer is sufficiently creditworthy to receive goods or services without prepayment, including credit policies, credit applications, internal guidelines, and standard terms, including but not limited to information referenced in paragraphs 4, 8, 9, and 10 of the Declaration.

9) All Documents and Communications reflecting Mesa Sign Shop's assessment of the creditworthiness of Dr. Heap or its decision to produce or release the Heap Sign Order without prepayment, including Documents concerning his reputation, professional standing, occupation, financial capacity, cash on hand, anticipated revenues, ability to pay, or any other factor considered in making that decision, including but not limited to information referenced in paragraphs 8, 9, and 10 of the Declaration.

10) Documents sufficient to identify the "other clients of comparable creditworthiness and order size" referenced in paragraph 8 of the Declaration, and to show, for each, the basis upon which Mesa Sign Shop extended credit without prepayment and the terms of that credit.

11) Documents sufficient to establish Mesa Sign Shop's standard practices for collection of unpaid invoices, including when invoices

are considered due or delinquent and when collection activity ordinarily begins, and all Documents reflecting any request for payment, invoice, statement, reminder, demand, or other collection activity concerning the Heap Sign Order, including but not limited to information referenced in paragraph 5 of the Declaration.

12) All Documents created after August 7, 2026 relating to invoicing, payment, collection, forgiveness, adjustment, write-off, or other disposition of the amount owed for the Heap Sign Order.

**TIME AND DATE OF PRODUCTION:** **5 p.m., September 3, 2026**

**PLACE OF PRODUCTION:** Arizona Citizens Clean Elections Commission Main Office
1110 W. Washington, Ste. 250
Phoenix, Arizona 85007

**Note:**

You have been subpoenaed by the Citizens Clean Elections Commission's Executive Director, whose attorney's name, address and telephone number is: Mary O'Grady, 2929 North Central Ave, Suite 2000 Phoenix, AZ 85012, 602-640-9000

Your Duties In Responding to This Subpoena

You have a duty to produce the documents requested as they are kept by you in the usual course of business, or you may organize the documents and label them with the categories set forth in this subpoena.

If a claim of privilege is asserted with respect to any Document or you refuse to disclose any Document requested herein on any other ground, state separately for each Document withheld the basis for your claim that such Document need not be disclosed with such specificity as will permit

the Commission or a Court of Law to determine the legal sufficiency of your objection or position.

If this subpoena asks you to produce or permit inspection of designated books, papers, documents, tangible things, or the inspection of premises, you need not appear to produce the items unless the subpoena states you must appear. If relevant records are not in your possession, please provide an index identifying the records and who is in possession of such records.

Your Right to Object

You may object if you feel that you should not be required to respond to the request made. Under A.A.C. R2-20-213, you have a right, prior to the time specified herein for compliance, but in no event more than five days after the receipt of this subpoena, to apply to the Citizens Clean Elections Commission to quash or modify it. Such application must include the reasons therefore. The Commission may deny the application, quash the subpoena, or modify the subpoena.

**Failure to comply with this subpoena may subject you to proceedings in Superior Court to enforce its requirements.**

ADA Notification

**REQUESTS FOR REASONABLE ACCOMMODATIONS FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE COMMISSION AT LEAST THREE DAYS IN ADVANCE OF A SCHEDULED PROCEEDING.**

**SIGNED AND SEALED** this 20th day of August, 2026.

By: ______________________
Thomas M. Collins
Executive Director
Citizens Clean Elections Commission

ORIGINAL of this Subpoena
sent by email this
20th day of August, 2026 to:

