Alexander Kolodin (State Bar No. 030826)
**KOLODIN LAW GROUP PLLC**
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Telephone: (602) 730-2985
alexander.kolodin@kolodinlaw.com
Analea@kolodinlaw.com (Filed copies)

*Attorneys for Plaintiff 1Ten LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

1Ten LLC, a Delaware limited liability company,

Plaintiff,

v.

Thomas M. Collins, in his official capacity as Executive Director of the Arizona Citizens Clean Elections Commission, et al.,

Defendants.

No. CV-26-10652-PHX-DJH

**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff 1Ten LLC ("1Ten") replies to the responses of the Commissioners (Doc. 10) and the Executive Director (Doc. 11), cited here by CM/ECF page number.

Defendants defend a subpoena that was never served. The Commissioners describe one that asks four questions about one purchase. Doc. 10 at 7:5–6. The Executive Director describes one stripped of names and the index instruction, with a promise of confidentiality added. Collins Decl. (Doc. 11-1) ¶ 25. Neither has changed a word of the one that is outstanding. Their main argument is that 1Ten should wait. The Supreme Court rejected that argument this year. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 192–99 (2026). The Court should enjoin enforcement of the Subpoena or, at a minimum, hold Defendants to their own account of what they need.

## I. The Subpoena Defendants describe is not the one they served.

The Subpoena demands "[a]ll Documents relating to" six invoices, including "the payor and source of funds for each payment"; who picked up the signs and "payments to any person who picked up, transported, placed, or removed" them; "any other goods or services that 1Ten paid for, provided, or arranged for Dr. Heap's campaign," with no time limit; "[a]ll Communications" between 1Ten and Dr. Heap, defined to include "any person acting on behalf of" his campaign, about any of his printed materials; an "index" of who else holds "relevant records"; and testimony unless 1Ten swears that its production "is complete." Subpoena (Doc. 2-2) at 2–5. The Executive Director now says that records "sufficient to show" payment "are enough," that the names of those who handled the signs are "confidential information," and that the index instruction can go. Collins Decl. ¶ 25(a)–(c), (e). But he has withdrawn nothing. As of this filing no amended subpoena has been served. And his offer to redact campaign strategy covers only strategy "unrelated to Dr. Heap's signs or their payment." *Id.* ¶ 25(d). Communications about what the signs say and where they go remain demanded. Neither response mentions the deposition.

## II. Defendants' merits arguments fail.

### A. *Perry*, not *Bean*, states the rule regarding the records of political consultants.

Defendants argue that a consultant's records are "commercial" and therefore unprotected. Doc. 11 at 6:8–7:17; Doc. 10 at 6:26–7:14. The Executive Director takes that rule from *Bean*, a District of Columbia memorandum opinion about a congressional subpoena. *Bean LLC v. Bank*, 291 F. Supp. 3d 34, 37 (D.D.C. 2018). But a congressional subpoena is very different from an agency subpoena because Congress derives its right to issue and enforce subpoenas directly from Article I of the Constitution. *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 84 (D.D.C. 2008). Further, Bean's rule that "commercial transactions do not give rise to associational rights, even where the subjects of those transactions are protected by the First Amendment[,]" 291 F. Supp. 3d 34, 46 (D.D.C. 2018), is a rule about *categories*. The rule in this Circuit is about *effects*: "The

existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). The Commissioners themselves apply *Perry*'s framework. Doc. 10 at 6:17–20. The two rules give different answers for paid political professionals. Under *Bean*, their dealings with a campaign are commerce. In *Perry*, the discovery at issue reached "communications between proponents and political consultants or campaign managers," *id.* at 1153, and the court held such communications privileged when they are among "the core group of persons engaged in the formulation of campaign strategy and messages," *id.* at 1165 n.12, a group that may span "more than one entity," *Perry v. Schwarzenegger*, 602 F.3d 976, 981 (9th Cir. 2010). On remand the core groups included employees of "campaign consulting firms that had significant input into campaign strategy and messages." Order at 8, *Perry*, No. 09-cv-2292 (N.D. Cal. Mar. 5, 2010), ECF No. 610.