Tim La Sota
tim@timlasota.com
Attorney for Dr. Ralph Heap, MUR 26-06

______________________

# EXHIBIT A-5

**Mesa Sign Shop**

756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

BILL TO
Jake Hoffman
1ten.io

| | |
|---|---|
| INVOICE | 2947 |
| DATE | 04/10/2026 |
| TERMS | Due on receipt |
| DUE DATE | 04/10/2026 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Coro - 48x48, 1s | REDACTED | 1,500 | 13.75 | 20,625.00T |
| | Coro - 48x48, 1s | REDACTED | 1,750 | 13.75 | 24,062.50T |
| | 4x8 signle sided coro sign | REDACTED | 250 | 27.50 | 6,875.00T |
| | Coro - 48x48, 1s | REDACTED | 75 | 13.75 | 1,031.25T |
| | Coro - 48x48, 1s | REDACTED | 75 | 13.75 | 1,031.25T |
| | Coro - 24x18, 2s with step stake | REDACTED | 1,000 | 3.90 | 3,900.00T |
| | Coro - 24x18, 2s with step stake | REDACTED | 200 | 3.90 | 780.00T |
| | Coro - 48x48, 1s | REDACTED | 300 | 13.75 | 4,125.00T |
| | Coro - 24x18, 2s with step stake | REDACTED | 100 | 3.90 | 390.00T |
| | Coro - 24x18, 2s with step stake | Heap YS | 1,000 | 3.90 | 3,900.00T |
| | Coro - 48x48, 1s | Heap 48x48 1s | 1,750 | 13.75 | 24,062.50T |
| | Coro - 24x9, 2s with step stake | REDACTED | 1,000 | 2.28 | 2,280.00T |
| | 4x4 1 sided coro sign | REDACTED | 100 | 13.75 | 1,375.00T |
| | 4x4 1 sided coro sign | REDACTED | 150 | 13.75 | 2,062.50T |
| | Coro - 24x18, 2s with step stake | REDACTED | 100 | 3.90 | 390.00T |
| | Coro - 24x18, 2s with step stake | REDACTED | 500 | 3.90 | 1,950.00T |
| | 4x4 1 sided coro sign | REDACTED | 40 | 13.75 | 550.00T |
| | Coro - 24x9, 2s with step stake | REDACTED | 500 | 2.25 | 1,125.00T |

## Ways to pay

| | |
|---|---|
| SUBTOTAL | 100,515.00 |
| TAX | 8,342.75 |
| TOTAL | 108,857.75 |

View and pay

| | |
|---|---|
| PAYMENT | 96,500.00 |
| BALANCE DUE | **$12,357.75** |

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

| BILL TO | INVOICE | 2230 |
|---|---|---|
| Jake Hoffman | DATE | 06/04/2025 |
| 1ten.io | TERMS | Due on receipt |
| | DUE DATE | 06/04/2025 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 4x8 signle sided coro sign | Heap art v1-v4 cut t0 size | 4 | 40.00 | 160.00T |

| | |
|---|---|
| SUBTOTAL | 160.00 |
| TAX | 13.28 |
| TOTAL | 173.28 |
| PAYMENT | 173.28 |
| BALANCE DUE | **$0.00** |

**PAID**

## Ways to pay

Pay DISCOVER VISA AMEX BANK PayPal venmo

View and pay

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

BILL TO
Jake Hoffman
1ten.io

| | |
|---|---|
| INVOICE | 3218 |
| DATE | 06/17/2026 |
| TERMS | Due on receipt |
| DUE DATE | 06/17/2026 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Rack Card 4x9 #80 gloss cover qty5000 | Heap | 1 | 388.20 | 388.20T |
| | Paper - Business Cards qty1000 | Heap | 1 | 56.54 | 56.54T |

| | |
|---|---|
| SUBTOTAL | 444.74 |
| TAX | 36.91 |
| TOTAL | 481.65 |
| BALANCE DUE | **$481.65** |

## Ways to pay

Pay DISCOVER VISA AM EX affirm BANK PayPal venmo affirm

View and pay

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

BILL TO
Heap Marshall Campaign
Heap Marshall Campaign

| | |
|---|---|
| INVOICE | 2280 |
| DATE | 06/27/2025 |
| TERMS | Due on receipt |
| DUE DATE | 06/27/2025 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Coro - 48x96, 1s | Heap Marshall | 10 | 35.00 | 350.00T |
| | Banner, vinyl - 13oz, direct digital image | Heap Marshall 4x6 | 2 | 96.00 | 192.00T |
| | Magnetic - per sq ft | Heap Marshall 24x16 | 2 | 26.67 | 53.34T |

| | |
|---|---|
| SUBTOTAL | 595.34 |
| TAX | 49.42 |
| TOTAL | 644.76 |
| PAYMENT | 644.76 |
| BALANCE DUE | **$0.00** |

**PAID**

## Ways to pay

Pay DISCOVER VISA AMEX BANK PayPal venmo

View and pay

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

BILL TO
Jake Hoffman
1ten.io

| | |
|---|---|
| INVOICE | 3294 |
| DATE | 07/06/2026 |
| TERMS | Due on receipt |
| DUE DATE | 07/06/2026 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Rack Cards - 4x11 #80cvr | Heap ACC 4x11 #80cv 2s 2k (picked up with voter cards) | 1 | 289.00 | 289.00T |
| | Rack Cards - 4x11 #80cvr | Heap ACC 4x11 #80cv 2s 2k (picked up by Dr.H) | 1 | 289.00 | 289.00T |

| | |
|---|---|
| SUBTOTAL | 578.00 |
| TAX | 47.98 |
| TOTAL | 625.98 |
| BALANCE DUE | **$625.98** |

## Ways to pay

Pay DISCOVER VISA AMEX affirm BANK PayPal venmo affirm

View and pay

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

# INVOICE

BILL TO
Jake Hoffman
1ten.io

| | |
|---|---|
| INVOICE | 2443 |
| DATE | 09/18/2025 |
| TERMS | Due on receipt |
| DUE DATE | 09/18/2025 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Rack Cards - 4x9 #130cvr Qty500 | Heap/Marshall THIS IS | 0.50 | 120.89 | 60.45T |