*Bean* would not reach this Subpoena even on its own terms. The bank records there showed "only the name of the payor or payee, the amount of the payment, and certain identifying information; they do not indicate what the payment was for." 291 F. Supp. 3d at 47. This Subpoena demands communications with a candidate and his agents about his campaign materials, the names of those who handled his signs, and everything else a firm did for his campaign. Nor is 1Ten the vendor. The vendor, Mesa Sign, has produced its file. By Defendants' own account 1Ten is a "political consultant" through which every communication about the candidate's signs passed and whose owner "would have supplied the art." Doc. 10 at 2:13; Doc. 11 at 4:21–23; Collins Decl. ¶ 19(d). And "source of funds" is not a commercial detail. The Executive Director concedes that the Subpoena reaches "the identity of 1Ten's other clients" if "one happened to pay." Doc. 11 at 10:3–4. A demand to identify who paid for political speech must survive exacting scrutiny. *Buckley v. Valeo*, 424 U.S. 1, 64–66 (1976) (per curiam).

**B. Defendants' attacks on the evidence of chill fail.**

The showing required is of "arguable first amendment infringement." *Perry*, 591 F.3d at 1160 (citation omitted). In *Perry* a participant's declaration that disclosure would "drastically alter how I communicate in the future" sufficed, though "lacking in particularity." *Id.* at 1163. Mr. Rogers is more particular: because of this Subpoena he would "put less in writing to a consultant" and "hesitate to give a consultant the names of supporters and volunteers." Rogers Decl. (Doc. 2-11) ¶ 8. His declaration is unrebutted. Defendants say he fears requests "never made." Doc. 10 at 7:24–26. But the Subpoena demands, as to Dr. Heap, the same kinds of things Mr. Rogers told 1Ten about his own campaign: what its signs would say, where and when they would go up, and how much it would spend on them. And Request 1 reaches an invoice that includes his own signs. Rogers Decl. ¶¶ 4–5; Subpoena at 3–4.

Nor can his declaration be used against him. The declarant in *Perry* was named too. 591 F.3d at 1163. If coming forward to prove a chill forfeited the protection, the right would be nullified "at the very moment of its assertion." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958); *see Grandbouche v. Clancy*, 825 F.2d 1463, 1467 (10th Cir. 1987) (refusing "to adopt a per se rule that a plaintiff waives his First Amendment privileges simply by bringing suit"). 1Ten did not need its own declaration; it may assert the rights of those whose associations the Subpoena would expose. *NAACP*, 357 U.S. at 459. Nor is the chill "subjective." *Contra* Doc. 10 at 7:27–8:4; Doc. 11 at 7:24–25. Defendants' authority for that label is *Laird v. Tatum*, 408 U.S. 1 (1972), and *First Choice* rejected the same analogy: the *Laird* plaintiffs complained of "the mere existence" of a government program, while a subpoena "by contrast… targeted" its recipient and "commanded production." 608 U.S. at 193. Such demands also chill "even when those demands contemplate disclosure only to government officials." *Id.* at 187. And Defendants hardly address the complainants' public statements. The Commissioners concede that they come from "political rivals of Dr. Heap and Mr. Hoffman." Doc. 10 at 8:5–6. The Executive Director answers only that he had other reasons for the Subpoena. Doc. 11 at

8:12–14. Neither denies that the complainants asked the Commission to "identify every person who advised" the campaign, or that one wants 1Ten's owner "indicted again." Doc. 2 at 11–12. That hostility further supports an objective fear of disclosure here. *See NAACP*, 357 U.S. at 462–63.