This is the Marshall hald of Marshall / Heap 4x9s

| | |
|---|---|
| SUBTOTAL | 60.45 |
| TAX | 5.02 |
| TOTAL | 65.47 |
| PAYMENT | 65.47 |
| BALANCE DUE | **$0.00** |

**PAID**

## Ways to pay

Pay DISCOVER VISA AM EX BANK PayPal venmo

View and pay

**Mesa Sign Shop**
756 W Main St
Mesa, AZ 85201 USA
admin@mesasignshop.com

## INVOICE

BILL TO
Jake Hoffman
1ten.io

| | |
|---|---|
| INVOICE | 2463 |
| DATE | 09/29/2025 |
| TERMS | Due on receipt |
| DUE DATE | 09/29/2025 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Services | half of Heap Marshall invoice #2443 - that invoice cut in half for Hea[ | 0.50 | 120.89 | 60.45 |

| | |
|---|---|
| SUBTOTAL | 60.45 |
| TAX | 0.00 |
| TOTAL | 60.45 |
| PAYMENT | 60.45 |
| BALANCE DUE | **$0.00** |

**PAID**

## Ways to pay

Pay DISCOVER VISA AM EX BANK PayPal venmo

View and pay

| DATE ↓ | TYPE | REF NO. | CONTACT | DUE DATE | BALANCE | AMOUNT | MEMO/DESCRIPTION | LAST MODIFIED DATE | STATUS |
|---|---|---|---|---|---|---|---|---|---|
| 07/06/2026 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] 4x11 rack [illegible] | [illegible] | Overdue |
| 06/17/2026 | Invoice | 3218 | 1ten.io | 06/17/2026 | $481.65 | $481.65 | Heap 5k rack cards and boards | 2026-06-18T17:17:39.708342Z | Overdue |
| 04/10/2026 | Invoice | 2947 | 1ten.io | 04/10/2026 | $12,357.75 | $108,857.75 | REDACTED , Heap, | 2026-06-17T23:22:43.282742Z | Overdue |
| 09/29/2025 | Invoice | 2463 | 1ten.io | 09/29/2025 | $0.00 | $60.45 | half of Heap Marshall invoice #2443 - that invoice cut in half for Heap | 2026-06-07T21:42:05.366634Z | Paid |
| 09/18/2025 | Invoice | 2443 | 1ten.io | 09/18/2025 | $0.00 | $65.47 | Heap/Marshall THIS IS | 2026-06-07T21:49:13.619933Z | Paid |
| 06/27/2025 | Invoice | 2280 | Heap Marshall Campaign | 06/27/2025 | $0.00 | $644.76 | | 2025-07-02T17:42:50.418531Z | Paid |
| 06/04/2025 | Invoice | 2230 | 1ten.io | 06/04/2025 | $0.00 | $173.28 | Heap art v1-v4 cut t0 size | 2026-06-20T02:46:32.393459Z | Paid |
| 10/01/2024 | Invoice | 1621 | Heap for Recorder Campaign | 10/02/2024 | $0.00 | $5,360.85 | | 2024-10-01T19:18:22.12334Z | Paid |
| 07/01/2024 | Invoice | 1062 | 1ten.io | 07/11/2024 | $0.00 | $442.39 | Heap For Recorder | 2026-06-07T21:44:37.980304Z | Paid |

# EXHIBIT A-6

**Allie Karpurk**

---

**From:** Allie Karpurk <akarpurk@omlaw.com>
**Sent:** Monday, October 12, 2026 4:26 PM
**To:** Kurt Altman <kurt@altmanaz.com>
**Cc:** Mary O'Grady <mogrady@omlaw.com>
**Subject:** RE: [EXT] In the Matter of: 26-06 Ralph Heap: Subpoena of Mesa Sign Shop LLC; Jim Torgeson
**Attachments:** 2026-9-22- CCEC-Heap Torgeson Subpoena Invoice_Redacted.pdf; 2026-9-30- CCEC-Heap Torgeson Subpoena Accounts Receivable_Redacted.pdf

Kurt,

We plan to provide the documents Mr. Torgeson produced in this matter to Dr. Heap and his counsel. Before we do, we would like to give you the opportunity to review our proposed redactions. We have redacted the invoice and accounts receivable records to remove personal identifying information belonging to anyone other than Dr. Heap. Please let us know if you have any concerns or would like to discuss.

Separately, we would like to follow up on Mr. Torgeson's availability for a deposition. Could you please send us a few dates that would work?