**C. The Subpoena fails exacting scrutiny on Defendants' own showing.**

The State must show that the information is "highly relevant," that the demand is "carefully tailored to avoid unnecessary interference with protected activities," and that the information is "otherwise unavailable." *Perry*, 591 F.3d at 1161; *see Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 607–11 (2021). Defendants assert one need: to learn "who paid for Dr. Heap's signs and with what funds." Doc. 11 at 11:5–6. That need does not require communications, the names of campaign workers, an account of "any other goods or services," an index, or sworn testimony. The Executive Director's willingness to rewrite the Subpoena shows that it was not narrowly tailored when he issued it. And the rewrite goes much further than his brief indicates. The brief mentions the index instruction, confidentiality, and redaction. Doc. 11 at 5:26–28 n.1, 7:13–15, 8:14–15. The declaration goes through all five Requests one by one, narrowing or qualifying each. Collins Decl. ¶ 25(a)–(d). The Commissioners nearly concede the point: "any residual overbreadth can be addressed through R2-20-213 or in superior court." Doc. 10 at 8:28–9:1.

Defendants' factual account does not fill the gap. They say that what the vendor and the candidate provided points to 1Ten, and that "only 1Ten's records can show the payor, the source of funds, the amount attributable to Dr. Heap, and any reimbursement." Doc. 11 at 9:4–6; Doc. 10 at 8:25–26. By the Executive Director's own account, he already has three of those four. He says the vendor's records and testimony establish who ordered the signs, who was billed, and who paid, Collins Decl. ¶ 23; he has computed Dr. Heap's share from the invoice, *id.* ¶ 14(a); and he draws his own conclusion about reimbursement from the candidate's sworn response, *id.* ¶ 22. 1Ten does not adopt that account. The point is that he claims to have it. What is left, on his account, is how one payment was allocated and "where the money came from." Doc. 11 at 9:1–3. For that, he says, records "sufficient

to show" the source "are enough." Collins Decl. ¶ 25(a). One open question about the source of a payment cannot justify a demand for every communication about a campaign's materials, the names of its workers, everything else a consultant did for it, and testimony under oath. And that one question, who funded a candidate's speech, is the one the First Amendment guards most closely. *Buckley*, 424 U.S. at 64–66.

Nor has the Executive Director exhausted the less intrusive source. What is missing, he says, is "the transaction between 1Ten and Dr. Heap." Doc. 11 at 9:5–6. On that description Dr. Heap is a party to it, and he, unlike 1Ten, "agreed to the Act's enforcement provisions." Doc. 10 at 7:8–10. His verified response closed by offering "additional information" and "the opportunity to meet with you or your staff." Doc. 11-1 at 80. The declaration does not say that the Executive Director accepted or deposed him. Two weeks later he subpoenaed 1Ten. Collins Decl. ¶¶ 21–23. *Pennhurst* is beside the point: 1Ten's claim rests on the First Amendment, not on state law. *Contra* Doc. 10 at 9:3–8.

**III. *First Choice* forecloses Defendants' irreparable-harm arguments.**

The Executive Director "accepts that a colorable First Amendment claim can establish irreparable harm." Doc. 11 at 9:20–21. Neither Defendant disputes 1Ten's standing or asks the Court to abstain. They argue instead that the harm has not arrived.

Defendants first say that 1Ten must use state procedures before coming to this Court. The Executive Director "does not argue that 1Ten had to exhaust administrative remedies." Doc. 11 at 10:24–25. He argues instead that later "corrective relief" before the Commission or the superior court defeats equitable relief now, and he cites *First Choice* for the point that *Reisman v. Caplin*, 375 U.S. 440 (1964), was a case about "equity practice, not Article III standing." *Id.* at 10:17–11:2. But he omits the rest of that passage, which gives two reasons why *Reisman* is materially different. First, the *Reisman* plaintiffs "did not allege a present injury from the subpoena itself," and its conclusion "does not follow in cases like this one, where a plaintiff suffers ongoing injuries from the subpoena itself." 608 U.S. at 195. Second, the adequate remedy in *Reisman* "involved litigation in federal court," and "even as a matter of equity practice, '[i]t is settled that no adequate