Thanks,
Allie

**Allie Karpurk**
she • her • hers
602-640-9380 (direct)

---

**OSBORN**
**MALEDON**
2929 N. Central Ave, Ste. 2000
Phoenix, AZ 85012
**omlaw.com**
**CONFIDENTIAL AND PRIVILEGED COMMUNICATION OF COUNSEL**
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Kurt Altman**

---

**From:** Kurt Altman <kurt@altmanaz.com>
**Sent:** Monday, October 12, 2026 5:06 PM
**To:** Allie Karpurk <akarpurk@omlaw.com>
**Cc:** Mary O'Grady <mogrady@omlaw.com>; admin altman <admin@altmanaz.com>
**Subject:** Re: [EXT] In the Matter of: 26-06 Ralph Heap: Subpoena of Mesa Sign Shop LLC; Jim Torgeson
**Attachments:** 2026-9-22- CCEC-Heap Torgeson Subpoena Invoice_Redacted.pdf; 2026-9-30- CCEC-Heap Torgeson Subpoena Accounts Receivable_Redacted.pdf

Thank you Allie,

Those redactions look fine to me and we have no problem with the disclosure in that form. Thanks for the courtesy.

I'm still working with Jim to get dates. I won't hold you to this but how long do you believe the depo may take to complete? Any idea?

thanks
KA

Kurt Altman
**ALTMAN LAW & POLICY**
12621 N. Tatum Blvd. #102
Phoenix, AZ 85032
kurt@altmanaz.com
www.altmanaz.com

This transmission contains information from Kurt M. Altman, P.L.C. (dba Altman Law & Policy) that may be privileged and confidential. If you are not the intended recipient, you may not use the contents of this message in any way. If you have received this transmission in error, please contact our office to notify the sender and then delete this message. You can reach our office at admin@altmanaz.com or 602-491-0088 if you have any questions. Thank you!

# EXHIBIT A-7

Thomas M. Collins
Executive Director

**State of Arizona**
**Citizens Clean Elections Commission**
**1110 W. Washington - Suite 250 - Phoenix, Arizona 85007 - Tel (602) 364-3477 - Fax (602) 364-3487 - www.azcleanelections.gov**

***Via E-Mail***
October 13, 2026

Tim La Sota
Counsel for Dr. Ralph Heap
2198 E. Camelback Road, Suite 305
Phoenix, AZ 85016

Linley Wilson
Counsel for Dr. Ralph Heap
Holtzman Vogel
2555 E. Camelback Road, Suite 700
Phoenix, AZ 85016

**Re: MUR 26-06 – Documents Produced by Mesa Sign Shop, LLC**

Dear Mr. La Sota and Ms. Wilson:

I write to update you on MUR 26-06 and to give Dr. Heap an opportunity to respond to documents the Commission has obtained during its investigation.

1. **The Commission's September 24, 2026 Meeting**

At its September 24, 2026 meeting, the Commission considered your September 23 letter, which asked the Commission to dismiss this investigation or, at a minimum, reconsider its decision not to enter into a public administrative settlement. The Commission took no action on those requests. The investigation remains ongoing. *See* A.A.C. R2-20-209(A).

2. **Documents Produced by Mesa Sign Shop**

Dr. Heap's verified August 7 response relied on a declaration from James Torgeson, the owner of Mesa Sign Shop, LLC, to argue that the signs were an exempt extension

of credit. *See* A.R.S. §§ 16-911(B)(6)(d), 16-921(B)(4)(d). On August 20, 2026, I issued a subpoena duces tecum to Mesa Sign Shop under A.R.S. § 16-956(B) for records relating to that declaration and the sign order it describes. Mesa Sign Shop, through counsel, produced documents on September 22 and September 30, 2026, and served written responses and objections to the subpoena on September 25, 2026. Copies of the subpoena, the documents produced, and the written responses are enclosed.

In summary, the documents show the following:

1. The invoice that includes the signs at issue, Invoice No. 2947, is dated April 10, 2026, and is billed to "Jake Hoffman" and "1ten.io," not to Dr. Heap or his campaign committee. It lists 1,750 "Heap 48x48" signs and 1,000 "Heap YS" signs alongside signs for other candidates, states terms of "Due on receipt," and reflects a payment of $96,500 against a total of $108,857.75, leaving a balance of $12,357.75.

2. Five other invoices for materials for Dr. Heap's campaign, including materials shared with another candidate, are dated between June 2025 and July 2026 and are also billed to Jake Hoffman and 1ten.io. The three 2025 invoices are marked paid. The two 2026 invoices, for rack cards and business cards, show balances due; one notes that part of the order was "picked up by Dr.H."

3. Mesa Sign Shop's accounts-receivable summary as of September 29, 2026, shows an open balance for 1ten.io of $56,383.32, of which $21,024.62 is 91 days or more past due.