remedy at law exists, so as to deprive federal courts of equity jurisdiction, unless it is available in the federal courts.'" *Id.* at 195–96 (citation omitted). A later remedy thus counts against equitable relief only if it is "available in the federal courts." *Id.* at 196. Neither an application to the Commission nor a defense in superior court is available in the federal courts. Nor is the Commission a real alternative. The Commissioners who would decide the application are opposing any relief in this Court, where they have already argued that "[n]o protected association is burdened by . . . the Director's Subpoena" and that it "is narrowly tailored." Doc. 10 at 2:23–24, 3:1–2. 1Ten need not seek relief from the officials who oppose it here. Requiring a plaintiff to litigate there first would "hollow" out § 1983 and set a "preclusion trap." *Id.* at 196. For the same reason the harm is not "self-inflicted." Doc. 10 at 5:24–25. *First Choice* rejected that label as well. The Attorney General there called the injury "subjective" and self-imposed, citing *Laird*. The Court answered that he had "targeted" the recipient and "commanded production," and that his command, "even if not immediately enforceable, is backed by a threat of court-ordered compliance." 608 U.S. at 193. So is this one. Subpoena at 6. And *Sampson v. Murray*, 415 U.S. 61, 90–92 (1974), concerned lost pay, which can be restored. Associational privacy cannot.

Indeed, it is worth noting that the district court in *First Choice* adopted *Reisman* based argument the Executive Director now makes here, namely, that the plaintiff had to first wait for state court litigation to play out and could not "sue preemptively" in federal court to challenge a subpoena on First Amendment grounds. *First Choice* at 194-95. The Supreme Court reversed on precisely this point. *Id.*

Nor does it matter that the Subpoena is not self-executing. A demand for private associational information deters "not just when a demand is enforced, but when it is made and for as long as it remains outstanding." *First Choice* at 189. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *Id.* at 192 (citation omitted). Extending the deadlines to December 14 and December 30, Collins Decl. ¶ 24, lengthens the time it hangs, and neither response says that the Executive Director will forgo enforcement while this case is pending.

The offers to narrow the Subpoena and to keep what it yields confidential do not change that. The Attorney General in *First Choice* was also "willing to narrow" his demands. The offer "might have mitigated the scope of First Choice's injury, but it did not extinguish it." *Id.* at 197–98. He also pointed to a coming protective order. "Just ask yourself, would it have been an answer in *NAACP v. Alabama* if the State's Attorney General promised to keep the NAACP's membership rolls to himself?" *Id.* at 199. The promise here is weaker: a statement in a declaration, not an order, that covers only "individuals other than Dr. Heap." Collins Decl. ¶ 25(f). Nor do redaction and in camera review cure the problem, because they would not keep the material from the Executive Director. The redactions would be his own, made after he has the documents: he offers to "keep information about other individuals confidential and redact unrelated confidential information, with in camera review of any disagreement," Doc. 11 at 5:26–28 n.1, as his counsel did with the vendor's records "[b]efore providing" them to Dr. Heap, Collins Decl. ¶¶ 16, 25(f). His brief assumes as much: it promises that "information disclosed regarding 1Ten's other clients will be kept confidential." Doc. 11 at 8:14–15. Disclosure to the official is itself the injury. *First Choice*, 608 U.S. at 187, 199; Rogers Decl. ¶ 10.

## IV. An injunction against the 1Ten subpoena will not harm the State.

1Ten challenges no statute, so *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers), does not apply. It asks the Court to enjoin one subpoena to one non-party; the order "would not stop the Commission's investigation of Dr. Heap or its use of what it already has." Doc. 2 at 17:17–19. Nor is there urgency: the election is over, and the Executive Director offers to wait past December 30. Collins Decl. ¶ 24.

At a minimum, the Court should hold Defendants to what they have told it. It should enjoin enforcement of (i) the index instruction, (ii) the deposition, and (iii) any demand for anything other than payment records. And it should bar any enforcement proceeding as to the rest until it decides, at the consolidated hearing 1Ten requested, whether any part of the subpoena is lawful.

**V. Conclusion.**

The Court should grant the Motion.

RESPECTFULLY SUBMITTED this 24th day of November, 2026.

**KOLODIN LAW GROUP PLLC**

By: *<u>/s/Alexander Kolodin</u>*
Alexander Kolodin
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
*Attorneys for Plaintiff 1Ten LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2026, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

**KOLODIN LAW GROUP PLLC**

By: <u>/s/Analea Castro</u>