4. The production includes design files for Dr. Heap's palm cards whose file names include "[via Jake]."

5. Mesa Sign Shop states that it has no documents reflecting a standard practice for establishing customer creditworthiness, any assessment of Dr. Heap's creditworthiness, or the "other clients of comparable creditworthiness and order size" referenced in Mr. Torgeson's declaration. It has objected to producing records concerning the non-political customers the declaration references.

### 3. Opportunity to Respond

If Dr. Heap would like to provide additional information on this matter, please submit a response, signed by Dr. Heap under oath, by October 20, 2026.

My investigation remains ongoing, and I will consider any response Dr. Heap provides in helping resolve this matter.

Sincerely,

Thomas M. Collins
Executive Director

Attached:
Subpoena Duces Tecum to Mesa Sign Shop, LLC (Aug. 20, 2026)
Mesa Sign Shop, LLC Disclosure No. 1 Invoices (Sept. 22, 2026)

Mesa Sign Shop, LLC Disclosure No. 2 (Sept. 30, 2026)
- Heap BCard Back.pdf
- Heap BCard Front.pdf
- Heap Bcards.pdf
- Heap Marshall – Lower Costs- 16x24 Magnet.pdf
- Palm Card – Heap – ACC [via Jake]_[andre].pdf
- Palm Card – Heap – ACC [via Jake]-1_[andre].pdf
- Palm Card – Heap – ACC [via Jake]-2_[andre].pdf
- Palm Card – Heap – ACC [via Jake].pdf
- Yard Sign v1 – Heap Marshall – Lower Costs – 16x24 Sign.pdf
- Yard Sign v1 – Heap Marshall – Affordable & Reliable For All – 16x24 Sign.pdf
- Yard Sign v1 – Heap Marshall – Arizona First Always – 16x24 Sign.pdf
- Yard Sign v1 – Heap Marshall – No Green New Scam – 16x24 Sign.pdf
- Mesa Sign Shop A/R Aging Summary Report

Letter from Kurt M. Altman, counsel for Mesa Sign Shop, LLC (Sept. 25, 2026)

# EXHIBIT A-8

THE STATE OF ARIZONA
ARIZONA CITIZENS CLEAN ELECTIONS COMMISSION

In the Matter of: )
26-06 Ralph Heap )

DEPOSITION OF JAMES TORGESON

Phoenix, Arizona
October 20, 2026
12:30 p.m.

Prepared by
Debra K. Price
Freelance Court Reporter

ORIGINAL

The deposition of JAMES TORGESON began at 12:30 p.m. on Tuesday, October 20, 2026, at the law offices of Osborn Maledon, 2929 N. Central Avenue, 21st Floor, Phoenix, Arizona, before Debra Price, a Freelance Court Reporter and Notary Public in the State of Arizona.

* * *

APPEARANCES:

For Executive Director Tom Collins:
OSBORN MALEDON
BY: Allie Karpurk, Esq.
Mary R. O'Grady, Esq.
2929 N. Central Avenue, 21st Floor
Phoenix, Arizona 85012
Phone: 602-640-9000
Akarpurk@omlaw.com
Mogrady@omlaw.com

For the Witness:
ALTMAN LAW & POLICY
BY: Kurt Altman, Esq.
8535 E. Hartford Drive, #206
Scottsdale, Arizona 85255
Phone: 602-491-0088
Admin@altmanaz.com

For Dr. Heap:
HOLTZMAN VOGEL JOSEFIAK PLLC
BY: Linley Wilson, Esq.
2555 East Camelback Road
Suite 700
Phoenix, Arizona 85016
Phone: 602-388-1262
Lwilson@holtzmanvogel.com

Q. Did you review this before it was sent?
A. I'm sure I did.
Q. And to the best of your knowledge, is it accurate?
A. Yes.
Q. So I'm going to have you flip back to the first page there and right after that first paragraph. Sorry, I'm going to flip at the same time. That first paragraph leading into --
A. Oh, to that one or --
Q. Sorry, yes. We're still on Exhibit 2.
A. Exhibit 2 --
Q. Which is the --
A. -- I thought you meant the first, first.
Q. My apologies. Good point of clarification. So on that first paragraph, we have -- the letter says that Disclosure Number 1 is nine paragraphs or -- excuse me, nine pages of invoices for signs and other printing ordered and completed on behalf of Ralph Heap.
Is that accurate?
A. I believe so.
Q. Was every invoice in Disclosure Number 1 for Dr. Heap's campaign?
A. Well, or related. They ended up

coming -- really, the orders came from 1TEN.

Q. And we'll follow up on that more a little bit later. But paragraph 2 says that "Mesa Sign" -- where it says paragraph 2 on this letter says that Mesa Sign Shop has no documents showing standard pricing for 4 by 4 Coroplast signs; is that correct?

A. Yeah. It's just everybody knows the policy. Andre and I know the pricing. I don't need to put it up on the wall because then somebody comes in and they want one 4 by 4. I want it for $17.50. I want it for -- no, no.

You're taking -- just the amount of time you spent talking to me costs that. So, yeah, yours is $100. So I don't put that up because it becomes a -- it becomes a weapon used against me.

Q. So you don't have a price list, then?

A. No. I have got little things like on -- I do something for [redacted] -- just because I don't want to discuss it -- which is listing signs for a real estate, things like that.

But I stopped putting together a pricing list for people years ago, because they use it against me. And then people were trying to use price -- price match me, do things like that.

this stuff. Because they were -- for whatever reason, they were trying not to pick them up. And I don't know his reasoning on that.

At the time, maybe it had something to do with what you're talking about. I don't know.

Q. So it's possible that there are emails about Heap orders or records of when the order was completed within your printers that we may not know?

A. It's very unlikely that it's still sitting there. You've got to realize, you're looking at -- you know, you've just seen over 2,000 -- a change of 2,000 orders and some that -- literally, the line item is designed for 31 items, I believe. It's not going to collect 300 times that.

I did the email search. I gave you everything I could find with his name in it, germane or not. And there wasn't -- there wasn't a whole lot. So, certainly, could have been a phone call order, but I don't produce things for no reason. So I've given you the production of everything. There is no other item produced, nothing.

Q. I'm not sure if we have any emails about

the Heap order. I can definitely --
A. I think there was one or two. Wasn't there?
Q. I can check our system, but, yeah --
A. Okay.
Q. -- as far as I'm aware, we don't have any.
A. I'll happily check that again.
Q. Okay.
A. But I remember looking and I thought I submitted it. It was surprisingly low. And I think the majority of Heap's stuff is one sign. I mean, it's the same sign, same piece of art, as far as I can recall.
Q. And are those orders coming in through phone calls?
A. I would say most of them do, yeah.
Q. Going back to 1TEN.IO. According to this -- to Exhibit 5, we have one 1TEN open balance of $56,383.32 down there in that last column.
Is that your largest receivable out of -- I believe on the next page it says $123,756.55 total?
A. Total. Right now, probably -- I got to

That's the way he is, so.

Q. Did anyone mention Dr. Heap's Clean Election funding?

A. I want to make sure that I'm saying correct context of that, because there's been discussion about this, you know. It's like, hey, don't involve me in this, you know. Now I'm sitting here.

There wasn't any -- if you're asking if there was anything nefarious such as, hey, you need to delay this because of whatever, we can't show this, there was no discussion like that. I know that he had -- I don't know if he said he was going to order or needed to pay for -- I think he wanted to order something, but he was going to wait for Clean Elections money, something of that nature. Which kind of goes in one ear and out the other, because I don't really care. I just want to get paid.

MR. ALTMAN: Just to clarify, who said that?

THE WITNESS: That would be Jake. Yeah, just Jake.

BY MS. KARPURK:

Q. On behalf of Dr. Heap?

asking what I'm going to say. There was no tampering with the witness or any crap like that.

It's just the factual I'm sorry from a man I've known 20 years and should be considered that.

Q. But all of the orders or communications about Heap's 2026 orders have come in through Jake Hoffman or 1TEN.IO?

A. Yes.

Q. Dr. Heap has not communicated with you personally about those?

A. No.

Q. Have you talked with Mr. Hoffman or anyone at 1TEN.IO about the subpoena or your declaration or your testimony today?

A. I've -- I don't talk to really anybody at his company, but him. I think that the -- probably within the hour of being subpoenaed -- and I won't use the language that I used -- but I'm like, Jake, don't involve me in your bullshit. I don't know what it is. I don't care what it is. I just want to be paid.

But, no, I'm going to tell the truth. And his response was, that's all you have to do is tell the truth. Because I just don't really --

A. I don't have that answer.
Q. Do you know who placed the Heap order?
A. I want to say that's Jake.
Q. Do you recall how it was placed?
A. I thought I sent you some emails. I would assume by email on that, but I could be wrong.
Q. Did -- sorry, give me one moment. Did Dr. Heap personally ever ask you to make these signs?
A. No.
Q. Did he ever discuss quantity, price or payment with you?
A. No.
Q. How did you determine who to bill the invoice to?
A. The guy that asked for it, Jake Hoffman. That's kind of -- where are we going with this? Because it doesn't make sense to me that you even ask that. I'm losing track of our conversation, apparently.
Q. Who supplied the art for the 4 by 4 signs?
A. Jake Hoffman would have supplied the art.

Q. Do you know when the signs were finished?

A. I -- I could probably figure that out. I don't recall the date they were finished, though. But it's not hard for me to figure that out.

Q. I know you said your records on this front aren't --

A. No, no. The records of the work order, that completion will probably tell me the date, because -- it should say the date that I closed the work order. If not, I know that -- there's no work order that hangs out more than a week from when it comes in.

It just doesn't, unless it's a wait -- unless it's a wait on material. Like I have something for Plexiglass and they have to cut it. For whatever reason, it's taking a long time to get it.

But stuff like this, it comes in. When an order comes in, I want it done and out of the way in case more come in. You don't let things stack.

Q. Do you know who picked up the 4 by 4 and yard signs for Dr. Heap?

A. Boy, I'm trying to remember which guy picked that up. He has a lot of installers that come by and grab things, and then Jake sends a lot of kids by to pick up certain things.

Q. Would these be people who work for Jake's company?

A. Yes. There's a -- I think -- I don't recall specifically, but I think there is a guy that we refer to as Uncle Sam. I don't know his real name. It's not that hard to find it. But I think he was doing the installation, so I would say he's the one that probably picked it up, he or his son.

Q. And that's someone who works for Jake's company?

A. Yes.

Q. Do you know when they were picked up, the yard signs and the 4 by 4 signs?

A. No. I just remember they hung out a long time.

Q. Did you deliver or install any of the signs?

A. Hell, no.

Q. And was Invoice 2947 sent to Mr. Hoffman/1TEN.IO?

Q. So Mr. Hoffman paid the -- on the back side of this invoice, we see a 90 -- you know, $96,500 was paid.
A. Yes.
Q. That was paid by Mr. Hoffman?
A. Yes.
Q. Do you know when it was paid?
A. Off the top of my head, I do not. It was paid in pieces, I'm sure. Because I know there was an initial payment, and we started adding to this invoice. And, finally, it was like this invoice is just looking stupid. I need to do these binder candidates. I can't do this as just whatever, and we agreed that we would do it that way.
Q. Was any invoice for the Heap sign ever sent to Dr. Heap or his campaign before or after August 7th?
A. There -- the Heap/Marshall may have been, that may have been.
Q. But this one --
A. No.
Q. -- the 2947?
A. No, this was never sent to him. And, you know, to be frank, this is one thing that

really irritates me about sitting at this table and irritates me about clean elections and everything else, dragging my ass into this, I don't want people to know what I charged him.

You know why? The guy's handed me $300,000 and gets a great price. And every idiot on this planet when you make this public will come back to me and ask for that. So it really irritates me.

Q. Do you know how -- Invoice 2947 reflects orders for various candidates. Do you know how the payment, the $96,500 payment, was applied to these candidates or to these orders?

A. No. I don't know how he -- let's say he logged in and paid $20,000, because you can pay in pieces. I don't know who he said, hey, you got to pay me $20,000 to. I have no idea. I'm not privy to his business.

Q. So is it fair to say that you can't tell me what makes up the $12,357.75 balance?

A. I know that he -- this is the only thing he said to me about this invoice here. He goes, I paid more on this invoice than I wanted to at the moment. That's all he had said. He wanted something to hang here for a reason and he took

the campaigns?

A. 2947?

Q. Exhibit 4, first page.

MR. ALTMAN: The big invoice.

A. No, I didn't make that for everybody there. That was made on -- for Jake Hoffman.

BY MS. KARPURK:

Q. So the invoices to Jake Hoffman -- if you extended credit to anyone, then it was Mr. Hoffman --

A. Yes.

Q. -- or 1TEN.IO?

A. Yes. In the end, the guy that's really responsible for the bill is Jake Hoffman.

Q. And I guess I'll just ask why. Why did you extend credit to Mr. Hoffman?

A. Same reason I said before.

Q. Would you mind repeating that for me?

A. Because I know he's going to pay me. He has the money to pay me. He has a reputation to lose if he doesn't pay. He's got the money and I'm not worried about it.

Q. In April 2026, did you know that Dr. Heap was a clean elections candidate?

A. No. I don't know when I actually heard

STATE OF ARIZONA )
COUNTY OF MARICOPA )

BE IT KNOWN the foregoing deposition was taken by me pursuant to stipulation of counsel; that I was then and there a Court Reporter and Notary Public of the State of Arizona, and by virtue thereof authorized to administer an oath; that the witness before testifying was duly sworn by me to testify to the whole truth; notice was provided that the transcript was available for signature by the deponent; that the questions propounded by counsel and the answers of the witness thereto were taken down by me in shorthand and thereafter transcribed into typewriting under my direction; that the foregoing pages are a full, true, and accurate transcript of all proceedings and testimony had and adduced upon the taking of said deposition, all to the best of my skill and ability.

I FURTHER CERTIFY that I am in no way related to nor employed by any parties hereto, nor am I in any way interested in the outcome hereof.

DATED at Mesa, Arizona, this 22nd day of October 2026.

Debra K. Price
Court Reporter
Notary State of Arizona

# EXHIBIT A-9

HOLTZMAN VOGEL

Washington, D.C.
Virginia
Florida
Arizona
New York
holtzmanvogel.com

October 20, 2026

*Via E-Mail Only*
Thomas M. Collins
Executive Director
Arizona Citizens Clean Elections Commission
1110 W. Washington Street, Suite 250
Phoenix, Arizona 85007

**Re: MUR 26-06 & MUR 26-09; Supplemental Response of Dr. Ralph Heap**

Dear Director Collins:

Thank you for your October 13 letters and for the opportunity to supplement Dr. Ralph Heap's response in MUR 26-06 and MUR 26-09. I write on Dr. Heap's behalf to address the documents produced by Mesa Sign Shop, LLC, and to help ensure that you have a complete and accurate record before you make a recommendation under A.A.C. R2-20-206. Dr. Heap continues to share the Commission's interest in resolving this matter fully, and he has verified this supplemental response under oath as required by A.A.C. R2-20-205(C).

**1. Clean Elections Funding**

We wish to ensure that the record on Clean Elections funding is clear. Dr. Heap returned his Primary Election funds to the Commission in its entirety. Dr. Heap's General Election funds remain in the campaign account, and Dr. Heap has not used any of those funds.

**2. Allegations Concerning Senator Jake Hoffman**

Senator Jake Hoffman supported Dr. Heap's candidacy. He was neither retained nor paid as a consultant to the campaign. Neither Dr. Heap nor the campaign had a contract with Senator Hoffman or any entity affiliated with him, and Dr. Heap's campaign did not pay him or agree to pay him. When Mesa Sign Shop billed Dr. Heap's campaign directly, the campaign paid the invoice and reported the expenditure. Senator Hoffman appears to have placed other printing orders with Mesa Sign Shop. Dr. Heap did not have any

involvement in Mesa Sign Shop's billing decisions or invoices. Dr. Heap expected any invoices to be issued to the campaign.

**3. The Mesa Sign Shop Invoices**

The invoices enclosed with your letters were addressed by Mesa Sign Shop to "Jake Hoffman" and "1ten.io" and include line items referencing Dr. Heap. Dr. Heap did not prepare these invoices and did not receive them. Throughout, Dr. Heap understood that his campaign would pay the fair market value for its materials.

Dr. Heap is committed to an accurate public record. The campaign will make any appropriate amendment to its reports to resolve the complaints before the Commission.

Dr. Heap appreciates the update on the Commission's investigation and the information provided. He is prepared to work toward a resolution of both complaints, including a public settlement. If additional information would assist your review, we would be glad to provide it, and we welcome the opportunity to meet with you or your staff.

Respectfully submitted,

Linley Wilson

HV

# VERIFICATION

STATE OF ARIZONA )
) ss.
County of Maricopa )

I, Dr. Ralph Heap, declare under penalty of perjury that I have read the foregoing Supplemental Response and that the factual statements in it are true and correct to the best of my personal knowledge, information, and belief. The legal arguments and characterizations of law in the Supplemental Response are those of my counsel.

Ralph L. Heap

Dr. Ralph Heap

SUBSCRIBED AND SWORN to before me this 20th day of October, 2026, by Ralph Heap.

K. Pierce

Notary Public

Kim Pierce
Notary Public
Maricopa County, Arizona
My Comm. Expires 03-28-27
Commission No. 646842

My commission expires: 03.28.2027

# EXHIBIT A-10

**Allie Karpurk**

---

**From:** Allie Karpurk <akarpurk@omlaw.com>
**Sent:** Wednesday, November 4, 2026 2:59 PM
**To:** Linley Wilson <lwilson@holtzmanvogel.com>; eleavitt@holtzmanvogel.com
**Cc:** Mary O'Grady <mogrady@omlaw.com>
**Subject:** FW: MUR 26-06 – Acceptance of service for 1Ten LLC subpoena
**Attachments:** 2026-10-31 MUR 26-06 Heap 1Ten Subpoena(12673443.1) signed 11_3(12677468.2).pdf

Linley and Erica,

Attached is the subpoena for Mr. Hoffman in MUR-26-06. We are proceeding with personal service.

**Allie Karpurk**
she • her • hers
602-640-9380 (direct)

---

**OSBORN**
**MALEDON**
2929 N. Central Ave, Ste. 2000
Phoenix, AZ 85012
**omlaw.com**
**CONFIDENTIAL AND PRIVILEGED COMMUNICATION OF COUNSEL**
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.